UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC.

       Plaintiff,

v.

MICHIGAN RESIN REPRESENTATIVES, LLC;
JOHN H. LEMANSKI, JR.; LISA J. WELLS; and
TAMARA L. TURNER

       Defendants.

Case No. 11-13335
Honorable Julian Abele Cook, Jr.

ORDER

The Plaintiff, Barrette Outdoor Living, Inc. ("Barrette Outdoor"), commenced this action on July 29, 2011, by accusing the Defendants, Michigan Resin Representatives, LLC ("Michigan Resin") et al, of a variety of tortious activities (i.e., fraud, violations of fiduciary responsibilities, interference with an ongoing business activity, conspiracy, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 et seq.). Currently before the Court are the Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 8 and 10).

I.

Barrette Outdoor is an Ohio corporation that manufactures and sells outdoor accessory products, including vinyl lattice, as well as lawn and utility screens. In order to obtain the requisite quantity of vinyl for the manufacture of its products, Barrette Outdoor regularly purchases resin

from brokers and wholesale distributors. Michigan Resin is a Michigan limited liability company whose principal members include two of the individually named Defendants (Tamara L. Turner and Lisa J. Wells). The remaining individually named Defendant (John H. Lemanski) is a Michigan resident who was employed by Barrette Outdoor as a senior buyer during all of the relevant periods of time in this controversy.

According to the record in this case, resin is purchased on a per pound basis at a price which is determined, in part, by soliciting bids from producers and distributors. Barrette Outdoor purchases approximately 25 million pounds of resin each year. As a senior buyer, Lemanski was partially responsible for Barrette Outdoor's purchasing operations. In order to purchase resin at a competitive price, he had the responsibility of ascertaining the market price through his contacts with producers and distributors, negotiating the terms of a purchase, submitting a proposed purchase order to the general manager (Mario Gaudreault) for his approval, and, thereafter, transmitting an approved purchase order to the seller.

Under the Barrette Outdoor policy that was in existence during the relevant periods to this litigation, Lemanski was required to obtain the approval of the general manager before placing a purchase order for resin. As a prerequisite to obtaining Gaudreault's approval, Lemanski had an internal company obligation to advise Gaudreault of salient facts, such as the quantity and price of the resin being ordered, and the identity of the prospective seller.

On February 4, 2010, Michigan Resin was created as a limited liability corporation through the efforts of Wells and Turner. Soon thereafter, Barrette Outdoor, relying upon Lemanski's advice, purchased 5,781,562 pounds of resin from Michigan Resin for $4,234,572.89. These purchases occurred between February 11, 2010 and April 20, 2011, constituting a total of 14 transactions.

In its complaint, Barrette Outdoor alleges that the Defendants, through the actions of Michigan Resin and Lemanksi, conducted a fraudulent purchasing scheme which enabled them to enrich themselves for their personal gain. In particular, Barrette Outdoor submits that Lemanski used his position as a senior buyer to divert Barrette Outdoor's purchases of resin from other suppliers and to Michigan Resin at inflated market prices.[1]

## II.

Fed. R.Civ. P.12(b)(6) permits a court to dismiss any complaint that fails "to state a claim upon which relief can be granted." In considering the merit of a motion to dismiss under this Rule, a district court must accept the well-pleaded allegations as being true and construe each of them in a light that is most favorable to the plaintiff. *Bennett v. MIS Corp.,* 607 F.3d 1076, 1091 (6th Cir.2010). This assumption of truth does not extend to the plaintiff's conclusion of law, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 622, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir.2008) (citation and internal quotation marks omitted).

In order to survive a motion for dismissal, the non-moving party must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct 1955, 167 L.Ed.2d 929 (2007). In deciding the motion, the court must treat all well-pleaded allegations in the complaint as true. Furthermore, the court must draw all reasonable inferences from

---

[1]This type of purchasing scheme is commonly known as a "pass-through" scheme.

those allegations in favor of the nonmoving party. *See, e.g., Golden v. City of Columbus*, 404 F.3d 950, 955 (6th Cir.2005).

Fed. R.Civ. P.12(b)(7) authorizes a court to dismiss a complaint if the pleading fails to join an obligatory party pursuant to Fed. R.Civ. P.19. Thus, the question of joinder and dismissal under Rule 19 requires a court to initially determine if the absent parties are required under the law, and, thereafter, inquire as to "whether, in their absence, equity and good conscience require the case to be dismissed. If the answer to either question is no, then Rule 19 does not foreclose this litigation." *School Dist. of City of Pontiac v. Secretary of U.S. Dept. Of Educ.* 584 F.3d 253, 265 (6th Cir.2009) (*en banc*).

### III.

In their dispositive motion, Michigan Resin, Turner, and Wells, pointing to the absence of an alleged necessary party, Resin Distribution Inc. ("RDI"). The Defendants urge the Court to dismiss the complaint because of Barrette Outdoor's failure to join a necessary party to this action.

In its opposition to this dispositive motion, Barrette Outdoor has pointed to the identified Defendants in this action, contending that they are the only parties who, at this stage of the action, are necessary to this litigation, and, hence, are responsible for its damages. In support for this position, Barrette Outdoor states that Lemanski (1) advised RDI in February 2010 that Barrette Outdoor would discontinue its purchases of resin, and (2) suggested to RDI that it should sell its product directly to Michigan Resin. Thereafter, these two companies undertook a series of resin sales transactions between February 11, 2010 and April 20, 2011. According to the Defendants, Barrette Outdoor has withheld its payments to Michigan Resin, an action which has resulted in a breach of its obligations to RDI.

These movants submit that Michigan Resin may now be subject to multiple, double, or inconsistent fiscal obligations if this litigation continues without RDI being joined as a required party. Barrette Outdoor disagrees, by contending that it is unaware of any wrongdoing perpetrated against it by RDI, and therefore, it is not a required party in this litigation.

Under Rule 19(a)(1), a person is a "required party" if:

(A)  in that person's absence, the court cannot accord complete relief among the existing parties; or
(B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)

A review of the record in this case reveals that, although Barrette Outdoor has asserted a variety of tort claims against these movants, it has not made any allegations of wrongdoing by RDI. Hence, the Court concludes that RDI is not a required party, as contemplated by Fed. R. Civ. P. 19(a)(1)(A). Furthermore, RDI has not claimed an interest in the subject of this lawsuit. While these Defendants contend that they may become indebted to RDI, this is not a sufficient basis upon which to be labeled as a required party under Rule 19. Therefore, the request by these Defendants for the entries of dismissal of the complaint under Rule 19 will be denied.

IV.

The first three counts of the complaint allege that Lemanski committed a fraudulent misrepresentation, silent fraud, and fraudulent inducement. Fed. R. Civ. P. 9(b) requires that allegations of fraud to be stated with particularity. The function of this Rule is to "provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare

5

a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988).

In his motion to dismiss, Lemanski submits that Barrette Outdoor has failed to plead its claims of fraud with sufficient particularity. The Court disagrees, finding that Barrette Outdoor has pled a sufficiency of detail which should allow Lemanski to prepare a defense to the charges against him. In particular, Barrette Outdoor has detailed fourteen alleged transactions in which Lemanski purchased resin from Michigan Resin for use by Barrette Outdoor. These transactions have been outlined with sufficient detail by party, date, amount, and price. Compl. ¶ 31. Furthermore, the complaint outlines when and how Lemanski allegedly defrauded Barrette Outdoor through his alleged misrepresentations to Mario Gaudreault and to representatives from RDI. Compl. ¶¶ 18, 39, 41-3. These factual allegations constitute a sufficient basis that should allow Lemanski to prepare a defense.

With respect to Barrette Outdoor's second claim (to wit, silent fraud), it must establish a suppression of material facts by Lemanski at a time when he had a legal duty to disclose them. *See McMullen v. Joldersma*, 174 Mich.App. 207, 213 (Mich. Ct. App. 1988). In furtherance of his dispositive motion, Lemanski proclaims that Barrette Outdoor has failed to plead the requisite elements of silent fraud. However, Barrette Outdoor has contended that Lemanski, despite having a duty to disclose certain information to his Company regarding the resin market, failed to do so. Compl. ¶ 53. Lemanski concedes that he was acting as the employee and agent for his Company when the alleged silent fraud occurred. (Lemanski's Br. at 9, 13-15). Barrette Outdoor has properly alleged the claim of silent fraud.

Next, Barrette Outdoor contends that Lemanski breached his fiduciary duties to the

Company. A fiduciary relationship arises from the reposing of faith, confidence, and trust, and the reliance of one upon the judgment and advice of another. *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich.App. 194, 196 (Mich. Ct. App. 1991). Relief is granted if and when such a position of influence has been acquired and abused, or when the confidence has been reposed and betrayed. *Id.*.

Lemanski acknowledges that he owed a fiduciary duty to Barrette Outdoor during this period of his employment. Yet, he strongly disputes the allegation that his conduct violated those duties. However and, despite this acknowledgment, the Court finds that Barrette Outdoor has sufficiently pled the breach of fiduciary duty claim when it asserted that Lemanski had violated his fiduciary duty by knowingly purchasing resin at an inflated price. *Id.* ¶¶ 25-33, 68.

Addressing Barrette Outdoor's contention that Michigan Resin, Wells, and Turner aided and abetted their respective fiduciary duties, the Court notes that the elements of such a claim are as follows: (1) breach of an existing fiduciary duty; (2) knowledge by the defendants of the other person's breach of fiduciary duty; (3) substantial assistance or encouragement by the defendants to the persons who breached the fiduciary duty; and (4) resulting harm. *See, e.g.*, *In re NM Holdings, Co., LLC*, 405 B.R. 830, 846. (Bankr. E.D. Mich. 2008); Restatement (Second) of Torts § 876(b) (1979).

These Defendants submit that Barrette Outdoor has only satisfied the first element of this claim - and, at the same time, failed to meet the remaining elements. With regard to the second element (knowledge by the defendants of the other person's breach of the fiduciary duty), Barrette Outdoor expressly alleged that "[these Defendants] knew that Lemanski did not have the right to (a) divert its opportunity to purchase resin at fair-market prices directly from RDI; or (b) cause it to purchase resin from [Michigan Resin] at inflated and above-market prices." Compl. ¶ 78. This

assertion is sufficient to satisfy the "knowledge" element of this count.

While these Defendants have characterized Michigan Resin's connection with Barrette Outdoor as being a vendor and vendee relationship, in which the doctrine of *caveat emptor* should govern, the Court believes that the application of this doctrine need not be examined or evaluated. Barrette Outdoor has sufficiently pled allegations to support the knowledge element of this claim. Furthermore, Barrette Outdoor's other allegations support an inference of knowledge on behalf of these Defendants.

With recognition that these allegations do not support an allegation of wrongdoing when viewed separately, they are sufficient to form an inference that the Defendants had direct or indirect knowledge of Lemanski's alleged transgressions. The Defendants also reject the notion that they substantially assisted or encouraged Lemanski to breach his fiduciary responsibilities. However, taking all reasonable factual inferences from the allegations, the Court finds that Barrette Outdoor has sufficiently pled the assistance element of this claim

Finally, these Defendants have also challenged the contentions by Barrette Outdoor that it suffered a substantial harm which could be attributable to them. However and notwithstanding the Defendants' protestations, the Court concludes that Barrette Outdoor has adequately proclaimed that it suffered damages as a result of their claimed wrongful conduct. Compl. ¶¶ 33, 79. Therefore, the Defendants' motion to dismiss count six is denied.

In count seven, Barrette Outdoor has advanced a claim of a tortious interference with an existing business relationship against all of the Defendants. Under Michigan law, a plaintiff who proffers this claim must establish the following factors; namely, (1) a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an

intentional interference inducing or causing a breach or termination of a relationship or expectancy, and (4) damages. *Compuware v IBM*, 259 F. Supp. 2d 597, 604 (E.D. Mich. 2002); *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan*, 217 Mich.App. 687, 698-99 (Mich. Ct. App. 1996).

In his defense, Lemanski submits that, in order to establish this cause of action against him, Barrette Outdoor must plead that he was a third party to an otherwise existing business relationship. It is his contention that, during all of the relevant times to this controversy, he was only acting as an agent (i.e., senior buyer) for his employer; to wit, Barrette Outdoor. Thus, Lemanski submits that, under these circumstances, he cannot be a third party to Barrette Outdoor's relationship with RDI. Rather, Lemanski contends that he was acting in his now-former position as a senior buyer for Barrette Outdoor.

According to the law in Michigan, corporate agents can be held liable for acts of tortious interference if they acted solely for their own benefit with no benefit to the corporation. *See, Reed v. Michigan Metro Girl Scout Council*, 201 Mich.App. 10, 13 (Mich. Ct. App. 1993). Here, Barrette Outdoor contends that Lemanski was acting for his own personal benefit when he allegedly diverted purchases from RDI to Michigan Resin, with no benefit to his employer. Compl. ¶¶ 25-28, 32-33. 38-40.

Michigan Resin, Wells, and Turner challenge the sufficiency of Barrette Outdoor's pleadings with respect to the third element (i.e., intentional interference). In order to fulfill the element of intentional interference, the aggrieved party must allege that the defendant acted intentionally and improperly or without justification. *Bonelli v. Volkswagen of America, Inc.*, 166 Mich.App. 483, 498 (Mich. Ct. App. 1988). In those situations where the Defendants' conduct is motivated by legitimate

9

business reasons, their actions do not constitute improper motive or interference. *See, Dalley v. Dykema Gossett*, 287 Mich.App. 296 (Mich. Ct. App. 2010). The term, improper motive or interference, means "illegal, unethical, or fraudulent." *Weitting v. McFeeters*, 104 Mich.App. 188, 198 (Mich. Ct. App. 1981). An aggrieved party "must allege the intentional doing of a *per se* wrongful act or the doing of a lawful act with malice and unjustified in the law for the purpose of invading the . . . business relationship of another." *Jim-Bob, Inc. v. Mehling*, 178 Mich.App. 71, 96 (Mich. Ct. App. 1989).

The Defendants submit that the wrongful acts, which have been attributed to them by Barrette Outdoor, are only legitimate commercial sales transactions. Hence, it is their belief that the claims by Barrette Outdoor are without merit, and do not represent any viable causes of action. Notwithstanding these contentions, the Court finds that the allegations within the complaint are facially sufficient to withstand the Defendants' dispositive motion which must be denied.

Counts eight and nine allege violations of RICO by the Defendants. In order to establish a claim under this statute, 18 U.S.C. § 1961 *et. seq.*, a plaintiff must establish that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Racketeering activity is defined as including several predicate acts, one of which is wire fraud. 18 U.S.C. § 1961(1).

Under 18 U.S.C. § 1343, one who "having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice" is guilty of wire fraud. To plead a pattern of racketeering activity, the plaintiff must allege at least two predicate acts. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238-243 (1989).

When the predicate acts are based on fraud, the pleading is governed by Rule 9(b). *See Brown v. Cassens Transp. Co.,* 546 F.3d 347, 356 n.4 (6th Cir.2008). As noted above, this Rule requires particularity when pleading claims of fraud. At a minimum, a complaint, which alleges a RICO claim, must state "the nature of the fraud [that] gives rise to the predicate offense." *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir.1987). Rule 9(b) requires "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the defendant]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir.1993) (internal quotations omitted). If the plaintiff only makes "loose references to mailings and telephone calls" to support its allegations of fraud, but otherwise fails to identify the parties to these transactions, a reported case out of the Seventh Circuit upheld the dismissal of the RICO claims under both Rule 9(b) and RICO. *See, e.g. Jepson Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir.1994).

Although Barrette Outdoor has set forth predicate acts of wire fraud, Lemanski complains that the elements of his alleged wire fraud have not been pled with any degree of particularity. To plead wire fraud, the aggrieved party is required to allege that the defendant (1) formed a scheme or an artifice to defraud a victim of money and/or property, and (2) used interstate wires in furtherance of the scheme. *United States v. Brown* 147 F.3d 477, 483 (6th Cir.1998).

In the complaint, Barrette Outdoor has advanced the elements of a RICO claim against Lemanski by complaining that it had suffered economic damages when he and others (1) operated a fraudulent pass-through scheme, and (2) made misrepresentations in order to consummate and

11

conceal the scheme against his employer. The complaint alleges that in February of 2010, Lemanksi contacted RDI's national sales manager via interstate wire to request that resin be sold directly to Michigan Resin. Finally, it is Barrette Outdoor's contention that there were at least fourteen specific transactions (complete with dates, prices, and quantities) of the sales between RDI and Michigan Resin, all of which were followed by a similar set of transactions with the same details from Michigan Resin to Barrette Outdoor. Compl. ¶¶ 26-28, 102. These allegations, including outlined amount of damages, are sufficient to adequately satisfy the predicate acts of wire fraud for the RICO count.

Notwithstanding the particularity with which these transactions were identified, Michigan Resin, Wells, and Turner insist that Barrette Outdoor has failed to allege the exact nature of their wrongdoings with any degree of specificity. However, the Court disagrees, in that Barrette Outdoor's pleading contains a sufficiency of facts on which a reasonable inference could be made that these Defendants may have been involved in a scheme to defraud. In particular, Barrette Outdoor alleges that Michigan Resin (1) was capitalized with only the necessary funds to pay the formation fee to the State of Michigan, (2) was formed at a time when neither Turner nor Wells possessed any knowledge or experience in the resin industry; (3) dealt only with one supplier (i.e., RDI) and one purchaser, Barrette Outdoor, throughout its existence; and (4) communicated its existence to Barrette Outdoor as a legitimate resin supplier, although it only existed to enter into a contractual relationship with RDI for the purchase of resin that was subsequently resold at a higher price. Finally, Barrett Outdoor complains that, as a result of these sales, it suffered a loss in the amount of $416,826.10. Compl. §§ 21-24, 31-33, 36. The Court concludes that the complaint states a cognizable RICO claim. Therefore, the Defendants' motions to dismiss will be denied.

Count ten alleges a civil conspiracy by all of the Defendants. A civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Temoborius v. Slatkin*, 157 Mich. App. 587, 599-600 (Mich. Ct. App. 1986). An agreement or a preconceived plan to do an unlawful act is that which must be proved. *Id* at 600. Direct proof of the identified agreement or of a formal agreement is not required. Rather, it is sufficient if the "circumstances, acts and conduct of the parties establish an agreement in fact." *Id*. Finally, a conspiracy may be established through inference and circumstantial evidence. *Id.*

Lemanski argues that the presently pending claim of a conspiracy should be dismissed because the tort claims upon which the conspiracy claim is based are deficient. However, the Court - concludes that Barrette Outdoor has sufficiently alleged the underlying tort claims. In the alternative, Lemanski submits that the allegation of his conspiracy with others is deficient, contending that Barrette Outdoor has failed to identify the individual acts which were allegedly committed. Notwithstanding this argument, the Court concludes that the complaint has sufficiently set forth the allegedly fraudulent pass-through scheme and the specific allegedly fraudulent and tortious acts committed by Lemanski.

Turner, Wells, and Michigan Resin submit that the claim for conspiracy should be dismissed because Barrette Outdoor has failed to plead the existence of a concerted action among the Defendants to engage in an unlawful activity. In particular, they point out that Barrette Outdoor's allegations involve only acts of wrongdoing by Lemanski. However, the Court finds that Barrette Outdoor has alleged facts which facially support an inference of a wrongful concerted action between these Defendants and Lemanski. Compl. ¶¶ 2-5, 22-4, 26-8, 34-5, 110. In summary, the

13

Court finds that the complaint does state a cognizable civil conspiracy claim. Therefore, the Defendants' motions to dismiss will be denied.

In count eleven, Barrette Outdoor submits that the Court should pierce the corporate veil of Michigan Resin, believing that Turner and Wells were the sole members of their Company which existed solely to (1) enter into contracts with RDI, (2) usurp its business opportunities, and (3) fraudulently profit from its subsequent purchases.

The law in Michigan authorizes a court to pierce the corporate veil if (1) the entity is only an instrumentality of another individual or entity, (2) the corporate entity was used to commit a wrong or fraud, and (3) there was an unjust enrichment or a loss to the plaintiff. *Rymal v. Baergen*, 262 Mich.App. 274, 293-294 (Mich. Ct. App. 2004) (internal citations omitted). There is no single rule that delineates when the protections of a corporate entity should be disregarded. *Id.* Michigan courts look to three dispositive factors for guidance; namely "[f]irst, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff." *Nogueras v. Maisel & Associates of Michigan*, 142 Mich. App. 71, 86 (Mich. Ct. App. 1985).

Turner and Wells submit that Barrette Outdoor has failed to sufficiently plead two of the essential elements under *Rymal*, supra. With regard to the second element, the Court, finding that Barrette Outdoor has adequately contended that Michigan Resin was used to commit a fraud or wrong. In its complaint, Barrette Outdoor has alleged that Michigan Resin was formed solely to commit fraud by entering into contracts for resin with RDI and then reselling it at an inflated price. Compl. ¶¶ 23-4, 117, 122. With regard to the third element, Barrette Outdoor alleges a loss of over $400,000. Compl. ¶ 33.

14

Contrary to these Defendants' contentions, the Court concludes that Barrette Outdoor has sufficiently advanced its allegations addressing the piercing of the corporate veil issue which, in turn, justifies a denial of the pending motion to dismiss.

V.

Therefore and for the reasons that have been stated above, the motions to dismiss by the Defendants (Michigan Resin, Turner and Wells) and the Defendant (Lemanski) are denied in their entirety. (ECF 8, 10). Count five of the complaint is dismissed by virtue of a stipulation that was entered by Barrette Outdoor. (ECF 11 at 5).

IT IS SO ORDERED.

Date: March 8, 2012                                           s/Julian Abele Cook, Jr.
                                                              JULIAN ABELE COOK, JR.
                                                              U.S. District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 8, 2012.

                                                              s/ Kay Doaks
                                                              Case Manager