UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC. d/b/a
U.S. FENCE INC.,

       Plaintiff/Counter-Defendant,

v

MICHIGAN RESIN REPRESENTATIVES,
LLC, a Michigan limited liability company;
LISA J. WELLS a/k/a LISA J. LEMANSKI,
an individual; and TAMARA L. TURNER,
an individual,

       Defendants,

   and

JOHN H. LEMANSKI, JR., an individual,

       Defendant/Counter-Plaintiff.

Case No. 2:11-cv-13335
Hon. Julian Abele Cook, Jr.
Magistrate Laurie J. Michelson

_____/

### PLAINTIFF BARRETTE OUTDOOR LIVING, INC.'S MOTION FOR SANCTIONS AGAINST DEFENDANT MICHIGAN RESIN REPRESENTATIVES, LLC, TAMARA L. TURNER, AND LISA J. WELLS FOR PROVIDING FALSE INTERROGATORY ANSWERS AND TAX DOCUMENTS

Plaintiff Barrette Outdoor Living, Inc. ("Barrette"), by and through its counsel, Clark Hill PLC, moves this Court for an order imposing monetary sanctions against Defendants Michigan Resin Representatives, LLC ("MRR"), Tamara L. Turner ("Turner"), and Lisa J. Wells ("Wells") (collectively, the "MRR Defendants") pursuant to Fed. R. Civ. P. 26 and 37, as well as E. Mich. L.R. 7.1. Monetary sanctions are appropriate here because the MRR Defendants served false interrogatory answers and other misleading tax documents upon Barrette in an attempt to conceal their fraudulent transfers to Defendant John H. Lemanski, Jr. ("Lemanski"). In particular, the MRR Defendants represented that nearly all of MRR's 2010 revenues (*i.e.,* $50,030) where paid to six (6) purported "independent contractors." However, upon deposition questioning, two of the

8750443.2 39069/152087

purported independent contractors (*i.e.,* Brandon Lutton and Paul Fitzpatrick) denied even knowing any of the Parties to this action, and another purported independent contractor, (namely, MRR's accountant Tammy Armstrong), pled the Fifth Amendment when asked whether it was true that "Tamara Turner and Michigan Resins . . . claimed that you received money as an independent contractor that you actually did not receive."[1]

In support of its Motion, Barrette relies upon the facts, law, and argument set forth in and the exhibits attached to its supporting Brief filed contemporaneously herewith. The MRR Defendants are currently unrepresented and Barrette's counsel was unable to obtain concurrence in the relief sought herein.

WHEREFORE, Barrette requests that this Honorable Court enter an order: (a) requiring the MRR Defendants and/or their former counsel to pay the attorneys' fees and costs incurred by Barrette in investigating and responding to the MRR Defendants' false discovery submissions, and (b) award to Barrette any such further relief this Court deems just and equitable.

> Respectfully submitted,
>
> CLARK HILL PLC
>
> By: /s/ Michael J. Pattwell
> Aaron O. Matthews (P64744)
> Jordan S. Bolton (P66309)
> Michael J. Pattwell (P72419)
> Attorneys for Plaintiff
> 212 E. Grand River Avenue
> Lansing, MI  48906
> Phone: (517) 318-3043
> Email: amatthews@clarkhill.com
> mpattwell@clarkhill.com
> jbolton@clarkhill.com

Date:  February 6, 2013

---

[1] Two of the purported independent contractors (*i.e.*, Crystal Domenech and Pulaski Hill) failed to attend their properly scheduled depositions and another purported independent contractor (*i.e.*, James Daniels) was not able to be located.

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC. d/b/a
U.S. FENCE INC.,

       Plaintiff/Counter-Defendant,

v

MICHIGAN RESIN REPRESENTATIVES,
LLC, a Michigan limited liability company;
LISA J. WELLS a/k/a LISA J. LEMANSKI,
an individual; and TAMARA L. TURNER,
an individual,

       Defendants,

  and

JOHN H. LEMANSKI, JR., an individual,

       Defendant/Counter-Plaintiff.

       Case No. 2:11-cv-13335
       Hon. Julian Abele Cook, Jr.
       Magistrate Judge Laurie J. Michelson

_____/

**BRIEF IN SUPPORT OF PLAINTIFF BARRETTE OUTDOOR LIVING, INC.'S MOTION FOR SANCTIONS AGAINST DEFENDANTS MICHIGAN RESIN REPRESENTATIVES, LLC, TAMARA L. TURNER, AND LISA J. WELLS FOR PROVIDING FALSE INTERROGATORY ANSWERS AND TAX DOCUMENTS**

i

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 1

III. PROCEDURAL HISTORY ............................................................................................. 2

    A. Turner's July 19, 2011 Recorded Statement Regarding The Putative Independent Contractors ................................................................................................ 2

    B. Barrette's May 18, 2012 Discovery Requests Regarding The Putative Independent Contractors ................................................................................................ 2

    C. MRR Defendants' Misleading Responses To Barrette's Discovery Requests Regarding The Putative Independent Contractors .................................................................. 3

    D. Armstrong's Production Of Misleading MRR Accounting Records Regarding The Putative Independent Contractors .................................................................. 4

    E. Armstrong Takes The Fifth Amendment Seventy One (71) Times At Her Deposition And Admits To Destroying Her Communications With Turner .................................. 4

    F. Brandon H. Lutton Denies Even Knowing Any Of The MRR Defendants ......................... 7

    G. Paul Fitzpatrick Denies Even Knowing Any Of The MRR Defendants ............................ 7

IV. ARGUMENT ................................................................................................................... 8

V. CONCLUSION .............................................................................................................. 10

8750443.2 39069/152087

**TABLE OF AUTHORITIES**

**Cases**

*CSX Transp., Inc. v. May*, 1990 U.S. App. LEXIS 21566, at *8 (6th Cir. Dec. 7, 1990)........... v, 9

*Grange Mut. Cas. Co. v. Mack,* 270 F. App'x 372 (6th Cir. 2008) ................................................. v

*Perry v. County of Kent*, 2002 U.S. Dist. LEXIS 1380, at *8 (W.D. Mich. Jan. 23, 2002) ....... v, 9

*Robert Bosch LLC v. A.B.S. Power Brake, Inc.*, 2012 U.S. Dist. LEXIS 18749, *2 (E.D. Mich. Feb. 15, 2012) ................................................................................................................... v, 9

*Steed v. EverHome Mortg. Co.*, 308 Fed. Appx. 364 (11th Cir. 2009) ....................................... v, 8

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................ 1, v, 8, 9

Fed. R. Civ. P. 37 ...................................................................................................................... v, 8

## STATEMENT OF QUESTIONS PRESENTED

I.  WHETHER THIS COURT SHOULD SANCTION THE MRR DEFENDANTS FOR SERVING FALSE INTERROGATORY RESPONSES AND TAX RETURNS IN AN ATTEMPT TO CONCEAL THEIR FRAUDULENT KICKBACKS TO LEMANSKI?

**Barrette Answers: Yes**

## CONTROLLING AND MOST PERSUASIVE AUTHORITIES

Fed. R. Civ. P. 26.

Fed. R. Civ. P. 37.

*Grange Mut. Cas. Co. v. Mack,* 270 F. App'x 372, 376 (6th Cir. 2008) (authority to sanction).

*CSX Transp., Inc. v. May*, 1990 U.S. App. LEXIS 21566, at *8-10 (6th Cir. Dec. 7, 1990) (unpublished) (upholding entry of default proper for failing to provide complete answers to interrogatories).

*Robert Bosch LLC v. A.B.S. Power Brake, Inc.*, 2012 U.S. Dist. LEXIS 18749, *2-3 (E.D. Mich. Feb. 15, 2012) (unpublished) (sanctioning party who served false answers to interrogatories and requests for admissions).

*Perry v. County of Kent*, 2002 U.S. Dist. LEXIS 1380, at *8 (W.D. Mich. Jan. 23, 2002) (unpublished) (dismissing case as a sanction for, inter alia, serving false interrogatory answers).

*Steed v. EverHome Mortg. Co*., 308 Fed. Appx. 364, 371 (11th Cir. 2009) (false interrogatory answers are the equivalent of a failure to respond).

I.  **INTRODUCTION**

In an apparent attempt to conceal numerous fraudulent cash transfers to Defendant John H. Lemanski, Jr. ("Lemanski"), Defendant Michigan Resin Representatives, LLC ("MRR"), and its principals, Tamara L. Turner ("Turner") and Lisa J. Wells ("Wells") (collectively, the "MRR Defendants") submitted to Plaintiff Barrette Outdoor Living, Inc. ("Barrette") a false 2010 tax return whereby they claimed to have paid $50,030 to "independent contractors" in 2010. Furthermore, in response to Barrette's First Set of Discovery Requests, the MRR Defendants listed Tammy Armstrong, Paul Fitzpatrick, Brandon Lutton, Crystal Domenech, Pulaski Hill, and James Daniels as the six purported independent contractors to whom MRR paid $50,030 in 2010.

MRR's 2010 tax return and the amended interrogatory answer were false when made. To be sure, at their respective depositions, both Paul Fitzpatrick and Brandon Lutton denied even knowing any of the Defendants in this matter. And, another purported independent contractor, (namely, MRR's accountant Tammy Armstrong), pled the Fifth Amendment when asked whether it was true that MRR really paid $50,030 to independent contractors in 2010.[2] Accordingly, for the reasons set forth below, Barrette requests that this Court sanction the MRR Defendants and/or their former counsel, for serving blatantly a false interrogatory answer and knowingly submitting to Barrette a fraudulent tax return.

II.  **FACTUAL BACKGROUND**

Over the 15 month duration of the fraudulent pass-through scheme, the MRR Defendants converted from Barrette over $400,000.00. MRR's own bank records -- produced pursuant subpoenas issued by Barrette -- then show that nearly *all* of MRR's after-tax profits were *withdrawn in cash*. With the exception of $50,030 allegedly paid to independent contractors

---

[2] Two of the purported independent contractors (*i.e.,* Crystal Domenech and Pulaski Hill) failed to attend their properly scheduled depositions and another purported independent contractor (*i.e.,* James Daniels) was not able to be located.

1

(discussed below), MRR has failed or refused to identify the whereabouts of the $400,000 withdrawn from its bank account in cash.

Barrette alleges that Lemanski -- the true owner of MRR -- ultimately received the cash withdrawn from MRR's bank account. And, the evidence discovered by Barrette to date corroborates Barrette's allegation. Lemanski's expenditures during and immediately after perpetration of the fraudulent scheme outpaced his $94,000 per year in household income. By way of very limited example, Lemanski: (i) paid off $32,000 of car loans in October of 2010; (ii) purchased for his wife a $23,050 diamond ring in December of 2010; (iii) paid off a $90,000 home loan in March 2011; (iv) again in March 2011 paid off a $20,000 credit card debt; and (v) between January 1, 2010 to the present, constructed a nearly 6,000 square foot mansion fully equipped with a state-of-the-art security system, theatre, and game room. (Doc. No. 50-6, 50-7, and three sealed exhibits.)

### III.   PROCEDURAL HISTORY

#### A.   Turner's July 19, 2011 Recorded Statement Regarding The Putative Independent Contractors

As part of its initial investigation of the fraudulent purchasing scheme, Barrette conducted a consensually recorded interview with Turner. (See 07/19/11 Turner Statement, attached as **Exhibit A**.) During that interview, Turner stated that MRR hired six (6) independent contractors in 2010. (*Id.* at 14-18.) When asked to identify those purported independent contractors, Turner could *only* recall Tammy Armstrong (MRR's accountant), Jay Pulaski Hill, and Crystal Dominique. (*Id.* at 14-18.)

#### B.   Barrette's May 18, 2012 Discovery Requests Regarding The Putative Independent Contractors

On May 18, 2012, Barrette served upon MRR Barrette's First Set of Discovery Requests seeking MRR's tax returns, 1099s, and payroll documents, and asking MRR to identify "all

2

employees, independent contractors, and/or professional service providers who have worked and/or performed services for or on behalf of MRR between February 1, 2010 and the present." (Doc. No. 38-3 and 38-4.) On or around June 18, 2012, Barrette also served a subpoena upon MRR's purported accountant Tammy Armstrong. (See 06/18/12 Armstrong Subpoena, attached as **Exhibit B**.) The Subpoena requested production of all documents related to MRR, Turner, Wells, and Lemanski. (*Id.*)

### C. MRR Defendants' Misleading Responses To Barrette's Discovery Requests Regarding The Putative Independent Contractors

The MRR Defendants collectively produced only 139 documents which included MRR's 2010 tax return. (See MRR_000090-104, attached as **Exhibit C**.) Among other things, MRR's 2010 tax return contains a Form 1065 which falsely states that MRR paid "$50,030" to "Independent Contractor" in 2010. (*Id.*) Additionally, in response to Interrogatory No. 8 asking for identification of MRR's employees and independent contractors, MRR supplied the following answer: "Tamara Turner and Lisa Wells. In addition, MRR utilized the services of a contract employee whose name and information are not known at this time but maintained no ownership with MRR or affiliation with any of the other parties." (Doc. No. 38-7.)

This Court found that answer to be inadequate and ordered MRR to withdraw its objections and provide a full and complete response. (Doc. No. 71 at 4.) MRR complied, and on October 31, 2012, served the following *false* interrogatory answer:

> The only employees other than Turner and Wells utilized by MRR are the independent contractors identified and listed in the documents provided by Tammy Armstrong which are already in Plaintiff's possession. As to the addresses and information for each independent contractor Defendant will attempt to gather the information themselves regarding the information of each independent contractor and if Defendant is unable to gain access to such records themselves, Defendant will provide an appropriate authorization so that Plaintiff's counsel gain access to the requested information. The independent contractors utilized by MRR were Crystal Domenech [sic] Brandon Lutton, James Daniels, Pail [sic] Fitzpatrick, and

3

[sic] Pulaski Hill, [sic] Tammy Armstrong, who collectively received $50,030 in compensation for services rendered. [(10/31/12 Supplemental Discovery Responses of MRR, attached as **Exhibit D**.)]

This answer was false when made.

### D. Armstrong's Production Of Misleading MRR Accounting Records Regarding The Putative Independent Contractors

On July 11, 2012, and after much hassle,[3] Armstrong, through her second attorney, Alan Edwards, produced to Barrette an MRR accounting record which stated, *inter alia*, that MRR paid a total of "$50,030" to the following six (6) independent contractors:

| | |
|---|---|
| Pulaski Hill | $6,200 |
| TAMMY | $7,330 |
| CRYSTAL DOMENECH | $8,920 |
| Brandon H. Lutton | $4,940 |
| James Daniels | $8,200 |
| Paul Fitzpatrick | $14,440 |

(See 07/11/12 Letter from Edwards to Pattwell and MRR Accounting Document, attached as **Exhibit F**.) This document was false when submitted.

### E. Armstrong Takes The Fifth Amendment Seventy One (71) Times At Her Deposition And Admits To Destroying Her Communications With Turner

On October 1, 2012, Armstrong appeared for her oral deposition along with her third attorney, criminal defense counsel Thomas Loeb. (See 10/01/12 Armstrong Tr., attached as **Exhibit G**.) Mr. Loeb served Barrette with numerous objections to Barrette's document requests, including objections based upon the Fifth Amendment. During her deposition Armstrong admitted that she *destroyed* all of her text and email communications with Defendant Turner:

---

[3] Initially, Barrette received a letter, dated July 5, 2012, from Russell Donelson (Armstrong's first attorney) falsely stating that Armstrong's only involvement with MRR was in her capacity as an employee of Liberty Tax Services and therefore that she did not possess any documents responsive to the Subpoena. (See 07/05/12 Letter from Donelson to Pattwell, attached as **Exhibit E**.)

4

> Q. You stated earlier that you communicated with Ms. Turner via e-mail and/or cell phone and text message. Did you destroy all of those communications?
>
> A. *Can you please reword the question? I don't really understand.*
>
> Q. You previously stated that you had communicated via e-mail and text message with Ms. Turner. Now you state that you don't have any of those communications in your possession, custody or control, is that correct?
>
> A. *That is correct.*
>
> Q. How did you come not to . . . have them in your possession, custody or control?
>
> A. *I would have deleted them at some point.*
>
> Q. Okay. At what point did you delete your communications with Ms. Turner?
>
> A. *I could not tell you.*
>
> Q. Have you deleted any communications with Ms. Turner since you were served with the first subpoena in this case?
>
> A. *No.*
>
> Q. Have you been contacted by Ms. Turner via cell phone, text message or e-mail since you first received the subpoena in this case?
>
> A. *Yes.*
>
> Q. How is it that you don't currently have those [communications] in your possession, custody or control?
>
> A. *I didn't know that I -- I have deleted text messages -- I delete all my text messages from my phone. I don't just leave them all sitting on there so I . . .* [(*Id.* at 45-46.)]

Armstrong asserted the Fifth Amendment in response questions regarding MRR's purported independent contractors:

> Q. Do you know whether Michigan Resins has ever employed any independent contractors?
>
> A. *I assert my Fifth Amendment privilege.* [(*Id.* at 36.)]

Armstrong consistently asserted the Fifth Amendment in response any questions regarding the specific independent contractors listed in the MRR accounting record she produced to Barrette on July 11, 2012:

> Q. Isn't it true that Exhibit 2 represents that MR[R] paid to independent

5

> contractors in total for tax year 2010 $50,030?
>
> A. *I assert my Fifth Amendment privilege.*
>
> Q. Isn't it true that you did not in fact receive from MRR $7,330?
>
> A. *I assert my Fifth Amendment privilege.*
>
> Q. Isn't it true that Pulaski Hill did not receive $6,200 from Michigan Resins?
>
> A. *I assert my Fifth Amendment privilege.*
>
> Q. Isn't it true that Crystal Domenech did not receive $8,920 from Michigan Resins?
>
> A. *I assert my Fifth Amendment privilege.*
>
> Q. Isn't it true that Brandon H. Lutton did not receive from Michigan Resins $4,940?
>
> A. *I assert my Fifth Amendment privilege.*
>
> Q. Isn't it true that James Daniels did not receive from Michigan Resins $8,200?
>
> A. *I assert my Fifth Amendment privilege.*
>
> Q. Isn't it true that Paul Fitzpatrick did not receive from Michigan Resins $14,440?
>
> A. *I assert my Fifth Amendment privilege.* [(*Id.* at 48.)]

With coaching from her criminal defense counsel Armstrong also asserted the Fifth Amendment in response questions regarding MRR's 2010 Tax Return and the contractor payments listed therein:

> Q. Isn't it true that this Form 1065 of Michigan Resins states that Michigan Resins paid to independent contractors $50,030 in tax year 2010?
>
> A. *That's what that form -- is that what I'm supposed -- I don't understand.*
>
> MR. LOEB: If you're not sure, take the fifth.
>
> THE WITNESS: *I plead the Fifth Amendment.*
>
> Q. I'm just asking you what the form states. Does it state that Michigan Resins paid to independent contractors $50,030 in tax year 2010 . . .
>
> A. *Yes.*
>
> Q. Isn't that statement false?
>
> MR. LOEB: Now you take the fifth.
>
> THE WITNESS: *I plead the Fifth Amendment.*

6

> Q. Isn't it true that Michigan Resins did not pay independent contractors at all for tax year 2010?
>
> A. *I invoke my Fifth Amendment privilege.* [(*Id.* at 54-55.)]

### F. Brandon H. Lutton Denies Even Knowing Any Of The MRR Defendants

Barrette naturally took the oral deposition of Brandon H. Lutton on October 4, 2012. (See 10/04/12 Lutton Tr., attached as **Exhibit H**.) Mr. Lutton – an innocent bystander in this case – denied ever knowing, working for, or receiving money from MRR:

> Q. Now, have you ever heard of a company by the name of Michigan Resin Representatives?
>
> A. No, sir, other than the subpoena you had issued me.
>
> Q. So you never worked for Michigan Resin Representatives?
>
> A. No, sir.
>
> Q. You've never provided any services of any sort to Michigan Resin Representatives?
>
> A. No, sir.
>
> Q. Have you ever received any compensation from Michigan Resin Representatives?
>
> A. No, sir. [(*Id.* at 9.)]

Mr. Lutton also testified that he does not know Wells, Turner, Lemanski, Pulaski Hill, Crystal Domenech, James Daniels, or Paul Fitzpatrick. (*Id.* at 9-11.) In fact, it appears that Mr. Lutton simply had the misfortune of living next door to MRR's accountant, Tammy Armstrong. (*Id.* at 11-12.)

### G. Paul Fitzpatrick Denies Even Knowing Any Of The MRR Defendants

Barrette also took the oral deposition of Paul O. Fitzpatrick on October 4, 2012. (See 01/11/13 Fitzpatrick Tr., attached as **Exhibit I**.) Mr. Fitzpatrick – another innocent bystander in this case – denied ever knowing, working for, or receiving money from MRR:

7

> Q. Have you ever -- before speaking with me, have you ever heard of a company by the name of Michigan Resin Representatives?
>
> A. No.
>
> Q. So, you've never received any money or compensation from Michigan Resin Representatives?
>
> A. No. [(*Id.* at 9.)]

Mr. Fitzpatrick also testified that he does *not* know Wells or Lemanski. (*Id.* at 10-12.) In fact, it appears that Mr. Fitzpatrick simply had the misfortune of hiring Tammy Armstrong and potentially Tamara Turner to do his taxes. (*Id.* at 9-11.)

## IV. ARGUMENT

Rule 37 allows a party to file a motion to compel discovery, and it considers evasive or incomplete disclosures as a failure to disclose when ruling on a motion to compel. Fed. R. Civ. P. 37(a)(4). A court may impose sanctions where a party fails to provide answers, objections, or a written response to interrogatories or requests for production. Fed. R. Civ. P. 37(d)(1)(A)(ii).[4] Sanctions may include: (1) the payment of reasonable expenses caused by the failure; (2) designating facts as established as the prevailing party claims; (3) prohibiting the disobedient party from opposing designated claims or introducing designated matters into evidence; (4) striking the pleadings in whole or in part; (5) staying the proceeding until the order is obeyed; (6) dismissing the action or proceeding in whole or in part; and (7) rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(d)(3).

Rule 26(g) requires an attorney to sign every discovery response asserting, *inter alia*, that the response is complete and correct and that any objection is consistent with the federal rules

---

[4] *See also Steed v. EverHome Mortg. Co.,* 308 Fed. Appx. 364, 371 (11th Cir. 2009) ("While EverHome did not technically fail to respond, the district court properly determined that EverHome's "misrepresentation" was the equivalent of a failure to respond and a violation of Rule 37(d)").

8

and law, is "not interposed for any improper purpose," and is not unreasonable. Fed. R. Civ. P. 26(g)(1)(A), (B). The court, *sua sponte* or on motion, must impose "an appropriate sanction" on the signer of an improper certification, "the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). The sanction may include an order to pay reasonable expenses caused by the violation. *Id.*[5]

In this matter, the MRR Defendants, in addition to providing Barrette with false and misleading tax documents, served evasive and incomplete answers to Barrette's request that they identify all independent contractors employed by MRR. (*See, e.g.,* Ex. C; Doc. No. 38-7.) This Court then ordered the MRR Defendants to identify all independent contractors employed by MRR. (Doc. No. 71 at 4.) In response, the MRR Defendants, through their counsel John Hermann, served supplemental responses identifying the following individuals as independent contractors of MRR: (1) Tammy Armstrong; (2) Brandon Lutton; (3) Paul Fitzpatrick; (4) Crystal Domenech; (5) Pulaski Hill; and (6) James Daniels. (See 10/31/12 Supplemental Discovery Responses of MRR (Ex. D).)

As demonstrated by the deposition transcripts of Lutton, Fitzpatrick, and Armstrong, the 2010 tax return submitted by the MRR Defendants, as well as the MRR Defendants' amended answer to Interrogatory No. 8, were false when made. (See Exs. G, H, and I.) Accordingly, the MRR Defendants not only served a false interrogatory answer and a fraudulent tax return, but they did so in an apparent attempt to conceal from Barrette the cash monies they fraudulently

---

[5] *See also Robert Bosch LLC v. A.B.S. Power Brake, Inc.*, 2012 U.S. Dist. LEXIS 18749, *2-3 (E.D. Mich. Feb. 15, 2012) ("Sanctions were justified in part by false statements made in response to Plaintiff's interrogatories and requests for admission"); *Perry v. County of Kent*, 2002 U.S. Dist. LEXIS 1380, at *8 (W.D. Mich. Jan. 23, 2002) (dismissing case where "defendants were impeded in their ability to discover facts relevant to plaintiff's claims by his failure to produce documents, false answers to interrogatories, and evasive answers during the deposition"); *CSX Transp., Inc. v. May,* 1990 U.S. App. LEXIS 21566, at *8-10 (6th Cir. Dec. 7, 1990) (unpublished) (default proper for failing to provide complete answers to interrogatories and failing to file responsive briefs).

transferred to Lemanski. Because the MRR Defendants' misleading and false discovery responses have protracted this litigation and caused Barrette great time and expense, Barrette requests that this Court sanction the MRR Defendants and grant to Barrette the cost and fees it incurred in investigating and responding to same.

## V.     CONCLUSION

For the foregoing reasons, Barrette requests that this Honorable Court enter an order: (a) requiring the MRR Defendants and/or their former counsel to pay the attorneys' fees and costs incurred by Barrette in investigating and responding to the MRR Defendants' false discovery submissions, and (b) award to Barrette any such further relief this Court deems just and equitable.

                Respectfully submitted,

                CLARK HILL PLC

                By:     /s/ Michael J. Pattwell
                        Aaron O. Matthews (P64744)
                        Jordan S. Bolton (P66309)
                        Michael J. Pattwell (P72419)
                        Attorneys for Plaintiff
                        212 E. Grand River Avenue
                        Lansing, MI  48906
                        Phone: (517) 318-3043
                        Email:  amatthews@clarkhill.com
                                    mpattwell@clarkhill.com
                                    jbolton@clarkhill.com

Date:  February 6, 2013

## INDEX OF EXHIBITS

A. July 19, 2011 Turner Statement

B. June 18, 2012 Armstrong Subpoena

C. MRR's 2010 tax return. (MRR_000090-104)

D. October 31, 2012 Supplemental Discovery Responses of MRR

E. July 05, 2012 Letter from Donelson to Pattwell

F. July 11, 2012 Letter from Edwards to Pattwell and MRR Accounting Document

G. October 4, 2012 Lutton Transcript.

H. October 1, 2012 Armstrong Transcript.

I. January 11, 2013 Fitzpatrick Transcript

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to Robert J. Morad, and Abdu H. Murray; and upon the following Defendants by placing same in a United States mail depository, enclosed in an envelope bearing postage fully prepaid and addressed properly upon and via email to:

| | |
|---|---|
| Tamara Turner<br>8312 Honey Tree<br>Canton, MI 48107<br>tamt1971@yahoo.com | Michigan Resin Representatives, LLC<br>c/o Tamara Turner, Resident Agent<br>8312 Honey Tree<br>Canton, MI 48107<br>tamt1971@yahoo.com |

Lisa J. Wells
17162 Wormer St.
Detroit, MI 48219-3677
lisawells34@hotmail.com

s/Michael J. Pattwell (P72419)
CLARK HILL PLLC
212 E. Grand River Avenue
Lansing, MI 48906
Phone: (517) 318-3043
mpattwell@clarkhill.com

12

8750443.2 39069/152087