UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC. d/b/a
U.S. FENCE INC.,

                Plaintiff/Counter-Defendant,

v

MICHIGAN RESIN REPRESENTATIVES,
LLC, a Michigan limited liability company;
LISA J. WELLS a/k/a LISA J. LEMANSKI,
an individual; and TAMARA L. TURNER,
an individual,

                Defendants,

    and

JOHN H. LEMANSKI, JR., an individual,

                Defendant/Counter-Plaintiff.

Case No. 2:11-cv-13335
Hon. Julian Abele Cook, Jr.
Magistrate Laurie J. Michelson

/

**PLAINTIFF BARRETTE OUTDOOR LIVING, INC.'S MOTION FOR
SANCTIONS AGAINST DEFENDANT JOHN H. LEMANSKI JR. FOR
HIS INTENTIONAL DESTRUCTION OF EVIDENCE AND VIOLATION
OF THIS COURT'S DISCOVERY ORDER**

Plaintiff Barrette Outdoor Living, Inc. ("Barrette"), by and through its counsel, Clark Hill

PLC, moves this Court for entry of a default judgment and imposition of other spoliation

sanctions against Defendant John H. Lemanski, Jr. ("Lemanski"), pursuant to Fed. R. Civ. P. 26

and 37, as well as E. Mich. L.R. 7.1. Entry of default judgment is an appropriate sanction here,

because two separate forensic computer analyses show that Lemanski: (a) deleted thousands of

files from his work computer shortly after learning that he had been terminated; (b) destroyed his

personal cell phone one month after this suit was initiated, and then failed to identify that cell

phone in his response to Barrette's First Set of Interrogatories; (c) downloaded sophisticated

scrubbing software (*e.g.,* "Eraser 6," "Piriform CCleaner," and possibly "Killbox") onto his

personal laptop shortly after being served with Barrette's First Set of Requests for Production of Documents, and after having been specifically instructed by Barrette to preserve evidence, including without limitation electronically-stored information; and (d) then used that scrubbing software to permanently erase hundreds of thousands of files (preliminary work has identified over 270,000 files) from his personal laptop just a few weeks before producing that laptop pursuant to this Court's October 17, 2012 Discovery Order, at a time when he knew of Barrette's pending motion to compel discovery, including without limitation, production of that computer for imaging.

In support of its Motion, Barrette relies upon the facts, law, and argument set forth in and the exhibits attached to its supporting Brief filed contemporaneously herewith. Throughout January and February of 2013, Barrette's counsel contacted Lemanski's counsel, explained the nature and legal basis for this Motion, and requested but did not obtain concurrence in the relief sought.

**WHEREFORE**, Barrette requests that this Honorable Court: (a) schedule an evidentiary hearing and require Lemanski to show cause why he should not be held in contempt for violating this Court's Discovery Order and for intentionally destroying evidence during the pendency of this action; (b) enter a default judgment and other spoliation sanctions against Lemanski; (c) order Lemanski and/or his counsel to pay Barrette's reasonable costs and attorneys' fees incurred in prosecuting this action, including this Motion; and (d) award to Barrette any such further relief this Court deems just and equitable.

Respectfully submitted,

CLARK HILL PLC

By:   /s/ Michael J. Pattwell
        Aaron O. Matthews (P64744)
        Jordan S. Bolton (P66309)
        Michael J. Pattwell (P72419)
        Attorneys for Plaintiff
        212 E. Grand River Avenue
        Lansing, MI  48906
        Phone: (517) 318-3043
        Email:  amatthews@clarkhill.com
               mpattwell@clarkhill.com
               jbolton@clarkhill.com

Date:  February 6, 2013

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC. d/b/a
U.S. FENCE INC.,

                Plaintiff/Counter-Defendant,

v

MICHIGAN RESIN REPRESENTATIVES,
LLC, a Michigan limited liability company;
LISA J. WELLS a/k/a LISA J. LEMANSKI,
an individual; and TAMARA L. TURNER,
an individual,

                Defendants,

    and

JOHN H. LEMANSKI, JR., an individual,

                Defendant/Counter-Plaintiff.

Case No. 2:11-cv-13335
Hon. Julian Abele Cook, Jr.
Magistrate Judge Laurie J. Michelson

_____ /

**PLAINTIFF BARRETTE OUTDOOR LIVING, INC.'S BRIEF IN SUPPORT OF ITS
MOTION FOR SANCTIONS AGAINST DEFENDANT JOHN H. LEMANSKI JR. FOR
HIS INTENTIONAL DESTRUCTION OF EVIDENCE AND VIOLATION
OF THIS COURT'S DISCOVERY ORDER**

i

TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ...................................................... 2

   A.   Lemanski's Fraudulent Pass-Through Scheme ................................................ 2

   B.   Lemanski's Expertise In Computers And Information Technology ..................................... 3

   C.   Lemanski's Intentional Deletion Files From His Work Computer ..................................... 4

   D.   Barrette Serves Lemanski With A Notice To Preserve Electronically-Stored Information
        Before Filing Suit .......................................................................................... 5

   E.   Lemanski Destroys His Personal Cell Phone Shortly After Being Served With Barrette's
        Complaint ...................................................................................................... 5

   F.   Lemanski Lodges Evasive And False Answers To Barrette's First Set Of Discovery
        Requests ......................................................................................................... 6

   G.   Lemanski Installs Sophisticated Scrubbing Software On His Personal Laptop ................. 7

   H.   Lemanski's Counsel Incorrectly Advises Barrette That The Personal Laptop And Cell
        Phone Identified In Lemanski's Discovery Responses Were The Only Responsive
        Computers And Phones Used By Lemanski ...................................................... 7

   I.    Barrette Moves To Compel The Production Of Lemanski's Personal Computers And Cell
         Phones ............................................................................................................ 7

   J.    Lemanski Uses Scrubbing And Anti-Forensic Software To Delete Over 270,000 Files
         From His Personal Laptop ............................................................................... 8

   K.   Lemanski Violates This Court's Order Compelling Lemanski To Produce All Computers,
        Cell Phones, and Thumb Drives ...................................................................... 8

III.  ARGUMENT ..................................................................................................... 10

   A.   Lemanski Must Be Sanctioned For His Gross Spoliation Of Evidence ................. 10

        1.   Lemanski Had An Obligation To Preserve His Computers And Cell Phones ............. 11

ii

2.     Lemanski Deleted Files From His Work Computer, Destroyed His Cell Phone, And Scrubbed His Personal Laptop With A Culpable State Of Mind ................................... 13

3.     Lemanski's Cell Phone And The Hundreds Of Thousands Of Files Lemanski Intentionally Deleted From His Work Computer And Personal Laptop Were Relevant To Barrette's Claims ..................................................................................... 15

B.     Lemanski Must Be Sanctioned For Violating This Court's October 17, 2012 Discovery Order .................................................................................................................... 16

C.     Lemanski Must Be Sanctioned For Serving False Interrogatory Answers In An Attempt To Conceal His Spoliation Of Evidence ........................................................................ 18

IV.   CONCLUSION ................................................................................. 19

iii

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Wolever*, 692 F.3d 499 (6th Cir. 2012) ................................................................ v, 11, 12

*Ameriwood Indus., Inc. v. Liberman*, 2007 U.S. Dist. LEXIS 74886, at *8 (E.D. Mo. July, 3, 2007) ................................................................................................................................. 13

*Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462 (W.D. Tex. 2006) ...................................... 13

*Beaven v. US DOJ*, 622 F.3d 540 (6th Cir. 2010) ..................................................................... 11

*Brown v. Gojcaj Foods, Inc*., 2011 U.S. Dist. LEXIS 54569, at *5 (ED Mich May 30, 2011) ... 15

*Chao v. Oriental Forest IV, Inc*., 2009 U.S. Dist. LEXIS 4018, at *6 (W.D. Mich. Nov. 6, 2008) ...................................................................................................................................... 15

*Commc'ns Ctr, Inc. v. Hewitt*, 2005 U.S. Dist. LEXIS 10891, at *7 (E.D. Cal. April 5, 2005)... 13

*CSX Transp., Inc. v. May*, 1990 U.S. App. LEXIS 21566, at *8 (6th Cir. Dec. 7, 1990) ............ 17

*Day v. LSI Corp*., 2012 U.S. Dist. LEXIS 180319, at *47 (D. Ariz. Dec. 19, 2012) .................. 10

*Flagg v. City of Detroit*, 2011 U.S. Dist. LEXIS 114772, at *7 (E.D. Mich. Oct. 5, 2011) ......... 14

*Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384 (M.D. Pa. 2011) .................................................. 13

*Goodman v. Praxair Servs*., 632 F. Supp. 2d 494 (D. Md. 2009) ............................................... 10

*Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372 (6th Cir. 2008) ......................................... v, 15

*Gutman v. Klein*, 2008 U.S. Dist. LEXIS 92398, at *41 (E.D.N.Y. Oct. 15, 2008) ..................... 13

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008) ..................................................................... v, 11

*Krumwiede v. Brighton Assocs, LLC*, 2006 U.S. Dist. LEXIS 31669, at *27 (N.D. Ill. May 8, 2006) ................................................................................................................................. 13

*Owner-Operator Indep. Drivers Ass'n v. Comerica Bank,* 860 F. Supp. 2d 519 (S.D. Ohio 2012) ...................................................................................................................................... 11

*Perry v. County of Kent*, 2002 U.S. Dist. LEXIS 1380, at *8 (W.D. Mich. Jan. 23, 2002) ......... 17

8753337.2 39069/152087

*PIC Group, Inc. v. LandCoast Insulation, Inc*., 2011 U.S. Dist. LEXIS 73342, at \*24 (S.D. Miss. July 7, 2011) ............................................................................................................. 13

*Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99 (2d Cir. 2002).................... v, 14

*Robert Bosch LLC v. A.B.S. Power Brake, Inc.,* 2012 U.S. Dist. LEXIS 18749, \*2 (E.D. Mich. Feb. 15, 2012) ........................................................................................................... 17

*Simon Prop. Group, Inc. v. Lauria*, 2012 U.S. Dist. LEXIS 184638, at \*24 (M.D. Fla. Dec. 13, 2012) ................................................................................................................... 12

*Taylor v. Mitre Corp*., 2012 U.S. Dist. LEXIS 163854, at \*21 (E.D. Va. Sept. 10, 2012) v, 12, 13

*USW, Local 1-1000 v. Forestply Indus*., 2011 U.S. Dist. LEXIS 37766, at \*16 (W.D. Mich. Apr. 1, 2011) ............................................................................................................... 16

*Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497 (D. Md. 2010) ........................ v, 10, 13

**Rules**

Fed. R. Civ. P. 26 .................................................................................................. 1, v, 17

Fed. R. Civ. P. 37 .................................................................................................. v, 15, 16

8753337.2 39069/152087

## STATEMENT OF QUESTIONS PRESENTED

I.   WHETHER LEMANSKI SHOULD BE SANCTIONED FOR DELETING RELEVANT EVIDENCE FROM HIS WORK COMPUTER SHORTLY AFTER LEARNING OF HIS TERMINATION?

    **Barrette Answers: Yes**

II.  WHETHER LEMANSKI SHOULD BE SANCTIONED FOR DESTROYING HIS PERSONAL CELL PHONE ONE MONTH AFTER BEING SERVED WITH A COPY OF THE COMPLAINT IN THIS MATTER?

    **Barrette Answers: Yes**

III. WHETHER LEMANSKI SHOULD BE SANCTIONED FOR SERVING A FALSE INTERROGATORY ANSWER IN AN ATTEMPT TO CONCEAL THE WRONGFUL DESTRUCTION OF HIS PERSONAL CELL PHONE?

    **Barrette Answers: Yes**

IV.  WHETHER LEMANSKI SHOULD BE SANCTIONED FOR USING SOPHISTICATED FORENSIC SCRUBBING SOFTWARE TO PERMANENTLY ERASE APPROXIMATELY 270,000 FILES FROM HIS PERSONAL LAPTOP LESS THAN THREE WEEKS BEFORE PRODUCING SAME PURSUANT TO THIS COURT'S ORDER?

    **Barrette Answers: Yes**

V.   WHETHER LEMANSKI SHOULD BE SANCTIONED FOR VIOLATING THIS COURT'S OCTOBER 17, 2012, DISCOVERY ORDER BY FAILING TO PRODUCE VARIOUS COMPUTERS AND THUMB DRIVES AND BY PRODUCING AN INTENTIONALLY ALTERED VERSION OF HIS LAPTOP?

    **Barrette Answers: Yes**

8753337.2 39069/152087

## CONTROLLING AND MOST PERSUASIVE AUTHORITIES

Fed. R. Civ. P. 26(g).

Fed. R. Civ. P. 37(b)(2).

*Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012) (spoliation standard).

*Grange Mut. Cas. Co. v. Mack,* 270 F. App'x 372, 376 (6th Cir. 2008) (authority to sanction).

*John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (duty to preserve evidence).

*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 109 (2d Cir. 2002) (relevance of spoliated evidence implied from bad faith destruction).

*Taylor v. Mitre Corp.*, 2012 U.S. Dist. LEXIS 163854, at *21 (E.D. Va. Sept. 10, 2012) (unpublished) (entering default judgment under similar circumstances).

*Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 500 (D. Md. 2010) (entering default and imprisoning defendant until he paid plaintiff's attorneys' fees and costs).

8753337.2 39069/152087

## I.   INTRODUCTION

This Brief may describe one of the most blatant and egregious spoliation cases ever submitted to this Court for adjudication. Starting on the day he was terminated, Defendant John H. Lemanski, Jr. ("Lemanski"), a self-proclaimed "computer geek," has waged an unprecedented 18-month long campaign of obstruction, spoliation, misrepresentation, and disregard for both Plaintiff Barrette Outdoor Living, Inc. ("Barrette") and this Court. The pertinent facts, for purposes of this Brief, are as follows:

- Immediately after having been notified of his termination from Barrette and while collecting personal effects from his office, Lemanski deleted 4,481 files from his Barrette work computer.

- Lemanski's work computer also contained an After-Tax Profits Spreadsheet with detailed financial information of Defendant Michigan Resin Representatives, LLC ("MRR"), a company in which Lemanski vehemently denies having any interest.

- Then, less than one month after Barrette served Lemanski with a copy of its Summons and Complaint, Lemanski discarded the very cell phone he had used during the time that the fraudulent pass-through scheme was perpetrated against Barrette (*i.e.,* January 1, 2010 to June 14, 2011).

- Next, in an attempt to conceal the intentional destruction of his cell phone, Lemanski omitted that cell phone from his answer to Barrette's interrogatory asking Lemanski to identify all cell phones he owned and/or used between November 1, 2009 to the present.

- Perhaps most egregiously, days after having been served with Barrette's Motion to Compel (which sought the production of all of Lemanski's computers and cell phones), **Lemanski began using sophisticated scrubbing and anti-forensic software (*i.e.,* "Eraser 6," "Piriform CCleaner," and possibly "Killbox") to permanently erase over 270,000 files from his personal laptop.**

- Barrette prevailed on its Motions to Compel and pursuant to this Court's October 17, 2012, Discovery Order, Lemanski was forced to produce his freshly scrubbed laptop and a newly purchased cell phone to Spectrum Computer Forensic & Risk Management, LLC ("Spectrum"), an independent forensic expert. Lemanski, of course, did not disclose to Spectrum his mass spoliation.

1

- Nearly as bad, and in further violation of this Court's Discovery Order, Lemanski failed to produce to Spectrum numerous computers, thumb drives, and other devices known to have been owned and/or used by Lemanski.

In sum, Lemanski has intentionally destroyed all relevant evidence on each and every computer and cell phone identified by him to date, and has either destroyed or failed to disclose numerous other computers, PDAs, thumb drives, and cell phones containing relevant evidence. Lemanski's time is now up. The tomfoolery must end. Viewing Lemanski's spoliation, it would be highly prejudicial and unfair to require Barrette to further prosecute this matter.

As set forth below, Lemanski's actions in this case are unoriginal. When faced with similar acts of spoliation conducted during the pendency of litigation (*i.e.*, an apples to apples comparison), federal district courts often exercise their discretion and impose the most severe sanctions, including entry of default judgment and monetary penalties. Indeed, some courts have even exercised their *contempt powers* and ordered defendants to be *imprisoned* until judgment is satisfied. In the end, Barrette requests that this Court follow the dozen or so federal decisions cited below, enter a default judgment against Lemanski, and require Lemanski and/or his counsel (if it turns out that they share the culpability) to pay all attorneys' fees and costs incurred by Barrette in prosecuting this matter, which Lemanski has turned into a wild goose chase.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Lemanski's Fraudulent Pass-Through Scheme

From January 1, 2010 through June 14, 2011, Lemanski served as the ringleader for a fraudulent pass-through scheme against his employer Barrette, whereby Lemanski used his position as a Purchasing Manager to cause Barrette to purchase resin at inflated prices from MRR, a shell company ostensibly owned by Lemanski's sister and her roommate. The scheme resulted in Barrette being inveigled out of more than $400,000.00. The dispositive and

2

documented facts have been well briefed in the past and need not be repeated for purposes of the

instant Motion.

### B.    Lemanski's Expertise In Computers And Information Technology

Let there be no doubt; Lemanski proudly touts himself as a highly skilled computer

expert. Indeed, his own emails establish that fact:

> I'm actually a self[-]proclaimed IT geek **(I have two custom built rigs at home, two laptops, tons of spare parts, etc…)** and it bugs me that I have not been able to get this to work yet. [(06/19/09 Email from Lemanski to Roller (BA_006852-BA_006853), attached as **Exhibit A** (emphasis added).)]

> As you may have heard I am now in charge of IT locally here in Flint. I would like to get administrative privileges for Shannon and I so we can trouble shoot and repair our local users PC's. [(03/10/11 Email from Lemanski to Marwitz (BA_006854-BA_006855), attached as **Exhibit B**.)]

> [S]ince I am a nice guy I will fix it for free as I do with everyone's computer. I have fixed Chris Esch's, Todd's, Chris McCanns, Scott Millers, Allan's, Chris Mark's and numerous family members / friends for free. I don't mind, I kind of enjoy working with computers. Like I said, I would have went into a computer field but they wanted me to take 4 years of calculus at MSU and I said the heck with that. That's why it drives me nuts to see people struggle with their computers and keep suffering instead of letting me fix it right . . . *I think it's kind of like that movie good will hunting where he gets annoyed with the math professor because the stuff is so easy for him and it bugs him that others struggle with it.* ☺ (01/07/11 Emails from Lemanski to Makulski (BA_000876-BA_000877), attached as **Exhibit C** (emphasis added).)

> You know, I could fix it for free. What you are describing is (no offense) very simple to me. I've been working with computers since I was in the 4th grade. I have fixed multiple computers that the "Geek Squad" at Best Buy couldn't fix and told the owners to scrap them. [(01/04/11 Emails from Lemanski to Makulski (BA_001030-BA_001036, attached as **Exhibit D**.)]

Lemanski's own emails also establish that he knew very well how to destroy evidence

from a computer:

3

You'll need to tell me what the issue is that you want fixed and if you want me to save all the data or just wipe it out and start new? I can likely save the data but some people prefer just to wipe it out. Personally, I wouldn't wipe the data. I would just upgrade the Operating System (you're on Vista right?). [(01/05/11 Emails from Lemanski to Makulski BA_000977-BA_000986, attached as **Exhibit E**.)]

If you're concerned I will see something on it don't be – I don't have the time or interest to spend hours searching through your files. :) If you are really concerned just backup those files and delete them off the computer. Then you can put them back on when you get it back. [(*Id.*)]

I can't tell you how to wipe it back to factory because each computer is different and I would need to see what the issue is before I could tell you the best course of action. [(*Id.*)]

I mean, I think I know of 3-4 times you said you wiped it and reinstalled everything while you were working here. I have never had to wipe mine other than when I first installed the operating system. [(01/07/11 Email from Lemanski to Makulski (Ex. C).)]

### C.    Lemanski's Intentional Deletion Files From His Work Computer

Barrette terminated Lemanski on June 14, 2011. (See 01/08/13 Affidavit of Christine McCann, attached as **Exhibit F**.) After being informed of his termination, Lemanski requested that he be permitted to remove "pirated software" he had installed on his work computer. (*Id.* ¶ 12.) Barrette permitted him to do so. (*Id.* ¶ 13.) While supervising Lemanski's removal of the "pirated software," however, Barrette's Human Resource Manager, Christine McCann, witnessed Lemanski deleting numerous files that did not appear to be "pirated software." (*Id.*) With regard to this incident, Ms. McCann swore under oath that:

Once in Lemanski's office, I witnessed Lemanski logon to his computer and begin deleting, sorting, and moving around all sorts of different documents and files.  I then noticed that Lemanski was emptying the "recycle box" on his computer.  Because it appeared that Lemanski was deleting far more information than "pirated software," I asked him -- at least four separate times -- to stop deleting documents and logoff of the computer.  He ignored my first three demands. Finally, after approximately 15 minutes,

4

Lemanski logged off of the machine.  [(*Id.*)]

As part of its investigation of the fraudulent pass-through scheme, Barrette hired a forensic expert to analyze Lemanski's work computer. (See 02/05/13 Garda Report, attached as **Exhibit G**.) Among other things, the forensic analysis confirmed that *on June 14, 2011,* Lemanski deleted 4,481 files, including doc., xls, pdf, ppt, and other files not related to "pirated software." (*Id.* at 1-7.) Importantly, by way of example, the forensic analysis further showed that Lemanski's work computer contained an excel spreadsheet in which Lemanski compiled detailed data regarding numerous RDI/MRR and MRR/Barrette resin transactions, and then calculated MRR's after-tax profits from same. (*Id.*) Lemanski has since admitted that he created the MRR After-Tax Profits Spreadsheet. (Doc. No. 40-4.)

### D.     Barrette Serves Lemanski With A Notice To Preserve Electronically-Stored Information Before Filing Suit

On July 13, 2011, Barrette served upon Lemanski a "Notice to Preserve Electronically Stored Information." (See 07/13/11 Preservation Notice, attached as **Exhibit H**.) The Notice explained that Barrette intended to take legal action as a result of its discovery of Lemanski's fraudulent pass-through scheme, and that Lemanski had a duty to preserve all evidence relating thereto, including the preservation of electronically stored information on his computers, PDAs, and cell phones. (*Id.*) The dispute was not resolved, and on July 29, 2011, Barrette initiated this civil action.

### E.     Lemanski Destroys His Personal Cell Phone Shortly After Being Served With Barrette's Complaint

As explained in greater detail below, Lemanski discarded his personal cell phone on or about August 30, 2011, just one month after this case was initiated. (See 12/05/12 Email from Morad to Pattwell, attached as **Exhibit I**.) Indeed, Lemanski's counsel stated to Barrette's counsel that:

5

> We are in the process of gathering the specific information regarding the phone that Mr. Lemanski used prior to the Android Cell Phone which was mistakenly left off his previous answers to interrogatories.  At this time, he does not recall the exact make and model of the cell phone nor the exact time that he switched to the Android Cell Phone. <u>He is no longer in possession of the previous cell phone as he turned it over to Sprint at the time he received his new phone.</u> He is searching for any receipts that he may still possess that may identify this information.   We will provide you with a written update as soon as we are able to retrieve that information. [(*Id.* (emphasis added).)]

Despite additional follow up requests, no such documentation or explanation has been provided to date. Importantly, the cell phone destroyed by Lemanski was the cell phone used by Lemanski during the period of the fraudulent pass-through scheme.

## F. Lemanski Lodges Evasive And False Answers To Barrette's First Set Of Discovery Requests

On May 18, 2012, Barrette served upon Lemanski its First Set of Interrogatories, Requests for Production of Documents, and Requests to Admit ("Barrette's First Set of Discovery Requests). (See Doc. No. 40-2, 3, and 4.) Among other things, Barrette requested that Lemanski (a) produce a number of relevant documents and communications, and (b) identify all computers, PDAs, and cell phones owned, used, and/or accessed by him between November 1, 2009 to the present. (*Id.*) On June 18, 2012, Lemanski responded to Barrette's First Set of Discovery Requests by tendering a number of meritless objections (they were ultimately overruled by this Court), propounding evasive answers, stating that "no such documents exist," and identifying only one Acer Aspire laptop computer ("Personal Laptop") and one 3D Android Cell Phone ("Personal Cell Phone"). (See Doc. No. 40-6.)[1] Disappointingly, Lemanski failed to

---

[1] Lemanski's identification of only one cell phone and only one computer was, of course, false when made as: (a) he admittedly discarded the cell phone he used during the fraudulent pass-through scheme (see 12/05/12 Email from Morad to Pattwell (Ex. I)); and (b) he previously wrote that he had "two custom built rigs at home, two laptops, tons of spare parts, etc…," (see 06/19/09 Email from Lemanski to Roller (Ex. A)).

6

produce *any* communications between him and Turner, Wells, MRR, RDI, and/or various Barrette employees.

### G.     Lemanski Installs Sophisticated Scrubbing Software On His Personal Laptop

On June 24, 2012 (after receiving Barrette's discovery requests), Lemanski installed "Piriform CCleaner" on his laptop. (See 01/10/13 Spectrum Report, attached as **Exhibit J**.) CCleaner "is used to 'clean' or otherwise securely delete the contents of various system-generated files used by the Windows operating system to log a user's activities on a computer." (*Id.* at 1.) Among other things, CCleaner may be used to "wipe free space so the remnants of any files you deleted previously will be erased forever." (*Id.* at 2.)

### H.     Lemanski's Counsel Incorrectly Advises Barrette That The Personal Laptop And Cell Phone Identified In Lemanski's Discovery Responses Were The Only Responsive Computers And Phones Used By Lemanski

On July 12, 2012, Barrette's counsel communicated to Lemanski's counsel that Lemanski's responses and objections to Barrette's First Set of Discovery Requests were insufficient, and requested, in particular, that Lemanski make sure to identify *all* responsive computers and cell phones. Lemanski's counsel responded via a July 26, 2012, letter stating: "**[W]e can confirm that the personal computer and telephone identified in the response are the only computers and telephones Mr. Lemanski owned and used regularly outside of work.**" (See 07/26/12 Letter from Morad to Pattwell, attached as **Exhibit K** (emphasis in original).) This statement was false when made.

### I.     Barrette Moves To Compel The Production Of Lemanski's Personal Computers And Cell Phones

On August 30, 2012, Barrette filed a Motion asking this Court to, *inter alia*, compel Lemanski to produce forensic images of his personal computers and cell phones. (See Doc. No. 40.) In response, Lemanski's counsel again -- incorrectly -- stated that Lemanski had identified

7

all of his computers and phones and went so far as to accuse Barrette of concocting conspiracy

theories:

> Barrette's interrogatories likewise contain inappropriate, overbroad, and irrelevant questions to which Mr. Lemanski is not obligated to answer and which are no more than inappropriate fishing expeditions. For example, even though Mr. Lemanski identified his personal telephone number and the make and model of this phone, Barrette remains unsatisfied, and hurls unfounded accusations that his responses are "incomplete and evasive." . . . Indeed, even though Mr. Lemanski has since confirmed for Barrette that the identified telephone and Mr. Lemanski's personal computer were "the only computers and telephones Mr. Lemanski owned and used regularly outside of work," . . . Barrette remains unsatisfied. It appears no amount of information from Mr. Lemanski will satisfy Barrette and its vast conspiracy theories. [(Doc. No. 57 at 8.)]

The factual statements of Lemanski's counsel were false when made, and the accusations of

purported fishing expeditions and conspiracy theories were unwarranted.

> **J.**     **Lemanski Uses Scrubbing And Anti-Forensic Software To Delete Over 270,000 Files From His Personal Laptop**

On September 6, 2012, Lemanski used "Eraser 6" to delete an unknown number of files

from his Personal Laptop. (See 01/10/13 Spectrum Report (Ex. J) at 3.)[2]  Again, on September

23, 2012, and September 26, 2012, Lemanski used CCleaner to delete and forensically scrub

"approximately 270,000 files and folders" from his Personal Laptop. (*Id*. at 2.) Although the files

were not recoverable (*i.e.,* Lemanski's spoliation efforts were successful), it was confirmed that

one of the deleted folders was entitled "Files From Work Computer." (*Id.* at 4.)

> **K.**     **Lemanski's Unbelievable Cover Story For His Employment Of Three Different Types Of Sophisticated Anti-Forensic Software To Permanently Erase Any Evidence Of The 270,000 Files He Deleted Almost Immediately Before Producing His Laptop To Spectrum**

---

[2] "Eraser is an advanced security tool for Windows which allows you to completely remove sensitive data from your hard drive by overwriting it several times with carefully selected patterns." (*Id.*)

8

After being confronted with Spectrum's Reports, reviewing those Reports with his counsel, questioning Spectrum at length through his counsel, and attempting to impel Spectrum through his counsel to soften the verbiage of the Reports, Lemanski contrived and conveyed to Barrette (through his counsel) the following cover story; no spoliation allegedly occurred here because the 270,000 files Lemanski admittedly deleted from his laptop and forensically and permanently erased with three different types of scrubbing software were just mere "copies of electronic video games, pictures, and a video file that Lemanski copied to an external hard drive and then deleted from this laptop hard drive." (See 01/30/13 Email from Murray to Bolton, attached as **Exhibit L**.) To say that Lemanski's story is suspect would not do it justice. As explained in Barrette's written response, Lemanski's cover story not only defies reason and established facts (*e.g.,* the Spectrum Report stated that one of the file folders which was deleted was entitled "Files From Work Computer"), but shows Lemanski's complete disregard for this Court's Discovery Order, Lemanski's legal duty to preserve evidence, and Barrette Preservation Notice advising Lemanski of not only his legal duty to preserve electronically-stored information, but the severe consequences of violating same. (See February 4, 2013 Email from Bolton to Murray, attached as **Exhibit M**.)

### L.   Lemanski Violates This Court's Order Compelling Lemanski To Produce All Computers, Cell Phones, and Thumb Drives

On October 17, 2012, this Court entered an order compelling Lemanski to, *inter alia*, produce all of his computers, cell phones, thumb drives, etc. to Spectrum. (Doc. No. 67.) That Order stated in relevant part that:

> Defendant J. Lemanski ("Producing Party") will make his laptop computers, servers (whether Exchange or otherwise), thumb drives, and other computers or electronic devices, including PDAs, smart phones, etc., that may or do contain any information responsive to Plaintiff's discovery requests (hereinafter the "Relevant Computers") available within fourteen (14) days of the

9

> entry of this Order to Spectrum Computer Forensics & Risk
> Management, LLC, attn: Stott Matthews (the "ESI Vendor"), to
> allow it to make a forensic copy of each of the pieces of media that
> were installed in, or attached to, each of the Relevant Computers.
> [(*Id.* at 3.)]

On October 31, 2012, Lemanski produced to Spectrum one thoroughly scrubbed Personal Laptop and one Personal Cell Phone. (See 11/28/12 Spectrum Report, attached as **Exhibit N**.) Spectrum immediately identified that Lemanski's Personal Cell Phone only contained "SMS and MMS messages, call history, and Internet URL history" beginning on August 30, 2011; just one month after Barrette initiated this action. (*Id.* at 2-3.) Spectrum also identified that numerous USB storage devices had been connected to Lemanski's Personal Laptop, including a 500GB external hard drive, Cosair Voyager 3.0, and an HP Android Tablet. Lemanski failed to produce to Spectrum any of those devices as was ordered by the Court. (*Id.* at 1-2.) Lemanski also failed to produce the "two custom built rigs at home, two laptops, tons of spare parts, etc…," he had previously bragged about owning, (see 06/19/09 Email from Lemanski to Roller (Ex. A)), and the "TELECOM SVC PREPAID & RECURRING PHONE SE" listed on his September 2010 credit card statement, (Doc. No. 40-25).

## III.   ARGUMENT

### A.   Lemanski Must Be Sanctioned For His Gross Spoliation Of Evidence

District courts have broad discretion to craft proper sanctions for the spoliation of evidence, which may include, but are not limited to: large monetary awards, striking pleadings, instructing the jury that it may infer a fact based on lost or destroyed evidence, dismissal, entry of default judgment, and even imprisonment. *See, e.g., Goodman v. Praxair Servs*., 632 F. Supp. 2d 494, 508 (D. Md. 2009) ("[A]n appropriate remedy [for spoliation] can involve determinations that may end the litigation or severely alter its course by striking pleadings, precluding proof of facts, foreclosing claims or defenses, or even granting a default judgment");

10

*Day v. LSI Corp.*, 2012 U.S. Dist. LEXIS 180319, at *47 (D. Ariz. Dec. 19, 2012) (unpublished) ("In addition to a default judgment on the stock grant claim and an adverse instruction on the remaining claims, the Court finds it appropriate to also order a [$10,000] monetary award as an additional sanction for the spoliation of evidence"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 500 (D. Md. 2010) (entering default and ordering that defendant's acts of spoliation be treated as contempt of court, and that he be imprisoned unless and until he paid plaintiff's attorneys' fees and costs).[3]

To prevail on a spoliation claim, the movant must merely show that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012). Importantly, the Sixth Circuit tells us "[a] proper spoliation sanction should serve both fairness and punitive functions." *Id.* at 504 (citation and quotation omitted). As set forth below, Lemanski's pattern and practice of intentional destruction of evidence satisfies the spoliation elements.

> ## 1. Lemanski Had An Obligation To Preserve His Computers And Cell Phones

The duty to preserve evidence arises when a party either (1) receives "notice that the evidence is relevant to litigation" or (2) should "know[] that the evidence may be relevant to

---

[3] *See also Simon Prop. Group, Inc. v. Lauria,* 2012 U.S. Dist. LEXIS 184638, at *26 (M.D. Fla. Dec. 13, 2012) (unpublished) ("Sanctions that may be imposed against a defendant for spoliation include, but are not limited to, the following: default judgment, adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result of the spoliation"); *Computer Assoc. Int'l v. Am Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990) (concluding that no sanction short of default judgment would adequately punish the spoliator and deter like-minded litigants).

future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citation omitted); *see also Owner-Operator Indep. Drivers Ass'n v. Comerica Bank*, 860 F. Supp. 2d 519, 538 (S.D. Ohio 2012) ("It is well established that the duty to preserve evidence arises when a party reasonably anticipates litigation").

In this case, during the entire perpetration of the pass-through scheme (*i.e.,* January 1, 2010 through June 14, 2011), Lemanski was aware he could have been caught and therefore should have reasonably anticipated litigation. (See Lemanski's After-Tax Profit Spreadsheet (Ex. G); see also 04/26/11 Email from Masotta to Turner, attached as **Exhibit O**.) Indeed, his act of intentionally destroying relevant evidence regarding his connection to MRR from his work computer upon being notified of his termination creates an inference that Lemanski actually anticipated litigation. *Cf. Beaven v. US DOJ*, 622 F.3d 540, 554 (6th Cir. 2010) (holding that the intentional destruction of evidence supported a finding that defendants were sufficiently on notice of potential claims to warrant granting an adverse inference).

In any event, a few days later, on June 17, 2011, Barrette informed Lemanski that Barrette was investigating MRR (see 06/17/11 Email from Lemanski to McCann, attached as **Exhibit P**), and then on July 13, 2011, actually sent to Lemanski a "Notice to Preserve Electronically Stored Information" explaining that Barrette intended to take legal action as a result of its discovery of Lemanski's fraudulent pass-through scheme, and that Lemanski had a duty to preserve all evidence relating thereto, including the preservation of electronically-stored information on his computers, PDAs, and cell phones, (see 07/13/11 Preservation Notice (Ex. I)). On July 29, 2011, Barrette initiated this civil action. (Doc. No. 1.)

Accordingly, Lemanski had a duty to preserve evidence at the time he: (a) deleted 4,481 files from his work computer on June 14, 2011; (b) destroyed his personal cell phone on or

12

around August 30, 2011; and (3) intentionally employed a suite of sophisticated scrubbing software in September of 2012 to erase over 270,000 files from his personal laptop.

### 2. Lemanski Deleted Files From His Work Computer, Destroyed His Cell Phone, And Scrubbed His Personal Laptop With A Culpable State Of Mind

The culpability element is satisfied "by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Adkins*, 692 F.3d at 504-05. Numerous courts have found that the physical destruction of laptops and cell phones satisfies the culpability element and further amounts to bad faith. *See, e.g., Simon Prop. Group, Inc. v. Lauria*, 2012 U.S. Dist. LEXIS 184638, at *24-25 (M.D. Fla. Dec. 13, 2012) (unpublished) (destruction of laptop constitutes bad faith and satisfies the culpability element); *Taylor v. Mitre Corp.*, 2012 U.S. Dist. LEXIS 163854, at *21 (E.D. Va. Sept. 10, 2012) (unpublished) ("Plaintiff spoliated evidence and certainly failed to preserve relevant evidence when he physically destroyed his HP desktop in 2011").

And, even a greater number of courts have held that the permanent deletion of computer files or the use of scrubbing or wiping software (including "CCleaner" specifically) to permanently erase computer files satisfies the culpability element and further amounts to willful and malicious conduct. *See, e.g., Taylor,* 2012 U.S. Dist. LEXIS 163854, at *23 ("This Court cannot, and will not, tolerate the use of such a program by a plaintiff [(*i.e.,* CCleaner and Evidence Eliminator)] in litigation -- in the middle of the discovery -- who had knowledge that his computer was about to be searched pursuant to a Court order"); *PIC Group, Inc. v. LandCoast Insulation, Inc.*, 2011 U.S. Dist. LEXIS 73342, at *24-25 (S.D. Miss. July 7, 2011) (unpublished) (finding bad faith and imposing monetary sanctions where party "intentionally ran the CCleaner program" on his personal laptop immediately before producing same to a special master); *Victor*, 269 F.R.D. at 529-32 (ordering defendant to be imprisoned for using "CCleaner"

13

and other means to deliberately destroy evidence during the pendency of the litigation); *Ameriwood Indus., Inc. v. Liberman*, 2007 U.S. Dist. LEXIS 74886, at *8-27 (E.D. Mo. July, 3, 2007) (unpublished) (entering default judgment and awarding fees and costs because defendant's intentional use of "Window Washer" scrubbing software showed "a serious disregard for the judicial process and prejudice plaintiff").[4]

Just like the cases cited above, this case presents a straightforward example of the intentional and bad-faith destruction of evidence. Immediately upon being notified of his termination, Lemanski deleted 4,481 files from his work computer. (See McCann Aff (Ex. F) ¶ 13; Garda Report (Ex. G) at 1-7.) Shortly after Barrette filed suit, Lemanski discarded (at best, negligently) his personal cell phone. (See 12/05/12 Email from Morad to Pattwell (Ex. I); 11/28/12 Spectrum Report (Ex. L) at 2-3.) And, most egregiously, in the midst of discovery and after having been served with Barrette's Motion to Compel demanding that Lemanski turn over his laptop for forensic imaging, Lemanski employed wiping software (*i.e.*, "Eraser 6," "Piriform CCleaner," and possibly "Killbox") to delete over 270,000 files from his Personal Laptop. Under these facts, there can hardly be any dispute that Lemanski's conduct was willful, and that, therefore, the culpability element is met here.

---

[4] *See also Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 387 (M.D. Pa. 2011) (entering default where defendant "ran software on his computer to scrub his hard drive"); *Gutman v. Klein*, 2008 U.S. Dist. LEXIS 92398, at *41-46 (E.D.N.Y. Oct. 15, 2008) (unpublished) (holding that use of wiping program "irretrievably deleted computer files that likely contained important discovery information" and may have deprived the aggrieved party of "crucial evidence" sufficient to warrant a default judgment and attorney's fees); *Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006) (proposing an order of default judgment against defendant who willfully destroyed evidence by installing data-wiping software); *Commc'ns Ctr, Inc. v. Hewitt*, 2005 U.S. Dist. LEXIS 10891, at *7-10 (E.D. Cal. April 5, 2005) (unpublished) (recommending default against defendant for use of "Evidence Eliminator" software); *Krumwiede v. Brighton Assocs, LLC*, 2006 U.S. Dist. LEXIS 31669, at *27-32 (N.D. Ill. May 8, 2006) (unpublished) (entering default judgment where employee permanently deleted files and changed metadata both before and after a court order compelling production of his employer's laptop).

14

**3.**     **Lemanski's Cell Phone And The Hundreds Of Thousands Of Files Lemanski Intentionally Deleted From His Work Computer And Personal Laptop Were Relevant To Barrette's Claims**

When evidence is destroyed or rendered unavailable in bad faith (*i.e.,* intentionally or willfully), that fact alone is sufficient to demonstrate relevance. *See Flagg v. City of Detroit*, 2011 U.S. Dist. LEXIS 114772, at *7-8 (E.D. Mich. Oct. 5, 2011) (unpublished); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (noting that where a party seeking a spoliation sanction shows that its opponent destroyed potential evidence in bad faith or through gross negligence, that same evidence of the opponent's state of mind will frequently also satisfy the relevance requirement).

In this case, the entire corpus of evidence destroyed by Lemanski in bad faith must be presumed relevant, for several reasons:

*First*, the files Lemanski deleted from his work computer shortly after having been informed of his termination must be presumed relevant. The documented evidence of record shows that Lemanski used his Barrette work computer to consummate many of the resin transaction in question here as well as to communicate with both Barrette, RDI, and MRR. Moreover, Lemanski's work computer contained the After-Tax Profits Spreadsheet detailing MRR's revenues, expenses, commissions, and profits.

*Second*, the cell phone Lemanski discarded one month after being served with the Summons and Complaint in this matter must also be presumed to have contained relevant information. Based on his phone records, there can be no dispute that Lemanski used that very cell phone to communicate with Barrette, RDI, Turner, Wells, and MRR during the time that the fraudulent pass-through scheme was perpetrated against Barrette. There is further no dispute that Lemanski frequently used the "texting" capability on his cell phone.

15

*Third*, the 270,000 files erased and scrubbed from Lemanski's personal computer must be presumed relevant. Although Lemanski's forensic scrubbing was extensive and successful, Spectrum's initial analysis of that laptop shows that – at a very minimum – Lemanski deleted a folder entitled "Files From Work Computer." (01/10/13 Spectrum Report (Ex. J) at 4.)

In the end, even without the presumption of relevance provided by law, the evidence of record shows that Lemanski has been busy deleting evidence relevant to this matter.

### B.    Lemanski Must Be Sanctioned For Violating This Court's October 17, 2012 Discovery Order

Pursuant to Fed. R. Civ. P. 37(b)(2), a court is authorized to impose sanctions, including entry of default judgment, when a party fails to obey a discovery order. *See, e.g., Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008) ("A district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment"); *Brown v. Gojcaj Foods, Inc.*, 2011 U.S. Dist. LEXIS 54569, at *5-12 (ED Mich May 30, 2011) (unpublished) (entering default against defendant for failing to provide discovery); *Chao v. Oriental Forest IV, Inc.*, 2009 U.S. Dist. LEXIS 4018, at *6-9 (W.D. Mich. Nov. 6, 2008) (unpublished) (same).

"When a district court sanctions a defendant under Rule 37(b)(2) for discovery misconduct by entering a default judgment, the Sixth Circuit requires the district court to consider the following factors: (1) whether the disobedient defendant had the ability to comply with discovery; (2) whether the defendant's failure to cooperate in discovery amounts to wilfulness, bad faith, or fault; (3) whether the plaintiff suffered prejudiced; (4) whether the defendant had notice or was warned that the defendant's failure to cooperate in discovery could lead to the sanction of a default judgment; and (5) whether less drastic sanctions were imposed or

16

considered." *USW, Local 1-1000 v. Forestply Indus.*, 2011 U.S. Dist. LEXIS 37766, at *16 (W.D. Mich. Apr. 1, 2011) (unpublished) (citing cases).

Here, all factors weigh in favor of sanctioning Lemanski under Fed. R. Civ. P. 37(b)(2).

*First*, Lemanski had the ability to not: (a) delete files from his work computer after being informed of his termination; (b) discard his cell phone shortly after being served with Barrette's Complaint; (c) provide false interrogatory answer regarding the destruction of his cell phone; and (d) scrub hundreds of thousands of files from his personal laptop weeks before producing that laptop pursuant to this Court's Discovery Order. Lemanski also had the ability to produce the (a) "two custom built rigs at home, two laptops, tons of spare parts, etc…," he had previously bragged about owning; and (b) the numerous other thumb drives and other computer devices he connected to his laptop during the pendency of this litigation.

*Second*, as set forth in more detail above, Lemanski's conduct meets the bad-faith standard applied by many other federal courts.

*Third*, Barrette has been prejudiced, where much of the evidence Barrette would have otherwise been able to use to support its case has been wrongfully concealed and destroyed by Lemanski. Moreover, Lemanski has failed to produce a myriad of requested documents, including *any* communications with Turner, Wells, MRR, or RDI.

*Fourth*, the Preservation Notice provided to Lemanski at the inception of this litigation expressly stated that "[t]he intentional or negligent destruction of evidence may have severe consequences" and then cited several legal authorities supporting that proposition. (Ex. H.)

*Fifth*, the Defendants, cumulatively, have produced so little of the requested documents, communications, and electronically-stored information, that any sanction less than default here

17

would violate established precedents of equity and fairness and allow Lemanski to benefit from his wrongful acts.

### C.   Lemanski Must Be Sanctioned For Serving False Interrogatory Answers In An Attempt To Conceal His Spoliation Of Evidence

Fed. R. Civ. P. 26(g)(1) requires that parties certify that their discovery responses are complete and correct. If a party's certification violates that requirement, Fed. R. Civ. P. 26(g)(3) states that the court "must impose an appropriate sanction on the signer." *See also Robert Bosch LLC v. A.B.S. Power Brake, Inc.,* 2012 U.S. Dist. LEXIS 18749, *2-3 (E.D. Mich. Feb. 15, 2012) ("Sanctions were justified in part by false statements made in response to Plaintiff's interrogatories and requests for admission"); *Perry v. County of Kent*, 2002 U.S. Dist. LEXIS 1380, at *8 (W.D. Mich. Jan. 23, 2002) (dismissing case where "defendants were impeded in their ability to discover facts relevant to plaintiff's claims by his failure to produce documents, false answers to interrogatories, and evasive answers during the deposition"); *CSX Transp., Inc. v. May*, 1990 U.S. App. LEXIS 21566, at *8-10 (6th Cir. Dec. 7, 1990) (unpublished) (affirming entry of default proper for failing to provide complete answers to interrogatories).

In this case, Barrette's Interrogatory No. 2 requested that Lemanski identify all computers and cell phones owned or used by him between November, 1, 2009 and the present.  (Doc. No. 40-2.) In response thereto, Lemanski identified only one Personal Laptop and only one Personal Cell Phone. When questioned as to the completeness of Lemanski's response, Lemanski's counsel wrongly accused Barrette's counsel -- in writing -- of unethically attempting to increase the cost of litigation, conducting a fishing expedition, and concocting conspiracy theories. (*See, e.g.,* 07/26/12 Letter from Morad to Pattwell (Ex. K); Doc. No. 57 at 8.) As has been shown now, those unfounded hysterics were mere attempts at intimidation. Spectrum's forensic report of Lemanski's Personal Cell Phone reveals that Lemanski's Personal Cell Phone had only been in

18

service since August 30, 2011, and thus that Lemanski had failed to identify his prior cell phone (namely, the cell phone used by Lemanski during his perpetration of the fraudulent pass-through scheme). Worse yet, when faced with this unequivocal forensic evidence, Lemanski's counsel admitted that Lemanski had in fact spoliated his prior and undisclosed cell phone during the first month of this litigation. (See 12/05/12 Email from Morad to Pattwell (Ex. I).)

Accordingly, Lemanski not only served an incomplete and false interrogatory response, but he did so in an attempt to conceal from Barrette that Lemanski had intentionally destroyed relevant evidence which he had been directed to preserve. Such conduct has protracted this litigation, prejudiced Barrette's collection of evidence, and increased Barrette's costs.

## IV.   CONCLUSION

Enough is enough. This Court should not countenance Lemanski's blatant spoliation of evidence, and flip attitude toward his preservation obligations. The deletion of files from his work computer, the discarding of the cell phone, the use of scrubbing software to muddy the forensic trail to relevant electronically stored information on his person laptop, or the cover-up of other storage devices on their own form a sufficient enough basis for this Court to grant the relief sought by Barrette. Together, they lead inextricably to the conclusion that this Court should hand down serious sanctions against Lemanski and his counsel (if turns out that they share the blame for their client's conduct). Accordingly, Barrette's Motion should be granted, and this Court should: (a) schedule an evidentiary hearing and require Lemanski to show cause why he should not be held in contempt for violating this Court's Discovery Order and for intentionally destroying evidence during the pendency of this action; (b) enter a default judgment and other spoliation sanctions against Lemanski; (c) order Lemanski and/or his counsel to pay Barrette's reasonable costs and attorneys' fees; and (d) award to Barrette any such further relief this Court deems just and equitable.

19

Respectfully submitted,

CLARK HILL PLC

By:    /s/ Michael J. Pattwell
            Aaron O. Matthews (P64744)
            Jordan S. Bolton (P66309)
            Michael J. Pattwell (P72419)
            Attorneys for Plaintiff
            212 E. Grand River Avenue
            Lansing, MI  48906
            Phone: (517) 318-3043
            Email:  mpattwell@clarkhill.com

Date:  February 6, 2013

20

## <u>INDEX OF EXHIBITS</u>

A.      June 19, 2009 Email from Lemanski to Roller (BA_006852-006853).

B.      March 10, 2011 Email from Lemanski to Marwitz (BA_006854-BA_006855).

C.      January 7, 2011 Email from Lemanski to Makulski (BA_000876-BA_000877).

D.      January 4, 2011, Email from Lemanski to Makulski (BA_001030-BA_001036).

E.      January 5, 2011 Emails from Lemanski to Makulski (BA_000977-BA_000986).

F.      June 14, 2011 Affidavit of Christine McCann.

G.      February 5, 2013 Garda Report.

H.      July 13, 2011 Preservation Notice.

I.      December 5, 2012 Email from Morad to Pattwell.

J.      January 10, 2013 Spectrum Report.

K.      July 26, 2012 letter from Morad to Pattwell.

L.      January 30, 2013 Email from Murray to Bolton

M.      February 4,2013 Email from Bolton to Murray

N.      November 28, 2012 Spectrum Report.

O.      April 26, 2011 Email from Masotta to Turner.

P.      June 17, 2011 Email from Lemanski to McCann.

8753337.2 39069/152087

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to Robert J. Morad, and Abdu H. Murray; and upon the following Defendants by placing same in a United States mail depository, enclosed in an envelope bearing postage fully prepaid and addressed properly upon and via email to:

Tamara Turner
8312 Honey Tree
Canton, MI  48107
tamt1971@yahoo.com

Michigan Resin Representatives, LLC
c/o Tamara Turner, Resident Agent
8312 Honey Tree
Canton, MI  48107
tamt1971@yahoo.com

Lisa J. Wells
17162 Wormer St.
Detroit, MI 48219-3677
lisawells34@hotmail.com

s/Michael J. Pattwell (P72419)
CLARK HILL PLLC
212 E. Grand River Avenue
Lansing, MI  48906
Phone: (517) 318-3043
mpattwell@clarkhill.com

22