UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BARRETTE OUTDOOR LIVING, INC.,**
**also d/b/a/ U.S. FENCE INC.,**

|  |  |
|---|---|
| **Plaintiff,** | Civil Docket No. 2:11-cv-13335 |
| | Honorable Julian A. Cook |
| | Magistrate Judge Laurie J. Michelson |
| **v.** | |

**MICHIGAN RESIN REPRESENTATIVES, LLC,**
**a Michigan Limited Liability Company; JOHN H.**
**LEMANSKI, JR., an individual; LISA J. WELLS**
**a/k/a LISA J. LEMANSKI, an individual; and**
**TAMARA L. TURNER, an individual,**

     **Defendants.**

_____/

| | |
|---|---|
| AARON O. MATTHEWS (P64744) | ROBERT J. MORAD (P56475) |
| MICHAEL JOHN PATTWELL (P72419) | ABDU H. MURRAY (P61032) |
| Clark Hill PLC | Miller, Canfield, Paddock and Stone, P.L.C. |
| 212 E. Grand River Avenue | 840 West Long Lake Road, Suite 200 |
| Lansing, Michigan 48906 | Troy, Michigan 48098 |
| (517) 318-3018 | (248) 879-2000 |
| *Attorneys for Plaintiff* | *Attorneys for Defendant John H. Lemanski, Jr.* |
| | |
| | TAMARA L. TURNER |
| MICHIGAN RESIN REPRESENTATIVES, | 8312 Honeytree Blvd. |
| LLC, c/o TAMARA L. TURNER | Canton, Michigan 48187 |
| 8312 Honeytree Blvd. | *Defendant* |
| Canton, Michigan 48187 | |
| *Defendant* | LISA WELLS |
| | 8312 Honeytree Blvd. |
| | Canton, Michigan 48187 |
| | *Defendant* |

_____/

**DEFENDANT JOHN H. LEMANSKI, JR.'S**
**RESPONSE TO PLAINTIFF BARRETTE OUTDOOR LIVING, INC.'S MOTION FOR**
**SANCTIONS FOR HIS INTENTIONAL DESTRUCTION OF EVIDENCE AND**
**VIOLATION OF THIS COURT'S DISCOVERY ORDER**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     RELEVANT FACTUAL BACKGROUND ........................................................1

III.    ARGUMENT AND AUTHORITIES .................................................................5

    A.    PLAINTIFF HAS NOT CARRIED ITS BURDEN OF PROOF...............................5

    B.    REVIEW OF CASES RELIED UPON BY PLAINTIFF FOR AWARDING
        SPOLIATION SANCTIONS AGAINST LEMANSKI SHOWS THEY DO
        NOT SUPPORT PLAINTIFF'S MOTION.................................................5

    C.    PLAINTIFF FAILS TO PROVE THAT LEMANSKI HAS SPOLIATED
        EVIDENCE.................................................................................10

        1.    Lemanski's work computer.....................................................10

        2.    Lemanski's old cell phone......................................................14

        3.    Lemanski's personal laptop....................................................14

    D.    LEMANSKI'S CONDUCT COMPLAINED OF BY PLAINTIFF COULD
        NOT HAVE VIOLATED THE COURT'S OCTOBER 17, 2012
        DISCOVERY ORDER ...................................................................16

    E.    LEMANSKI'S ERRONEOUS RESPONSE TO PLAINTIFF'S
        INTERROGATORY NO. 3 DOES NOT WARRANT SANCTIONS....................17

IV.     CONCLUSION .................................................................................20

Index of Authorities

## INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Ameriwood Industries, Inc. v. Liberman*, 2007 WL 5110313 (E.D. Mo. 2007) ............................ 7

*Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462 (W.D. Tex. 2006) ...................................... 8, 9

*Armstrong v. Shirvell, 2012 WL 1656239 (E.D. Mich. 2012)* ...................................................... 19

*Beaven v. U.S. Dep't of Justice,* 622 F.3d 540 (6th Cir. 2010) ......................................... 5, 11, 12

*Communications Center, Inc. v. Hewitt*, 2005 WL 3277983 (E.D. Cal. 2005).............................. 9

*Gentex Corp. v. Sutter*, 827 F.Supp.2d 384 (M.D. Pa. 2011) ................................................. 5, 7, 8

*Gutman v. Klein*, 2008 WL 4682208 (E.D.N.Y. 2008)................................................................. 8

*Krumwiede v. Brighton Associates, LLC*, 2006 WL 1308629 (N.D. Ill. 2006) ...................... 9, 10

*Maxpower Corp. v. Abraham*, 557 F.Supp.2d 955 (W.D. Wis. 2008).................................. 15, 16

*Moore v. Publicis Groupe*, 2012 WL 607412 (S.D.N.Y. 2012) .................................................. 17

*Norouzian v. University of Kansas Hospital Authority*, 2010 WL 4513406 (D. Kan. 2010) ....... 18

*PIC Group, Inc. v. LandCoast Insulation, Inc.*, 2011 WL 2669144 (S.D. Miss. 2011) ........... 6, 15

*Salahuddin v. Harris*, 782 F.2d 1127 (2d Cir. 1986) .................................................................. 17

*Simon Property Group v. Lauria*, 2012 WL 6859404 (M.D. Fla. 2012) ....................................... 6

*Taylor v. Mitre Corp.*, 2012 WL 5473573 (E.D. Va. 2012) .......................................................... 6

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010) ............................... 6, 7

**COURT RULES**

Fed. R. Civ. P. 26(1)(B)(i)-(iii) .................................................................................................. 19

Fed. R. Civ. P. 26(b)(2)(C)......................................................................................................... 17

Fed. R. Civ. P. 26(g)............................................................................................................ iii, 18

Fed. R. Civ. P. 26(g)(1) ........................................................................................................ 17, 19

Fed. R. Civ. P. 26(g)(1)(A) ................................................................................... 17, 18

Fed. R. Civ. P. 26(g)(1)(B) ................................................................................... 17, 18

Fed. R. Civ. P. 26(g)(3) ......................................................................................... 18, 19

Fed. R. Civ. P. 37(b) .................................................................................................... 17

Fed. R. Civ. P. 37(b)(2) ................................................................................... iii, 16, 17

## STATEMENT OF QUESTIONS PRESENTED

I.    WHETHER PLAINTIFF HAS CARRIED ITS BURDEN OF PROOF BY SHOWING LEMANSKI "DESTROYED" RELEVANT EVIDENCE?

    **Lemanski Answers: No.**

II.   WHETHER LEMANSKI'S DUTY TO PRESERVE EVIDENCE AROSE UPON HIS TERMINATION FROM EMPLOYMENT?

    **Lemanski Answers: No.**

III.  WHETHER LEMANSKI TRADED IN HIS OLD CELL PHONE WITH THE INTENT TO DEPRIVE PLAINTIFF OF RELEVANT EVIDENCE?

    **Lemanski Answers: No.**

IV.   WHETHER LEMANSKI CAN BE SANCTIONED UNDER RULE 37(b)(2) FOR CONDUCT PRE-DATING THE COURT'S OCTOBER 17, 2011, DISCOVERY ORDER?

    **Lemanski Answers: No.**

V.    WHETHER LEMANSKI SHOULD BE SANCTIONED UNDER RULE 26(g) FOR AN ERRONEOUS BUT NOT INTENTIONALLY FALSE OR MISLEADING RESPONSE TO PLAINTIFF'S INTERROGATORY NO. 3 THAT HAS NOT PREJUDICED PLAINTIFF'S ABILITY TO PREPARE FOR TRIAL?

    **Lemanski Answers: No.**

## CONTROLLING AND MOST PERSUASIVE AUTHORITY

*Armstrong v. Shirvell*, 2012 WL 1656239 (E.D. Mich. 2012)

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540 (6th Cir. 2010)

*Maxpower Corp. v. Abraham*, 557 F.Supp.2d 955 (W.D. Wis. 2008)

*Moore v. Publicis Groupe*, 2012 WL 607412 (S.D.N.Y. 2012)

*Norouzian v. University of Kansas Hospital Authority*, 2010 WL 4513406 (D. Kan. 2010)

*Salahuddin v. Harris*, 782 F.2d 1127 (2d Cir. 1986)

Fed.R.Civ.P. 26

Fed.R.Civ.P. 37

## I.      INTRODUCTION

Plaintiff's motion for sanctions against Defendant John Lemanski may be one of the most ill-considered and poorly supported motions submitted to this Court for adjudication. Plaintiff apparently believes that the uninformed, repeated use of the word "spoliation" coupled with voluminous, yet pointless, exhibits is a substitute for proof. It is not. Lemanski is confident that when this Court examines the record, it will see the Plaintiff's motion for sanctions for what it is—a desperate attempt by a party that cannot prevail on the merits hoping it can deceive this Court into granting a terminating sanction.

## II.     RELEVANT FACTUAL BACKGROUND

The real facts relevant to Plaintiff's motion show that:

- At the time of his termination on June 14, 2011, Lemanski was not under a duty to preserve evidence. Neither party contemplated litigation as both parties were negotiating a Separation Agreement at that time which contained a clause releasing any claims by Lemanski against Plaintiff.  Lemanski had no reason to be concerned about litigation against him by Plaintiff. In fact, he was so unconcerned about being sued by Plaintiff that he continued to negotiate the terms of the Separation Agreement up until he executed and returned it to Plaintiff.  Plaintiff admits in its brief that it did not begin its investigation of transactions with Michigan Resin Representatives, LLC ("MRR") until June 17, 2011, and did not inform Lemanski of the possibility of legal action until Lemanski received the July 12, 2011 via its "Notice to Preserve Electronically Stored Evidence." *See* Exhibit 1 to Exhibit F of Plaintiff's Brief.

- Lemanski voluntarily provided the information to Plaintiff which led to Plaintiff's investigation of the MRR transactions.

- The forensic examination of Lemanski's work computer revealed 36 user-created files deleted by human intervention. Plaintiff's expert admits most of these 36 files appear to be related to "the construction of Mr. Lemanski's house." Yet, in keeping with it's "a pound of paper makes up for a lack of proof," mentality, Plaintiff attached a 519 page listing of **IRRELEVANT** files deleted from Lemanski's computer *that its own expert did not identify as having been deleted by Lemanski.* A cursory review of those 519 pages reveals that very few of the 4,481 files deleted were user-created files. *See* Exhibit G to Plaintiff's Brief.

- After his termination and after Plaintiff had reneged on its obligations under the Separation Agreement, Lemanski needed to reduce his expenses. One way he did so was by entering into a new cell phone contract for both him and his wife. Lemanski and his wife entered into this new contract on July 13, 2011. *See* **Exhibit B**. Lemanski received Plaintiff's preservation notice on July 14, 2011 via FedEx. *See* **Exhibit C**. While Lemanski was emailed an electronic copy of Plaintiff's preservation notice on July 13, 2011, he did not open or read the email until the next day, after he turned his phone in. He did not realize at the time when he entered into the new service agreement and purchased a new phone that his old phone would be kept by the service provider. Lemanski did not "destroy" his old phone as Plaintiff states repeatedly in its brief. Nor did he do anything to intentionally destroy any potentially relevant evidence. *See Affidavit of John Lemanski*, **Exhibit A**, ¶ 14.

- As for Lemanski's failure to identify his old cell phone in response to Plaintiff's discovery requests, Lemanski was not being intentionally "evasive or false" as Plaintiff

suggests. He simply forgot about his old cell phone. When the error in his discovery responses came to light, those responses were supplemented pursuant to the rules.

- Plaintiff has not stated what efforts, if any, it has taken to recover any potentially relevant text messages from Lemanski's old cell phone, assuming any ever existed. Plaintiff has made no effort to seek any text messages from Lemanski's co-defendants or made attempt to subpoena the text message service provider.   Therefore, how can Plaintiff know whether any potentially relevant evidence has actually been lost? Again, repeatedly saying that evidence has been spoliated does not make it so.

- Prior to the Court's Order on Plaintiff's Motion to Compel, dated October 17, 2012, Lemanski copied wholly irrelevant files (electronic video games, pictures and a video file) from his personal laptop onto an external hard drive. He then proceeded to use commonly available "data wiping" software to remove those same files from his personal laptop. He turned his personal laptop over for forensic examination to Court-appointed expert Spectrum Computer Forensics and Risk Management ("Spectrum"). Because the Court's order expressly applies only to "laptop computers, servers (whether Exchange or otherwise), thumb drives, and other computers or electronic devices, including PDAs, smart phones, etc., that may or do contain any information responsive to Plaintiff's discovery requests," he withheld the external hard drive since the external hard drive did not contain any responsive information. **Exhibit A**, ¶¶ 4-7.

- Contrary to Plaintiff's assertions that Lemanski spoliated the data on his laptop, he still has the external hard drive. Moreover, as Plaintiff's Exhibit M proves, Lemanski's counsel has offered the external hard drive to Plaintiff for forensic examination. But, not

surprisingly, Plaintiff declined the offer. As is abundantly clear by this motion, Plaintiff would rather allege spoliation as opposed to prove spoliation. **Exhibit A**, ¶7.

- The January 10, 2013, report authored by Spectrum is consistent with Lemanski's explanation of what data was removed from his laptop. Spectrum identified a deleted folder path, C:\Users\MSU\Desktop\Files From Work Computer\Wii Stuff\, and a drive designation, H :\Wii\. Wii, which, of course, refer to Nintendo's Wii gaming platform.

- Plaintiff's reliance on the June 19, 2009, email in which Lemanski refers to "two custom built rigs at home, two laptops" suggests there are other computers he failed to turn over under the Court's order and is misplaced. The fact that Lemanski had additional computer equipment in June 2009 is not evidence that any such equipment existed at the time Lemanski received Plaintiff's preservation notice or that any such equipment had responsive information on it. **Exhibit A**, ¶ 15.

- Lemanski is a sophisticated computer user. Plaintiff admits this. Yet, Plaintiff would have this Court believe that Lemanski spoliated evidence but 1) left invoices relevant to the issues in this case on his work computer while deleting files that concerned construction of his new home, 2) exchanged his old cell phone, rather than wiping the data from it, 3) left behind readily identifiable tracks of his use of data wiping software on his personal laptop and 4) offered to have the external hard drive containing the files from his personal laptop forensically examined by Plaintiff. These actions are wholly inconsistent with a nefarious intent to obstruct Plaintiff's prosecution of its claims.

In sum, Plaintiff has failed to provide **ANY PROOF** to back up its argument that "Lemanski has intentionally destroyed all relevant evidence on each and every computer and cell phone identified by him to date, and has either destroyed or failed to disclose numerous other computers,

4

PDAs, thumb drives, and cell phones containing relevant evidence." Indeed, "the tomfoolery must end," and the Court must deny Plaintiff's motion for sanctions.

## III.   ARGUMENT AND AUTHORITIES

### A.   PLAINTIFF HAS NOT CARRIED ITS BURDEN OF PROOF

Plaintiff does not define "spoliation" or discuss its burden of proof when requesting sanctions—with good reason as will be shown.

In the case law cited by Plaintiff in its supporting brief, spoliation is defined as "'[t]he intentional destruction, mutilation, alteration, or concealment of evidence.'" *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 390 (M.D. Pa. 2011) (quoting *Black's Law Dictionary* 1531 (9th ed. 2009)). "The burden of proof on a spoliation claim lies with the party asserting the claim." *Id.* To meets its burden Plaintiff must prove: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice,* 622 F.3d 540, 553 (6th Cir. 2010). Plaintiff has *alleged* spoliation, but has offered no *proof* of spoliation.

What proof has Plaintiff offered that EVIDENCE has been intentionally destroyed, mutilated, altered or concealed? NONE. Plaintiff goes through its entire brief assuming that evidence is missing. Not one case relied upon by Plaintiff for the imposition of a terminating sanction is based on an assumption of missing evidence.

### B.   REVIEW OF CASES RELIED UPON BY PLAINTIFF FOR AWARDING SPOLIATION SANCTIONS AGAINST LEMANSKI SHOWS THEY DO NOT SUPPORT PLAINTIFF'S MOTION

The following is a brief review of the situations under which the courts awarded spoliation sanctions in the cases relied upon by Plaintiff. In not one case was a terminating sanction awarded in circumstances that are similar to those presently before this Court.

- *Simon Property Group v. Lauria*, 2012 WL 6859404 (M.D. Fla. 2012): After receiving a preservation demand from plaintiff, defendant threw her laptop in the river. She admitted at deposition that the laptop contained "information that was crucial to [plaintiff's] ability to prove its *prima facie* case." *Id.* at *6.

- *Taylor v. Mitre Corp.*, 2012 WL 5473573 (E.D. Va. 2012): After plaintiff filed an EEOC charge against defendant, he wiped the data files from his work computer and "took a sledgehammer to it." He claimed he backed up any relevant data to his laptop. On the day his laptop was to undergo a court-ordered forensic examination, he ran data wiping software on it. "By the nature of the program, it [was] impossible to determine how many files were deleted by Evidence Eliminator." *Id.* at *1.

- *PIC Group, Inc. v. LandCoast Insulation, Inc.*, 2011 WL 2669144 (S.D. Miss. 2011): After defendant's duty to preserve attached, in-house counsel continued to daily run data wiping software on his computer. On the day his laptop was to be forensically examined by the court-appointed special master, in-house counsel ran another data wiping program on his laptop. It was unclear what data had been destroyed. However, because of his status as an attorney, the court held him to a higher standard of conduct, stating, "Regardless of whether he intended to delete relevant and discoverable information, clear a virus from his computer, or conceal other matters not related to this litigation, he knowingly defied a Court order." *Id.* at *6. Despite its finding of intentional misconduct, the Court did not impose a terminating sanction against the defendant.

- *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010): Defendants defied two court preservation orders and numerous court production orders and destroyed evidence on a "vast" scale. "Defendants admit spoliation, relevance, and prejudice, and consent to a default judgment on liability for Count I, the copyright claim. Further, the facts amply demonstrate the intentional, bad faith permanent destruction of a significant quantity of relevant evidence, to the Plaintiff's detriment. Thus, it is clearly appropriate that the spoliation consequences include a judgment finding [defendants] liable on Count I." *Id.* at 538.

- *Ameriwood Industries, Inc. v. Liberman*, 2007 WL 5110313 (E.D. Mo. 2007): After plaintiff filed a motion to compel, the defendants installed data wiping software on their computers. The court subsequently granted the motion and entered an order for the forensic examination of the defendants' computers, with a special interest in emails and deleted data. After the court order, defendants ran the data wiping software on their computers. The court noted that, the data wiping program specifically targeted, (i) email communications, (ii) Microsoft Office documents, and (iii) computer data and usage logs (e.g., information regarding the use of detachable, portable storage media and the computer's Windows operating system)." One defendant also manually deleted files from his laptop and a portable storage device, which from the "documents' titles, many of the deleted files appear to have contained a broad array of plaintiff's business information, which is at issue in this case." *Id.* at *4.

- *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384 (M.D. Pa. 2011): Two defendants admitted to destroying relevant evidence after their duty to preserve attached. One defendant ran data wiping software on his home computer, which he admitted contained relevant

evidence, despite being instructed to preserve data on his home system. He also destroyed several portable storage devices with admittedly relevant data. The other defendant also admittedly destroyed a CD with relevant data on it. The court entered default judgments against these defendants. However, the court, despite evidence that other defendants had engaged in mass data deletions, declined to impose sanctions against the other defendants, finding numerous questions of fact remained, including: 1) whether the corporate defendant's deletion of the server backup tapes was inadvertent and/ or according to company policy, 2) whether the certain deleted files were relevant to the litigation, 3) whether the file deletion between September 2006 and March 2007 was intentional and coordinated or part of the routine course of business, 4) whether there are missing ghost images for the computers of five employees, 5) whether the corporate defendant's failed to produce relevant portable media devices in its possession, and 6) whether the corporate defendants failed to produce relevant computers in its possession. *Id*. at 390. The court did not simply assume that relevant evidence was destroyed.

- *Gutman v. Klein*, 2008 WL 4682208 (E.D.N.Y. 2008): After the court ordered forensic imaging of defendant's laptop, defendant engaged in a convoluted process of deleting files, restoring files and altering the clock on his laptop on the day it was to be forensically examined. The court determined that relevant data had been destroyed because " many of the files deleted from the [defendant's] laptop were listed in his privilege log" and "[defendant] previously stated that the laptop contained relevant information in a letter to the court." *Id.* at *8.

- *Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462 (W.D. Tex. 2006): Defendant used data wiping software on her laptop once after being served with the lawsuit and once after the day after the court ordered her to turn over her laptop for forensic examination. The forensic examination revealed that music files relevant to the claims in the case had been deleted from defendant's laptop. "The expert testimony is largely undisputed and indicates that the defendant destroyed material evidence." *Id.* at 464.

- *Communications Center, Inc. v. Hewitt*, 2005 WL 3277983 (E.D. Cal. 2005): Defendant was ordered by the court to turn over mirror images of four computers. Instead, he ran a data wiping program on three of the computers and reinstalled the operating system on the fourth computer. He then provided images of the computers to plaintiff. Defendant said he was afraid of turning over private, embarrassing information. However, pornographic pictures were on the images he turned over. Additionally, file names of deleted files indicated that those files were relevant to the underlying dispute. " Even defendant…has testified he cannot with certainty state which files he destroyed. At this point, plaintiff can never recover the documents this court found were discoverable." *Id.* at *2.

- *Krumwiede v. Brighton Associates, LLC*, 2006 WL 1308629 (N.D. Ill. 2006): Counter-defendant ("defendant") kept a laptop he used while employed by Counter-plaintiff ("Plaintiff"). After suit was filed and demand for preservation/return of the laptop was made, defendant continued to use the laptop and to delete and alter files on the laptop. A forensic examination of the computer revealed that files had been deleted, altered and probably transferred to another computer. Significantly, the court noted that, "Without examining other computers or devices which may have received such transferred data,

however, [the computer forensics expert] could not verify the success or extent of any such activities." *Id.* at *4. Relevant files were also recovered from the laptop. The court imposed a terminating sanction against defendant despite his insistence that he maintained "copies of all the files on his personal laptop" because defendant refused to turn his laptop over for forensic examination. *Id.* at *10.

Having reviewed these cases, it begs the question whether Plaintiff's counsel actually read any of them. None of these cases support Plaintiff's request for a terminating sanction against Lemanski. In each of the cases relied upon by Plaintiff in which a terminating sanction was granted, the movant offered deposition testimony, admissions or expert testimony clearly showing that relevant evidence had been destroyed. In stark contrast, Plaintiff offers speculation and hyperbole with respect to each piece of "spoliated evidence." The cases relied upon by Plaintiff are so factually dissimilar as to militate against any sanction being imposed against Lemanski because Plaintiff has failed to offer any proof of spoliation.

Additionally, in almost every case cited by Plaintiff's the spoliation occurred AFTER the court had entered a discovery order. The conduct cited by Plaintiff in support of its motion all occurred BEFORE this Court entered its October 17, 2012, Discovery Order.

### C.   PLAINTIFF FAILS TO PROVE THAT LEMANSKI HAS SPOLIATED EVIDENCE

#### 1.   Lemanski's work computer

Plaintiff has failed to carry its burden of proof in two regards with respect to Lemanski's work computer. First, on the date of his termination, Lemanski had no duty to preserve information on his work computer. Second, even Lemanski's duty to preserve did attach, Plaintiff has not shown that relevant evidence has been lost from Lemanski's computer.

#### a.   *Lemanski had no duty to preserve at the time of his termination.*

Plaintiff postulates a novel theory with respect to the duty to preserve. That Lemanski's duty to preserve evidence arose on January 1, 2010, because "during the entire perpetration of the pass-through scheme…Lemanski was aware he could have been caught and therefore should have reasonably anticipated litigation." Not only does Plaintiff offer no evidence of what "Lemanski was aware" of, it offers no legal support for its argument other than a misleading blurb about *Beaven v. U.S. Dep't of Justice*. A cursory examination of *Beaven* reveals it is wholly inapposite to Lemanski's situation on the day of his termination.

In *Beaven*, employees of the Federal Bureau of Prisons ("BOP") filed suit against various government agencies for unlawful disclosure of their private information. An FBI agent left a folder with an employee roster containing sensitive personal information, including social security numbers, home addresses and phone numbers, in an unattended area accessible to prisoners and other BOP staff members. A union grievance was filed due to the possible disclosure of BOP employee's personal information. A memorandum written by the prison warden "offered assistance from BOP attorneys in filing administrative tort claims if any allegations [of disclosure] 'prove founded…'" The grievance was arbitrated and Denied. After the arbitration, the prison warden instructed that the folder be destroyed. The plaintiffs filed an administrative tort claims act, which was denied. Plaintiffs instituted a civil action for violation of the Privacy Act, the Social Security Act and the Federal Tort Claims Act. Based on the destruction of the folder, the district court granted plaintiffs an adverse inference jury instruction.

After plaintiffs received a favorable judgment on their Privacy Act claims, the defendants appealed, arguing, *inter alia*, that the district court erred in granting an adverse inference instruction. The appellate court affirmed, stating, "the Defendants were sufficiently on notice of potential claims to have an obligation to preserve the evidence as a result of the Defendants'

repeated statements that concerned persons could file tort claims…" *Id.* at 554. The appellate court also noted, "the Defendants preserved the folder as direct evidence of the alleged disclosure at the same time that they made repeated statements that actual evidence would be necessary to pursue claims, demonstrating their awareness that claims could be filed and that direct evidence—the folder—would be necessary." *Id.* Because defendants had acknowledged in writing that tort claims might result from the FBI agent's loose handling of the folder, it was reasonable to conclude that defendant's had a duty to preserve the folder at the time it was destroyed.

Plaintiff has offered no evidence that Lemanski anticipated litigation on the date of his termination. Once again, Plaintiff makes a self-serving assumption—this time, that Lemanski "was aware" Plaintiff might sue him. However, the available evidence points to the opposite conclusion.

- Plaintiff's position was eliminated "as part of a facility-wide downsizing in June 2011." *See* McCann Affidavit ¶7, (Doc #91-6)

- Plaintiff's General Manager, Todd Dixon, told Lemanski on June 14, 2011 that Lemanski's position had been eliminated as of that date. *Id*. at ¶8.

- Plaintiff offered Lemanski a Separation Agreement on June 14, 2011, under which he released any claims against Plaintiff. *Id.*, ¶10, Exhibit 1, ¶7.

- Plaintiff engaged in negotiations with Lemanski regarding the Separation Agreement. *Id.* at ¶¶14,17-21.

- Plaintiff did not begin investigating MRR transactions until June 17, 2011. *Id*. at ¶23.

- The information which led to the investigation of MRR transactions came from Lemanski, who told Plaintiff's HR representative on June 15, 2011, that he was concerned another employee would "attempt to disparage Lemanski's name by accusing Lemanski of owning Michigan Resin Representatives, LLC." *Id*. at ¶15.

- Plaintiff did not send a preservation notice and threaten suit against Lemanski until July 12, 2011.

- Lemanski seeks enforcement of the Separation Agreement in this action. (Doc #22)

None of the facts above, which are almost exclusively drawn from one of Plaintiff's exhibits, suggest Lemanski anticipated any litigation with Plaintiff on June 14, 2011. There simply was no reason to anticipate such litigation as all Lemanski knew at the time was that his position was being down-sized and that he was being offered a Separation Agreement—circumstances which hardly presage impending litigation.

As Lemanski's duty to preserve had not attached, Lemanski can not be found to have spoliated evidence.

### b.   *Plaintiff has not shown that any relevant evidence was deleted from Lemanski's work computer.*

Assuming *arguendo* that Lemanski's duty to preserve had attached by June 14, 2011, the Plaintiff has not identified one potentially relevant file that Lemanski deleted from his work computer. Plaintiff's expert identified only 36 user-created files deleted from Lemanski's work computer on June 14, 2011. Of these 36 files, Plaintiff's expert acknowledges that some of them relate to the construction of Lemanski's house. Plaintiff does not point to one of the 36 user-created files as being potentially relevant to this dispute. It does, however, point to one file that was not deleted from Lemanski's work computer, the so-called "After Tax Profits Spreadsheet."

Additionally, Plaintiff has not indicated to what extent it has tried to recover the files allegedly deleted from Lemanski's work computer. If files were deleted, are they backed up anywhere on Plaintiff's system, and, if so, what efforts has Plaintiff made to recover those files? Plaintiff is silent in this regard.

Having not identified even one potentially relevant file as having been deleted by Lemanski from his work computer on June 14, 2011, or indicated in any way what efforts it has undertaken to recover any such files, Plaintiff has failed its burden to prove the spoliation of any relevant evidence.

### 2. Lemanski's old cell phone

While it is true that Lemanski no longer has his old cell phone, it was not, as Plaintiff breathlessly argues, "destroyed" by Lemanski. What is worse is that Plaintiff knows Lemanski did not destroy his old cell phone—in fact, Plaintiff recounts exactly what happened to Lemanski's old cell phone in its brief - it was kept by Sprint at the time Lemanski and his wife obtained their new phones. Lemanski had not seen a copy of Plaintiff's preservation notice at the time.

That said, Plaintiff again has shown no effort to obtain whatever evidence, if any, might have been on the Lemanski's old cell phone. Instead, Plaintiff urges the Court to presume relevant evidence was on the old cell phone. But, there are other potential sources of the information on Lemanski's cell phone, such as cell phones of the other defendants and Lemanski's service provider. What has Plaintiff done to explore these other sources of the information it seeks from Lemanski's cell phone? Plaintiff has not included anything in the record in this regard.

Moreover, as Plaintiff has failed to show that Lemanski spoliated evidence from either his work computer or personal laptop, it would be grossly unfair to presume that Lemanski engaged in intentional spoliation of relevant evidence from his old cell phone.

### 3. Lemanski's personal laptop.

With respect to Lemanski's personal laptop, in no opinion relied upon by Plaintiff did a court conclude that the use of data wiping software meant *ipso facto* that relevant data had been

destroyed. But that is what Plaintiff is asking this Court to conclude—that the use of data wiping software in and of itself equates to spoliation. The Court must decline the Plaintiff's invitation.

As Plaintiff's case law illustrates, the use of data wiping software is not inherently wrong. Craig Ball, a well-known e-discovery practitioner, acted as Special Master in the *PIC Group* case. The court summarized Special Master Ball's opinion with respect to the data wiping software CCleaner:

> The Special Master noted that CCleaner is not illegal, and that there is nothing inherently sinister about a computer user protecting his or her privacy. Indeed, CCleaner is marketed as a "system optimization, privacy and cleaning tool." See http:// www.piriform.com/ccleaner/. While it "cleans traces of your online activities such as your Internet history," it also "removes unused files from your system—allowing Windows to run faster and freeing up valuable hard disk space."

*PIC Group*,   at *3. In this case, Lemanski has stated that the only files he removed from his personal laptop were irrelevant files, including games, pictures, music files and a video file. Plaintiff may not like Lemanski's explanation, but its disapproval does not negate its plausibility—especially when Plaintiff offers no countervailing evidence, as one recent case missed in Plaintiff's research shows.

In *Maxpower Corp. v. Abraham*, 557 F. Supp. 2d 955 (W.D. Wis. 2008), plaintiffs moved for an adverse inference jury instruction or terminating sanction against defendant Abraham because he used CCleaner on his laptop after the court ordered a forensic examination, but before the examination could take place.  The data wiping resulted in the complete wiping of data from one hard drive and the partial wiping of data from the other hard drive. The partially wiped drive showed remnants of plaintiffs' executable files on it. Defendant testified that he ran the data wiping program to improve his laptop's performance and that he did not believe his laptop had any relevant information on it. In ruling on plaintiff's motion, the court noted that the use of the data wiping

program was "the most damning evidence" against the defendant. However, the court denied the request for sanctions, explaining:

> Neither side's computer expert was persuaded that use of a CCleaner would have been the first resort for slow rebooting. Plaintiffs' expert was sure that resorting to such a method was evidence of a deliberate effort to destroy incriminating evidence. I am not persuaded that the evidence is so clear. The idea of wiping out unnecessary data to improve computer performance does not seem particularly implausible.

*Id.* at 962. In this case, Lemanski's explanation is equally as plausible as that offered by the defendant in *Maxpower*. And, unlike the defendant in *Maxpower*, he did not destroy the files he removed from his laptop. He backed them up on an external hard drive. Most importantly, Lemanski offered to turn the external hard drive over to Plaintiff for forensic examination. Rather than accept this offer and attempt to confirm their suspicions, Plaintiff's counsel instead opted to waste the Court's time with an unsupported motion for terminating sanctions.

**D.     LEMANSKI'S CONDUCT COMPLAINED OF BY PLAINTIFF COULD NOT HAVE VIOLATED THE COURT'S OCTOBER 17, 2012 DISCOVERY ORDER**

Plaintiff is asking this Court to sanction Lemanski for violating this Court's October 17, 2012 Discovery Order for conduct that took place **BEFORE** the Order was entered! Plaintiff's law and logic simply weigh against this.

Plaintiff acknowledges in its brief that:

- Lemanski deleted (irrelevant) files from his work computer on June 14, 2011.  **Exhibit A** at ¶12.
- Lemanski removed (irrelevant) files from his personal laptop in September 2012.  *Id*. at ¶¶4-6.

Despite the fact that these actions occurred before the entry of the Court's Discovery Order, Plaintiff reaches the incredible conclusion that "Here, all factors weigh in favor of sanctioning Lemanski under Fed. R. Civ. P. 37(b)(2)." *See* Plaintiff's Brief, p. 19 [Dkt. 91].

And, once again, after reading the cases cited by Plaintiff in support of its argument, it is apparent Plaintiff's counsel is practicing "head note law," i.e., looking for cases with head notes that "sound good," and then electing not to read the full case. None of the cases cited involve the retroactive application of a discovery order. Indeed, it would be impermissible for this Court to impose a sanction under Rule 37(b)(2) based on the retroactive application of a Discovery Order. *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) (holding that "The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed…."). How Plaintiff can argue that Lemanski could have complied with the Court's Discovery Order before it was issued (in two cases, more than a year before it was entered, and in one case before suit was filed) is a mystery.

Accordingly, the Court must deny Plaintiff's request to sanction Lemanski under Rule 37(b)(2) for conduct which took place before the Court's October 17, 2012, Discovery Order was issued.

### E.   LEMANSKI'S ERRONEOUS RESPONSE TO PLAINTIFF'S INTERROGATORY NO. 3 DOES NOT WARRANT SANCTIONS

As a preliminary matter, Plaintiff is incorrect when it asserts that "Fed. R. Civ. P. 26(g)(1) requires that parties certify that their discovery responses are complete and correct." Fed. R. Civ. P. 26(g)(1) does no such thing, and once again calls into question whether Plaintiff's counsel actually reads the law to which it cites or simply makes it up as they go along. The requirement under Rule 26(g)(1) that contains the language "complete and correct as of the time it is made" refers to initial disclosures, not discovery responses. The rule clearly and unequivocally provides that a signature certifies "that to the best of the person's knowledge, information, and belief formed after reasonable inquiry…with respect to a *disclosure*, it is complete and correct as of the time it is made…." Fed. R. Civ. P. 26(g)(1)(A) *(emphasis added)*. This language does not, by its express terms, apply to

discovery responses. *Moore v. Publicis Groupe*, 2012 WL 607412, at *7 (S.D.N.Y. Feb. 24, 2012) ("Rule 26(g)(1)(B) is the provision that applies to discovery responses. It does not call for certification that the discovery response is 'complete,' but rather incorporates the Rule 26(b)(2)(C) proportionality principle. Thus, Rule 26(g)(1)(A) has absolutely nothing to do with [the obligation] to respond to plaintiffs' discovery requests.")

With respect to discovery responses, sanctions under Rule 26(g)(3) are warranted where the certification "without substantial justification" violates subsection (1)(B) of the rule, which provides:

> (1)***By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
> ***
> (B) with respect to a discovery request, response, or objection, it is:
>
> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B).

Before addressing the specific application of the rule, Lemanski notes that Plaintiff has not requested any particular sanction for his alleged violation of Rule 26(g)(3). Lemanski can only presume that Plaintiff, in keeping with the overall tenor of its motion, is requesting a terminating sanction of default judgment. However, Plaintiff provides no authority for such action by the Court—with good reason because no such authority exists. One court has even expressly recognized the non-existence of authority for awarding a terminating sanction under Rule 26(g). *Norouzian v. University of Kansas Hospital Authority*, 2010 WL 4513406, at *6 (D. Kan. 2010) ("…the Court is not aware of any action dismissing a lawsuit for failure to comply with Rule 26(g)"). Therefore,

Plaintiff overreaches if it is indeed seeking a terminating sanction under Rule 26(g)(3). That said, even a request for a lesser sanction would be unavailing.

Lemanski does not dispute that his initial response to Plaintiff's Interrogatory No. 3 was in error. However, there is no evidence to suggest that Lemanski's response was interposed for any reason which violates Rule 26(1)(B)(i)-(iii) as the factual circumstances surrounding his response show. First, Lemanski did not "destroy" his old cell phone in order to hide evidence from Plaintiff. He simply purchased a new cell phone, and the service provider kept his old cell phone. Second, Lemanski did not conceal his new cell phone or refuse to turn it over for forensic examination. Trying to keep secret his old cell phone would obviously be pointless. It is clear in the almost one year between when Lemanski purchased his new cell phone and Plaintiff propounded Interrogatory No. 3, he forgot about his old cell phone, which is understandable. Replacing an old cell phone is a rather mundane task—certainly not a significant event likely to etch itself indelibly in the conscious mind.

Moreover, Plaintiff has not specifically pointed to any prejudice resulting from Lemanski's erroneous discovery response. *See Armstrong v. Shirvell*, 2012 WL 1656239, at *4-6 (E.D. Mich. 2012) (denying request for sanctions under Rule 26(g)(3) because plaintiff failed to show prejudice). In fact, what possible prejudice could Plaintiff have suffered since Lemanski was no longer in possession of his old cell phone at the time of Plaintiff's discovery request? Plaintiff may have learned about the old cell phone earlier, but it is still free to pursue the same discovery related to Lemanski's old cell phone now.

Given that Plaintiff has produced no evidence that Lemanski's erroneous discovery response was interposed for any improper purpose or that it has suffered any prejudice due to the response, the Court should deny Plaintiff's request for sanctions under Rule 26(g)(1).

## IV.    CONCLUSION

Plaintiff's motion for terminating sanctions against Lemanski for spoliation is a desperate attempt by Plaintiff to win procedurally a case it now understands it cannot win on the merits. However, the lack of proof that dogs Plaintiff's case on the merits also hounds its motion for terminating sanctions. Plaintiff offers no evidence that Lemanski intentionally spoliated evidence in this matter. Rather, Plaintiff imposes on the generosity of the Court to assume intentional spoliation. This the Court cannot do, as the case law relied upon by Plaintiff makes abundantly clear.

Accordingly, Lemanski respectfully requests the Court to deny Plaintiff's motion and award Lemanski his costs and attorney fees associated with defending against it.


MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.


By:    s/Robert J. Morad
          Abdu H. Murray (P61032)
          Robert J. Morad (P56475)
          840 West Long Lake Road, Suite 200
          Troy, Michigan  48098-6358
          Telephone: (248) 267-3255
          Email: murray@millercanfield.com
          *Attorneys for Defendant*

Dated:  February 27, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2013, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to the counsel of record.

- **Jordan S. Bolton**
  jbolton@clarkhill.com,klindsey@clarkhill.com
- **Aaron O. Matthews**
  amatthews@clarkhill.com,lssmith@clarkhill.com
- **Michael J. Pattwell**
  mpattwell@clarkhill.com,jbolton@clarkhill.com,lssmith@clarkhill.com,danderson@clarkhill.com

I also hereby certify that I have also mailed by United States Postal Service the foregoing document to the following non-ECF participants:

Michigan Resin Representatives, LLC
8312 Honey Tree
Canton, MI 48107

Tamara L. Turner
8312 Honey Tree
Canton, MI 48107

Lisa J. Wells
8312 Honey Tree
Canton, MI 48107

By:   s/Robert J. Morad_____
      Robert J. Morad (P56475)
      840 West Long Lake Road, Suite 200
      Troy, Michigan 48098-6358
      Telephone: (248) 267-3219
      morad@millercanfield.com