UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC., d/b/a
U.S. FENCE, INC.

      Plaintiff/Counter-Defendant,              Case No. 11-13335

v.                                            District Judge Julian Abele Cook, Jr.
                                            Magistrate Judge Laurie J. Michelson

MICHIGAN RESIN REPRESENTATIVES,
LLC, a Michigan limited liability company;
LISA J. WELLS a/k/a LISA J. LEMANSKI,
an individual; and TAMARA L. TURNER,
an individual

      Defendants,

and

JOHN H. LEMANSKI, JR., an individual

      Defendant/Counter-Plaintiff.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF BARRETTE OUTDOOR LIVING INC.'S MOTION FOR DEFAULT JUDGMENT [75] AND SECOND MOTION FOR DEFAULT JUDGMENT [104]

Plaintiff Barrette Outdoor Living, Inc. ("Plaintiff" or "Barrette") seeks default judgments and criminal contempt sanctions against Defendants Michigan Resin Representatives, LLC ("MRR"), Lisa J. Wells ("Wells"), and Tamara L. Turner ("Turner") (collectively the "MRR Defendants") for their alleged failure to adequately respond to Plaintiff's First and Second Set of Discovery Requests. (Dkts. 75 and 104.) Both motions for default judgment have been referred to this Court for report and recommendation. (Dkt 105.) The MRR Defendants are no longer represented by counsel and Defendant Turner recently filed for bankruptcy protection. Thus, because the corporate entity cannot proceed *pro se* and has not challenged the second motion for default judgment, the Court

recommends the entry of a default judgment against Defendant MRR. Defendant Wells, however, has made attempts to comply with her discovery obligations and has not previously been sanctioned or warned about the issuance of terminating sanctions. Thus, the Court recommends that the motions for default judgment be denied as to Wells. While this analysis applies equally to Defendant Turner, it appears that Ms. Turner's bankruptcy filing presently precludes ruling on this motion as to her.

## I.   BACKGROUND

### A.   Plaintiff's Allegations

Barrette manufactures wood and vinyl siding. (Compl. ¶ 11.) To do so, it purchases millions of pounds of resin each year. (*Id.*) In October 2007, Barrette hired John Lemanski as a "Senior Buyer" for its Flint, Michigan facility; Lemanski was later promoted to "Purchasing Manager." (Compl. ¶ 14.) Barrette says that one of Lemanski's "most important" tasks was to "ensure that Barrette paid the lowest amount possible for [r]esin." (Compl. ¶ 14.) Barrette claims that, beginning in February 2010, Lemanski did anything but that. (Compl. ¶ 15.) More specifically, Barrette says that Lemanski directed Michigan Resin Representatives, LLC ("MRR") – a company formed on February 4, 2010 and allegedly run by Lemanski's sister, Lisa Wells, and her roommate, Tamara Turner, out of their Canton, Michigan apartment – to purchase millions of pounds of resin for about $3.8 million. (Compl. ¶ 26-28.)[1] Then, allegedly at Lemanski's direction, Barrette purchased a virtually identical amount of resin from MRR for over $4.2 million — over $400,000 more than what MRR had paid. (Compl. ¶ 31-33.) Barrette believes that Lemanski, Wells, or Turner, or some combination of those individuals, pocketed the difference.

---

[1]   Neither woman, says Plaintiff, has any experience in the resin industry. (Compl. ¶ 22.)

2

### B.     Procedural History

On May 18, 2012, Plaintiff served its First Set of Discovery Requests on each MRR Defendant (MRR, Wells, and Turner). This included interrogatories, requests for admission, and document requests. While the MRR Defendants provided responses, Plaintiff found them deficient in many ways. Plaintiff therefore filed motions to compel against the MRR Defendants. (Dkts. 38-41.) On October 3, 2012, the Court conducted a pre-hearing conference with the parties' counsel to try to resolve certain outstanding issues and then conducted hearings on October 3, 2012 and October 4, 2012 to resolve the remaining issues. (Dkt. 66, Oct. 9, 2012 Prelim. Order on Disc. Mots. at 1.) The Court issued oral rulings that were to be memorialized in subsequent written orders.

On October 8, 2012, counsel for the MRR Defendants, John Hermann ("Hermann"), filed a motion to withdraw claiming a breakdown in communication with his clients. (Dkt. 65.) He further indicated that the MRR Defendants had failed to pay him for services rendered and that each client's interests may not be able to be represented by the same counsel. (*Id*.)

On October 9, 2012, this Court entered a Preliminary Order that granted in part and denied in part Plaintiff's motions to compel. (*Id*.) The Order further explained that Plaintiff "will be submitting proposed orders, approved as to form by the opposing parties, that provide more detail regarding the specifics of the Court's rulings." (*Id*. at 2.) The parties then submitted, and the Court entered on October 18, 2012, two Discovery Orders compelling, within ten days, full and complete amended discovery responses from the MRR Defendants to certain interrogatories and requests for admission, production of various computers and cell phones for forensic imaging, and production of other documents and tax consent forms. (Dkts. 70, 71 ("Discovery Orders").) Mr. Hermann, then still counsel for the MRR Defendants, stipulated to much of the relief granted in the Discovery

3

Orders, and otherwise approved their form.  (Dkt. 75, Mot. Default J. at 3, n.1.)

On October 31, 2012, Mr. Hermann served the MRR Defendants' supplemental discovery responses.  (*Id*. at Ex. A.)

Plaintiff was not satisfied with them.  Plaintiff contends that as of November 30, 2012, the MRR Defendants had failed to comply with the Discovery Orders.  (Dkt. 101, Pl. Reply at 2.)  As a result, on November 30, 2012, Barrette filed the present Motion for Default Judgment against the MRR Defendants.  (Dkt. 75.)  Plaintiff contends that the MRR Defendants' supplemental discovery responses: "(i) circumvent the agreed and ordered language for responses to requests for admission; (ii) fail to supply the information requested and ordered in response to interrogatories; (iii) fail to identify with requisite particularity the documents and other things (*i.e.,* electronic devices) responsive to the requests for production; [and] (iv) are unverified by any of the MRR Defendants."  (*Id*. at 4.)  Plaintiff further contends that the MRR Defendants produced no additional documents and did not make their electronic devices available for imaging.  (*Id*.)

On December 5, 2012, District Judge Julian Abele Cook, Jr. granted Mr. Hermann's motion to withdraw and gave the MRR Defendants thirty (30) days to retain new counsel.  (Dkt. 77.)  No appearances were filed within this time frame.  Judge Cook subsequently denied the MRR Defendants' request to stay the case so they could have additional time to try to find new counsel.  (Dkt. 86.)

On January 7, 2013, Plaintiff served the MRR Defendants with a Second Set of Discovery Requests.  (Dkt. 104 at Exs. A-C.)  These requests seek information on the whereabouts of the nearly $400,000 extra that Plaintiff paid to MRR for the resin purchases (and which was subsequently withdrawn from the MRR bank accounts).  (*Id*. at 2-3.)  Pursuant to Federal Rules of Civil Procedure

4

33 and 34, the MRR Defendants' responses were due on February 7, 2013.  When they failed to
respond, Plaintiff filed a Second Motion for Default Judgment on March 13, 2013.  (Dkt. 104.)
Plaintiff accuses the MRR Defendants of an array of discovery violations that it claims constitute
the type of bad faith warranting a default judgment and criminal contempt sanctions.  (*Id*. at 4.)

As noted, at the present time, MRR remains unrepresented and Ms. Wells and Ms. Turner
are proceeding *pro se*.  Wells and Turner submitted responses to both motions for default judgment.
(Dkts. 100, 112.[2])  They claim that they provided responsive information to Mr. Hermann, believed
they were in compliance with their discovery obligations and this Court's Orders, were confused
about their further responsibilities following Mr. Hermann's withdrawal, and that since his
withdrawal, they have done their best to cure any alleged deficiencies.  (*Id*.)  They believe Plaintiff's
counsel should have made more of an effort to work with them to try to resolve the outstanding
issues.  (*Id*.)

The parties' difficulties in working and communicating with each other are adequately
captured in a recent email exchange.  On March 14, 2013, the day after Plaintiff filed the Second
Motion for Default Judgment, Defendant Turner sent the following email to Plaintiff's counsel on
behalf of the MRR Defendants:

> We have been in the process of trying to gather the data to respond
> to your second request[s] for documents and interrogatories.  Our
> initial plan was to submit this data to you next week.  Also as stated
> in our last response to the court, we remain willing to provide our
> computers and phones for imaging.  However we have not heard from
> you to schedule a mutually agreeable time and place with a third
> party imaging service.  We ask that you consider withdrawing your

---

[2] The Court declines Plaintiff's request to sanction Ms. Wells for allegedly receiving
assistance from her non-lawyer brother, Defendant John Lemanski, in the drafting of the response
to the second motion for default judgment.

> second request for default and allow us to provide you with the
> information that we do have . . . .

(Dkt. 114, Pl. Reply Second Mot. Default J. at Ex. B.) Plaintiff's counsel, seemingly unfamiliar with

this Court's Civility Principles, responded as follows:

> Although for the last nineteen (19) months you have known our
> address, direct phones, cell phones and email addresses, we are
> pleased to see that you are finally evidencing a purported intention to
> respond to Barrette's Discovery Requests. We must, however,
> question your intentions for sending this email on the eve of your
> default, and take issue with your statement that you have been
> waiting to hear from Barrette. First, it is not Barrette's obligation to
> chase you down to obtain what the Court has already ordered you to
> do and what the federal rules require you to do. Second, your
> correspondence ignores my 03/04/13 email which states that:
>
>> Ms. Turner:
>>
>> I am in receipt of your Response Brief. As you were
>> ordered by the Court to do back in October, and as
>> you have refused/failed to do for the last four plus
>> months, please immediately produce all requested
>> documents, communications, and/or materials,
>> including but not limited to your cell phones,
>> computers, and the appropriate tax authorization
>> forms to my office at the address listed below. Please
>> also take all other actions ordered by the Court and
>> stated in Barrette's Motion.
>> Regards,
>>
>> MJP [Counsel for Barrette]
>
> Accordingly, we reiterate our repeated requests that you produce all
> responsive documents, consent forms, and truthful answers to us at
> our Lansing office immediately. Additionally, as you have also
> known for some time, at least if you have looked at any of the
> numerous pleadings served upon you, the contact information of the
> third-party imaging service is:
>
>> Spectrum Computer Forensics and Risk Management
>> LLC
>> 866-977-9779

6

> www.spectrumforensics.com
> 32440 Susanne
> Franklin, MI 48025
>
> Due to your previous false interrogatory responses and statements to
> the Court, failure to cooperate with the discover[y] process, apparent
> failure to pay your previous counsel, and your co-conspirator's
> blatant spoliation, I will be moving the Court for an order requiring
> you to and ask that you pay Spectrum the imaging and analysis fees
> upfront at the time you produce ALL of the computers, PDAs,
> tablets, and cell phones you used and/or owned between November
> 2009 and the present.
>
> Lastly, Barrette will not withdraw its Motions for Default against you
> until you have provided full and complete (and truthful) responses to
> all of Barrette's Discovery Requests, paid Spectrum for the imaging
> and analyses of your computers and phones, Spectrum confirms that
> you have not spoliated any evidence, and you have reimbursed all of
> Barrette's legal fees and costs caused by your failure to cooperate in
> discovery. If you are agreeable, please advise so that I may send over
> a itemization of those costs and expenses which unfortunately are
> significant. Also, to the extent that you are attempting to represent
> MRR or Wells in this matter, I must again advise you that you are
> committing an illegal act, namely the unauthorized practice of law.

(*Id*. at Ex. C.)   Not surprisingly then, the parties have been unable to reach a resolution.

On March 26, 2013, the Court conducted oral argument on numerous motions in this case, including the two motions for default judgment that are the subject of this Report and Recommendation. At that time, the Court was advised that Ms. Turner would not be appearing because she had recently filed for bankruptcy, that Plaintiff had verbally agreed to stay proceedings against her, and that Plaintiff understood the rulings on the motions for default judgment would pertain only to MRR and Ms. Wells. (*See* Dkt. 114, Reply to Second Mot. Default J. at 1, n.1.) Having no counsel, MRR could not, and did not, appear at the hearing.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), "[a] district judge holds a variety

7

of [discovery] sanctions in his arsenal, the most severe of which is the power to issue a default judgment." *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008); *see also Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995) ("a district court may sanction parties who fail to comply with its orders in a variety of ways, including dismissal of the lawsuit."); *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988) ("Dismissal of an action for failure to cooperate in discovery is a sanction of last resort."). The Sixth Circuit has articulated four factors for this Court to consider in determining whether the severe sanction of a default judgment is appropriate: "'(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *id.,* i.e., conduct that is "'perverse in resisting authority' and 'stubbornly disobedient,'" *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting Webster's Third New International Dictionary 497 (1986)).

## III.   ANALYSIS

In brief, before Plaintiff filed the two pending motions for default judgment, the MRR Defendants had not been warned that failure to provide the requested discovery could lead to a default judgment against them. Nor have less drastic sanctions been imposed. While there has been delay and arguable prejudice, this Court finds that the record does not yet warrant the entry of a default judgment against Defendant Wells. As for MRR, because the corporate entity is not

8

represented by counsel, and thus did not and could not respond to Plaintiff's Second Set of Discovery Requests or the Second Motion for Default Judgment, the Court recommends the entry of a default judgment against MRR.  Further explanation follows.

### A.    The First Motion For Default Judgment

As a threshold matter, Plaintiff's contention that MRR and Wells did not oppose its first Motion for Default Judgment is incorrect.  Prior to withdrawing as their counsel, John Hermann filed an opposition on behalf of all the MRR Defendants, including MRR and Wells.  (Dkt. 76.)[3]  The import of the response is that the breakdown in communication between lawyer and clients played a significant role in the MRR Defendants' failure to produce the additional discovery and that they should be given additional time to comply.  (*See* Dkt. 76 at 1. )  There is no indication of bad faith on the part of the MRR Defendants or an intent to avoid their discovery obligations.

Plaintiff additionally contends, however, that the MRR Defendants' improper answers to certain discovery requests, failure to answer other requests, and failure to produce their electronic devices for imaging constitutes willfulness, bad faith, or fault.  (Dkt. 75, Pl. Mot. Default J. at 5-6.) The individual MRR Defendants, who are now proceeding *pro se*, clearly have some confusion regarding their discovery obligations.  They did, however, make an attempt to supplement their written discovery responses.  (Mot. Default J. at Ex. A; Dkt. 100, Resp. at 9-10.)  Indeed, the Court has reviewed the supplemental responses and finds that Ms. Wells and Ms. Turner provided the information requested in Interrogatory Nos. 1-4 and Request for Admissions Nos. 16-17 as required by the Discovery Orders.  (Mot. Default J. at Ex. A.)  They also indicate that their electronic devices

---

[3] The individual MRR Defendants also filed, *pro se*, a separate response on March 1, 2013. (Dkt. 100.)  It is signed by Defendant Turner only.  However, it is clearly intended to cover Defendant Wells, and the Court will allow her to file an amended signature page.

– the computer and cell phones they utilized during MRR's operation – are ready and available for

forensic imaging.  (MRR Resp. at 10.)  Ms. Wells explained that any additional documents she has

to produce will be on her computer.  And she has agreed to sign any authorizations necessary for

Plaintiff to obtain additional financial, tax, or other business information.  (*Id*. at 11.)  As Wells and

Turner explain:

> the [MRR] Defendants had thought, through their previous counsel,
> that all issues with answering the RFA's were resolved and no further
> action was necessary.  They were not aware that their previous
> counsel did not submit their responses as he had indicated to them he
> had already completely and wholly done.  Defendants have also been
> awaiting contact from Plaintiff to arrange a time and place to image
> their electronic devices and to request a signature authorizing
> Plaintiff to attain the remaining discovery items not in Defendants
> possession.

(Dkt. 100, Resp. at 8.)

Given their obligations under the Discovery Orders, the individual MRR Defendants should

have affirmatively delivered their electronic devices and authorizations to the Plaintiff (or a third-

party for imaging) rather than sit idly by and wait for Plaintiff's counsel to contact them again or

come and retrieve them.  As mentioned, however, entry of a default judgment for failure to

cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes

that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault.  *Bank One*

*of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).  Especially factoring in the

confusion caused by the withdrawal of counsel for the MRR Defendants, the present record does not

sufficiently support that the MRR Defendants' delay in providing discovery rises to this level of

misconduct.

As for prejudice, Plaintiff's motion explains that the delay in receiving discovery regarding

MRR's operation has hindered Plaintiff's ability to engage in additional discovery and prepare for trial.  (Mot. Default J. at 6.)  The Court believes that this prejudice can be alleviated with a modification of the Scheduling Order.  Indeed, Plaintiff and Defendant John Lemanski have already stipulated to an order extending the discovery cut-off date to May 11, 2013, due, in part, to the fact that "discovery has been complicated and delayed by the withdrawal of counsel for [the MRR] Defendants."  (Dkt. 87.)  Additionally, the Court is aware that on March 25, 2013, the day before the oral argument on these motions, Plaintiff's counsel obtained an affidavit from Defendant Turner which provides significant amounts of information that Plaintiff is seeking in its written discovery from the MRR Defendants, thereby further alleviating any prejudice to Plaintiff.  (Dkt. 115, Supp. Br. Mot. for Sanctions Against Lemanski at Ex. A.)  Thus, the Court is not yet prepared to preclude consideration of this case on the merits when discovery has not even closed, some documents and responses have been produced, and the bench trial date is over six months away.

    As noted, the third and fourth factors weigh against imposition of a sanction as harsh as a default judgment.   "[I]n the absence of notice that dismissal is contemplated, a district court should impose a penalty that is short of dismissal unless the derelict has engaged in bad faith or contumacious conduct."  *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988).  The Court finds nothing in the record clearly advises the MRR Defendants that they could be sanctioned with the entry of a default judgment if they failed to adequately respond to the stipulated Discovery Orders.  Nor has the Court imposed any lesser sanctions up to this point.[4]

---

[4] The Court also finds that the facts related to these three *Reyes* factors serve to distinguish the primary case relied on by Plaintiff.  *Cf. Brown v. Gojcaj Foods, Inc.*, No. 09-14537, 2011 WL 1980533, at *1, 3-4 (E.D. Mich. May 20, 2011) (entering default as Rule 37 sanction where defendant had first failed to answer resulting in default and $3,900 monetary sanction when default was set aside, and then failed to respond to discovery until before the discovery deadline).

### B.    Second Motion For Default Judgment

#### 1.    *Defendants Turner and Wells*

The same is true with respect to Plaintiff's Second Motion for Default Judgment as a sanction for the individual MRR Defendants' failure to respond to Plaintiff's second set of discovery requests.  In the first motion, Plaintiff advised that it "intend[ed] to move to compel responses to its Second Set of Discovery Requests."  (Dkt. 101, Reply at 1.)  Subsequently, Plaintiff's counsel sent an email to the MRR Defendants further advising that their discovery responses were overdue and stating, "[t]o avoid Barrette having to file yet another Motion to Compel, please produce all requested documents and truthfully and fully respond to all Interrogatories within 7 days."  (Dkt. 104, Second Mot. Default J. at Ex. F.)  Despite these representations, Plaintiff did not file a motion to compel.  Instead, Plaintiff again sought a default judgment.  More specifically, Plaintiff now "requests that this Court enter terminating sanctions against the MRR Defendants and use its criminal contempt power to force the MRR Defendants into compliance with this Court's Orders." (*Id*. at 2.)

As a threshold matter, the Court finds that Plaintiff failed to properly seek concurrence pursuant to E.D. Mich. LR 7.1(a).  Plaintiff's one-sentence email to *pro se* litigants referencing a possible motion to compel, does not advise them of a motion seeking a default judgment and certainly does not put them on notice of potential criminal contempt sanctions.  For this reason alone, the motion may be denied.  *See Little Caesar Enterprises, Inc. v. Vega*, No. 11-13163, Dkt. 5 (E.D. Mich. July 28, 2011) (denying motion for preliminary injunction for failure to comply with LR 7.1(a) and explaining "[t]he plaintiffs have not demonstrated reasonable efforts to conduct a

12

conference with the defendants on the subject of the motion. The lack of diligence and *pro forma* attempt at compliance with the local rules serves neither the letter nor the spirit of the rule.")

Additionally, the Court finds that its above analysis on the first motion for default judgment is equally applicable to the second motion for default judgment as it pertains to Ms. Wells.

In sum then, out of an abundance of caution and in fairness to these individual *pro se* litigants, the Court finds the extreme sanction of a default judgment against Wells is not presently warranted. This is not a case where there has been no effort to respond to discovery requests or no useful information forthcoming. Further, the prejudice to Plaintiff may be mitigated, Ms. Wells did not have notice of the sanctions being sought, and the deterrent effect of lesser sanctions has not been determined. This does not mean, however, that Ms. Wells' failure to comply with her discovery obligations can go unpunished indefinitely, at increasing cost to Plaintiff in terms of time, effort, expense, and uncertainty. Ms. Wells needs to understand that the outstanding discovery must be produced in accordance with this Order.

    2.    *Defendant MRR*

The three MRR Defendants filed a joint, *pro se* response to Barrette's Motion for Default Judgment. (Dkt. 100.) In its reply, Plaintiff pointed out that MRR could only appear through an attorney and could not be represented by Turner. (Dkt. 101 at 3.) With respect to the Second Motion for Default Judgment, this Court issued a Supplemental Notice of Hearing on March 18, 2013 indicating that "[a]ny Response filed by the corporate defendant, [MRR], must be by counsel." (Dkt. 109.)

To date, MRR has not obtained new counsel. As Plaintiff points out, a corporation cannot litigate in federal court *pro se*. *Rowland v. California Men's Colony*, 506 U.S. 194, 201-202 (1993);

*Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("The rule of this circuit is that a corporation cannot appear in federal court except through an attorney"). This rule also applies to limited liability corporations. *WB Music Corp. v. Port City Cruise Line, Inc*., No. 09-742, 2009 U.S. Dist. LEXIS 86891, at *3, n.1 (W.D. Mich. Sept. 9, 2009). Furthermore, "[i]t is insufficient that the person attempting the representation is an officer of the corporation." *Reich v. Pierce* (table), 45 F.3d 431, n. 1 (6th Cir. 1994) (citing *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970)).

Though the Court considered sanctions short of default, because MMR cannot appear as a *pro se* corporation, a less drastic remedy does not appear appropriate. *Premier Fla. Auto Sales & Leasing, LLC v. Mercedes-Benz of Massapequa, LLC*, No 10-4428, 2012 U.S. Dist. LEXIS 186181, at *4 (E.D.N.Y. Nov. 5, 2012) (explaining that "where there is no counsel to receive or act on the [discovery] order or the warning, such a procedure would be pointless, and [defendant] cannot be permitted to ignore its discovery obligations in regard to the counterclaims and then evade all responsibility simply by failing to obtain counsel") *adopted by* 2013 U.S. Dist. LEXIS 20148 (E.D.N.Y. Feb. 14, 2013). As a result of MRR's lack of legal representation, it has failed to adequately comply with the Court's prior Discovery Order, has failed to respond to Plaintiff's Second Set of Discovery Requests, and has failed to oppose the Second Motion for Default Judgment. *See Humphrey v. U.S. Attorney General's Office*, 279 F. App'x. 328, 331 (6th Cir. 2008) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion" (citation omitted)). On the present record, therefore, the Court recommends entry of a default judgment against MRR. *See, e.g., James v. Detroit*, No. 12-10569, 2013 U.S. Dist. LEXIS 17227 (E.D. Mich. Feb. 8, 2013) (granting

14

unopposed motion for default as a sanction for defendant's failure to cooperate in discovery); *Velocity Tools v. Nemic Indus. Supply Co.*, No. 06-152, 2007 U.S. Dist. LEXIS 52391 (W.D. Mich. July 19, 2007) (dismissing complaint with prejudice where plaintiff corporation failed to obtain counsel within six months despite being warned of possible dismissal); *Epicentre Strategic Corp.-Michigan v. Cleveland Const., Inc.*, No. 04-40278, 2007 U.S. Dist. LEXIS 15971 (E.D. Mich. Mar. 7, 2007) (entering default against corporate defendant that failed to have counsel enter an appearance on its behalf).

## IV.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court RECOMMENDS that the District Court DENY Plaintiff's Motion for Default Judgment (Dkt. 75) and Second Motion for Default Judgment (Dkt. 104) to the extent they seek terminating and contempt sanctions against Defendant Wells.  It remains, however, that with respect to the First Set of Discovery Requests, Ms. Wells did not fully comply with the prior Discovery Order and has also failed to timely respond to the Second Set of Discovery Requests.

Accordingly, the Court further RECOMMENDS that, if this Report and Recommendation is adopted:

(1) within seven (7) days of the adoption, Ms. Wells (a) provide to Plaintiff's counsel for imaging (at Plaintiff's expense) the computer referenced in her supplemental response to Interrogatory No. 2 and any other computers or electronic devices, including PDAs, smart phones, etc., that may or do contain any information responsive to Plaintiff's discovery requests; (b) provide to Plaintiff's counsel a signed consent/authorization form for Plaintiff to Subpoena MRR's tax records from the United States Internal Revenue Service and the

15

Michigan Department of Treasury, as well as any authorizations and/or account access information so that Plaintiff may gain access to the phone and financial information requested in Interrogatory Nos. 3 and 4; and (c) provide full and complete responses to Plaintiff's Second Set of Discovery Requests; and

(2) the discovery cut off date be extended to May 11, 2013 and Plaintiff be permitted to take Ms. Wells' deposition any time prior to the trial date.

Further, Wells is warned that further noncompliance with the Federal Rules pertaining to discovery, the Court's Discovery Order (Dkt. 70), or this Order may result in the imposition of more severe sanctions, including the entry of default judgment in favor of Barrette.

Finally, the Court RECOMMENDS that a default judgment be entered against Defendant MRR in an amount to be determined by the District Court upon further submissions.

## V.    FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon

16

this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: April 5, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 5, 2013.

s/Jane Johnson
Deputy Clerk

17