UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC.,

        Plaintiff,

v.

        Case No. 11-cv-13335
        HON. GERSHWIN A. DRAIN

MICHIGAN RESIN REPRESENTATIVES,
JOHN H. LEMANSKI, JR.,
LISA WELLS a/k/a LISA LEMANSKI,
TAMARA TURNER,

        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT LISA WELLS FOR DESTRUCTION OF EVIDENCE [#159] AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOHN H. LEMANSKI, JR. [#181]**

## I.    INTRODUCTION

On July 29, 2011, Plaintiff, Barrette Outdoor Living, Inc. ("Barrette Outdoor" or "Barrette") filed the instant action. Dkt. No. 1. In its Complaint, Plaintiff alleged 11 counts of misconduct against Defendants. All of Plaintiff's claims originate from an alleged pass-through scheme, in which Defendants acted as conduits for the sale and distribution of plastic resin. Plaintiff alleges that Defendants up-charged its company in excess of $400,000.

On October 3, 2014, the immediate civil action was reassigned to this Court. This action has a long and contentious procedural history. Several points in procedural history are important to note. First, in its Response to Defendants' Motion to Dismiss [#11], entered on September 12, 2011, Barrette stipulated to a dismissal of Count V of the Complaint. Count V represented

Plaintiff's claim for inducement of breach of fiduciary duty against Defendants Michigan Resin Representatives ("MRR"), Lisa Wells ("Wells"), and Tamara Turner ("Turner").  In addition, on March 22, 2012, Defendant John Lemanski ("Lemanski") filed a counterclaim for breach of contract.  On June 14, 2013, the Court entered an Order granting Plaintiff's Motion for Summary Judgment [#80] as to Defendants' counterclaim.  Dkt. No. 132.

Presently before this Court are Plaintiff's Motions for Sanctions Against Defendant Lisa Wells for the Intentional Destruction of Evidence [#159] and for Default Judgment Against Defendant John Lemanski [#181].  Both Motions were fully briefed.[1]  On December 8, 2014, this Court conducted a hearing on both Motions.

For the reasons that follow, the Court will DENY Plaintiff's Motion for Sanctions Against Defendant Lisa Wells for Destruction of Evidence [#159].  The Court will also DENY Plaintiff's Motion for Default Judgment Against Defendant John Lemanski [#181].

## II.   FACTUAL BACKGROUND

### A.  Facts

Plaintiff, Barrette Outdoor, is an Ohio corporation, engaged in the production and distribution of vinyl lattice.  In order to manufacture its products, Plaintiff purchases plastic resin.  Plaintiff-company fits the resin into molds to make products such as fencing and sheds.

Resin is a commodity for which prices can fluctuate as frequently as day-to-day.  The market price of resin is determined by soliciting bids from producers and distributors.  Barrette Outdoor is a participant in this market and purchases about 25 million pounds of Resin per year.

---

[1] On March 3, 2014, Defendant John Lemanski filed, "Defendant Lemanski's *Ex Parte* Objection to the Courts [sic] Consideration of Plaintiff Barrette Outdoor Livings [sic] Untimely Dispositive Motion for Default Against John Lemanski and Motion to Strike Said Motion from the Record" [#191], challenging Plaintiff's Motion for Default Judgment [#181]. The Court construed this "Objection" as Defendant's Response Brief to the Motion [#181]. Dkt. No. 191.  Likewise, on March 14, 2014, Plaintiff filed a Response to Lemanski's Objection. Dkt. No. 194.  The Court construed this "Response" as a Reply to the Response [#191] to the Motion [#181].

On October 29, 2007, Plaintiff hired Defendant, John H. Lemanski, Jr. to work at Barrette's office facilities in Flint, Michigan. Lemanski was a senior buyer at the company. In this position, Barrette Outdoor claims that Lemanski was responsible for Barrette Outdoor's resin purchasing operation. Specifically, Plaintiff contends that Defendant Lemanski was responsible for ensuring that Barrette paid no more than the lowest amount possible for resin.

On February 4, 2010, Plaintiff claims that Defendants Wells and Turner formed Michigan Resin Representatives, LLC; Wells and Turner owned and operated the company. Wells is Defendant Lemanski's sister; Turner and Wells, at the time of MRR's formation, were roommates. Neither Wells nor Turner had experience in either sales or the resin industry. MRR's principal place of business is Canton, Michigan.

Before placing a resin order, Plaintiff further contends that Lemanski was obligated to obtain approval from the general manager of Barrette's Flint facility. In requesting approval, Lemanski was required to inform the general manager of the quantity, price, and supplier of the resin being ordered. Plaintiff claims that the general manager and Barrette relied on Lemanski's representations that the resin prices were of fair-market value.

Resin Distribution Inc. ("RDI") is a Massachusetts distribution company that sells resin. Plaintiff has been purchasing resin from RDI since 2005. Plaintiff alleges that at Defendant Lemanski's direction,[2] from February 11, 2010 through April 20, 2011, MRR purchased resin from RDI at fair-market prices. Plaintiff alleges that MRR then resold the resin, purchased from RDI, at above-market prices to Barrette Outdoor.

---

[2] Plaintiff specifically alleges that, beginning in February 2010, Defendant Lemanski contacted Brett Masotta, RDI's national sales manager. Lemanski allegedly advised Masotta, and thus RDI, that Barrette Outdoor would no longer purchase resin directly from RDI. Instead, Lemanski advised Masotta that to sell resin to MRR. Masotta agreed to Lemanski's request. Plaintiff further alleges that, at Lemanski's direction, MRR purchased nearly six million pounds of resin from RDI.

Plaintiff further claims that MRR never expended its own funds as a result of any of these transactions. Instead, the transactions were structured so that Plaintiff first paid MRR before MRR paid RDI.[3] In addition, MRR's only supplier throughout the course of its existence was RDI. Likewise, MRR's only purchaser throughout the course of is existence was Barrette Outdoor. At no time did Defendant Lemanski disclose to Barrette that MRR was, in part, controlled by his sister, Defendant Wells. Plaintiff further maintains that the only Barrette representative with whom MRR contracted was Defendant Lemanski. On June 14, 2011, Barrette eliminated Lemanski's position and terminated Lemanski. Subsequent to Lemanski's termination, Barrette uncovered evidence that Lemanski was involved in a fraudulent pass-through scheme.

Plaintiff argues, in 10 separate counts, that Defendants should be found liable for this alleged fraudulent pass-through scheme. Plaintiff specifically contends that in order to obtain authorization for the MRR purchase orders, Lemanski falsely represented to his supervisors that MRR's inflated charges, over the course of 14 transactions, were of fair-market prices. In total, Barrette Outdoor alleges that it lost at least $416,826.10 through this alleged scheme.

Defendants, on the other hand, disputes Plaintiff's entire portrayal of the facts illustrated here. Defendants contend that Lemanski did not direct RDI to enter into 14 transactions with MRR.[4] Defendants also deny that Lemanski possessed any interest in MRR, including any proceeds from the 14-listed transactions. *See* Compl. ¶¶ 28, 31.

---

[3] The purchase contracts between MRR and Barrette contained payment terms of 20 days. The purchase contracts between MRR and RDI contained payment terms of 30 days. As a result, Plaintiff alleges that MRR did not have to place any of its own capital at risk; MRR never paid RDI before receiving payment from Barrette Outdoor.

[4] Twelve out of the 14 transactions between Defendant MRR and Plaintiff Barrette were at prices more than the sums that Defendant MRR paid to RDI for the purchase of resin. The total difference between the sums was $416,826.10. In other words, Defendant MRR inflated the prices at which it sold resin to Barrette by $416,826.10.

## B. Relevant Procedural History

The present Motions are the latest in a series of motions filed by Plaintiff, requesting sanctions and equitable relief against Defendants for discovery abuses. On July 13, 2011, Barrette served all Defendants a "Notice to Preserve Electronically Stored Information." *See* Dkt. No. 159 at 2-3 (explaining that Barrette intended to take legal action). On July 29, 2011, Barrette Outdoor filed a Complaint against Defendants.

In May 2012, Barrette Outdoor served upon all Defendants its First Set of Discovery Requests. *See generally* Dkt. Nos. 38-41. In October 2012, and after the Court conducted hearings on both Parties' discovery motions, the Court granted Plaintiff relief regarding its First Set of Discovery requests, among other discovery motions granted to both parties.[5] Dkt. Nos. 66 (preliminary order on discovery motions [##38-41]), 67 (granting as to Defendant Lemanski), 70-71 (granting motion as to Defendants Wells and Turner, respectively).

On November 30, 2012, Plaintiff filed a Motion for Default Judgment as to MRR and Defendants Wells and Turner [#75]. In the Motion, Plaintiff contended that the Defendants failed to comply with its discovery obligations pursuant to the Court's October Orders. Dkt. No. 75. On April 5, 2013, Judge Michelson entered a Report and Recommendation, in which she recommended to deny Plaintiff's request for terminating sanctions. Dkt. No. 118. Magistrate Judge Michelson did find, however, that Defendant Wells did not comply with the First Discovery Order and also failed to timely respond to Plaintiff's Second Set of Discovery Requests. *Id.* As a result, Magistrate Judge Michelson recommended what amounted to a third order to comply with discovery requests. She also warned Defendant Wells that further

---

[5] Plaintiff contended that Defendants either did not respond to the Request and that the responses that Defendants gave were incomplete. *See, e.g.*, Dkt. No. 39.

noncompliance could result in more severe sanctions, including the entry of default judgment. *Id.* Judge Cook adopted the Report and Recommendation. Dkt. No. 125.

On February 6, 2013, Plaintiff filed two motions for sanctions: for Providing False Interrogatory Answers and Tax Documents [#90] and Against John Lemanski for His Intentional Destruction of Evidence and Violation of the Court's Discovery Order [#91]. On March 27, 2013, the Court entered an Order denying Plaintiff's Motion as to MRR [#90]. Dkt. No. 116. On April 26, 2013, Magistrate Judge Michelson entered a Report and Recommendation in regard to the spoliation motion against Defendant Lemanski. Dkt. No. 124. She recommended that Lemanski pay Barrette a total of $35,000 to compensate for some of the lititgation costs in bringing the motion as well as for increased expenses in conducting discovery. Dkt. No. 144. In addition, she recommended that at trial, there exist "an adverse inference that Lemanski's cell phone and personal laptop contained information unfavorable to Lemanski, including that he was involved with MRR." *Id.* at 2, 29. Judge Cook adopted this Report and Recommendation. Dkt. No. 144. Defendant Lemanski has since recompensed this award to Plaintiff.

On March 13, 2013, Plaintiff filed a Second Motion for Default Judgment [#104] as to MRR and Defendants Wells and Turner. Plaintiff contended that MRR and Defendants Wells and Turner completely failed to respond to Barrette's Second Set of Discovery Requests. Dkt. No. 104. On April 5, 2013, Magistrate Judge Michelson entered a Report and Recommendation Dkt. No. 118. In the Report, Magistrate Judge Michelson recommended that default judgment should be entered for MRR, as it was no longer being represented by counsel and could not challenge this Motion *pro se*. *Id.* She also recommended that the Court deny the Motion as it pertained to Defendant Wells, as she had made attempts to comply and as the Court had never warned her about terminating sanctions. *Id.* In the Report, Defendant Wells was warned that

further noncompliance of the Federal Rules, the Court's Discovery Order [#70], and the immediate Report's Order could result in more severe sanctions, including an entry of default judgment. *Id.* Defendant Turner's bankruptcy filings precluded the Court from ruling on this Motion as to her. *Id.* Judge Cook adopted the Report and Recommendation. Dkt. No. 125.

Presently before this Court are two new motions: Plaintiff's Motions for Sanctions Against Defendant Lisa Wells for the Intentional Destruction of Evidence [#159] and for Default Judgment Against Defendant John Lemanski [#181]. In the Motion for Sanctions Against Defendant Wells [#159], Plaintiff contends that Wells scrubbed her computer using the same computer software, for which her brother, Defendant Lemanski, also used to spoil evidence. Dkt. No. 159. Plaintiff asserts that, viewing this in the context of Defendant Lemanski's spoliation, the two Defendants made certain that Barrette would never access written communications that could prove liability. *Id.*

In the Motion for Default Judgment Against Defendant Lemanski [#181], Plaintiff contends that it has uncovered further abuses, which Lemanski made during the discovery period. Plaintiff further contends that the discovery of these abuses warrant the entry of a default judgment, pursuant to this Court's prior warnings.

### III. LAW AND ANALYSIS

#### A. Standard of Review

At issue to both of Plaintiff's Motions is whether the actions of Defendants Wells and Lemanski, respectively, warrant terminating sanctions. District courts have discretion to impose sanctions for discovery abuses. For example, for not obeying a discovery order, under the Federal Rules of Civil Procedure, the Court can impose the following:

> (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule

> 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may also include the following:
>
> …
>
> (vi) rendering a default judgment against the disobedient party; [and]
>
> …
>
> (C) *Payment of Expenses*. Instead of or in addition to the order above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2); *see also,* FED. R. CIV. P. 37(b)(2)(A)(i)-(vii). In determining the appropriate sanction, courts tend to balance the severity of the sanction in proportion to the severity of the alleged discovery abuse. *See Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012).

### 1. *Sanctions for the Destruction of Evidence and Other Discovery Abuses*

To prevail on a claim for the destruction of evidence, the movant must demonstrate that: (1) the party having control of the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Id.* (citing *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)).

"District courts have broad discretion to craft proper sanctions for the spoliation of evidence." *Id.* at 503-04 (citing *Adkins II v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009)). District courts should, however, impose sanctions, as follows:

> When appropriate, a proper spoliation sanction should serve both fairness and punitive functions, but its severity should correspond to the district court's finding after a fact-intensive inquiry into a party's degree of fault under the circumstances, including the recognition that a party's degree of fault may range from innocence through the degrees of negligence to intentionality. Thus, a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence.

*Id.* at 504.

### 2. *Default Judgment for Repeated Discovery Abuses*

In order to determine whether a default sanction should be granted in light of a history of discovery abuses and failure to comply with the court's orders, the Sixth Circuit has stated four factors: (1) whether the party's failure is due to willfulness, bad faith or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that the failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2012)).

In addition, "[a]lthough no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *Id.* Contumacious conduct is conduct that is "'perverse in resisting authority' and 'stubbornly disobedient.'" *Shafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008) (citation omitted).

### B. **Plaintiff's Motion for Sanctions Against Defendant Lisa Wells for the Intentional Destruction of Evidence [#159]**

Plaintiff requests that this Court imposes spoliation sanctions, including the entrance of default judgment and reasonable costs and attorneys' fees, against Defendant Wells.

Plaintiff argues that Wells intentionally and in bad faith destroyed cell phones and a computer that she used to perpetuate the fraudulent pass-through scheme against Barrette. Plaintiff specifically contends that (1) Defendant Wells had control over her cell phones and computer; (2) Wells destroyed those items with the intent of concealing information stored within those devices mentioned; and (3) the destroyed cell phones and computer was relevant to Plaintiff's claim that Defendant Wells, Lemanski, and Turner collaborated to defraud Barrette out of more than $400,000. *See Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012) (citing *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)). In addition, the Court has already sanctioned Defendant Lemanski. The Court, in sanctioning Defendant Lemanski, also ruled that at trial, there will exist an adverse inference that the devices that he was found to have destroyed evidenced information unfavorable to him and his involvement with MRR. Given this ruling and the nature of the devices allegedly destroyed, a reasonable trier of fact would likely and likewise find that the information contained therein would support Plaintiff's fraud claims. *See id.* ("[T]he destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense[.]").

Defendant Wells disputes this accounting of events. Wells contends that she did not scrub her computer for the purpose of hiding communications with her brother, Defendant Lemanski. Instead, she asserts that the scrubbing software that Plaintiff's team of computer forensics experts found on her computer was a result of software installed by Internet City to repair her computer. Defendant Wells also denies that she ever installed or ran the Windows Washer program; she asserts that she only deleted the setup file.

Wells further contends that she did not intentionally destroy her phone to hide communications with Defendants Lemanski and Turner. Instead, Wells asserts that, in April 2012, her first cell phone was placed in a washing machine. As a result of the damage, Wells claims that she disposed of it. To further support this point, Wells contends that these events occurred before the duty attached to preserve evidence. Dkt. No. 160-4. In regard to the loss of her second cell phone, Wells contends that she gave the phone to her daughter, and that her daughter lost it.

Given that a default judgment sanction is among the most severe that a court could grant, the Court declines to use its discretionary power to grant Plaintiff's sanctions motion, requesting default judgment against Defendant. *See Grange Mut. Cas. Co. v. Mack*, 270 Fed.Appx. 372, 376 (6th Cir. 2008) ("Federal Rule of Civil Procedure 37(b)(2)(C) allows district judges to sanction discovery abusers. A district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment."). The Court finds that there exist sanctions that are proportional to Defendant's actions that are both fair and punitive. At this time the Court denies Plaintiff's motion for default judgment sanctions against Defendant Wells. At the impending bench trial, the Court will make some specific findings of fact, after hearing testimony related to the truthfulness of Defendant Wells' claims. If the Court finds the claims of Defendant Wells, regarding the destruction of her cell phones and computer to be untruthful, the appropriate sanctions – payment of costs and attorneys' fees related to litigating these alleged discovery abuses – will be imposed.

### C. **Plaintiff's Motion for Default Judgment Against Defendant John H. Lemanski, Jr. [#181]**

Also at issue is whether Defendant Lemanski committed further discovery abuses to warrant default judgment of all claims against him. Plaintiff claims that: (1) Lemanski continued

to provide incomplete information about key witnesses, thereby failing to comply with court orders mandating that he comply with all discovery requests; (2) Plaintiff was prejudiced by both false and incomplete discovery responses from Defendant; (3) Judge Michelson warned Lemanski that further abuses of both the discovery process and of the court would result in a default judgment against him; and (4) while Plaintiff has requested a default judgment in previous motions, the Court instead has imposed both a $35,000 fine against Lemanski as well as an adverse inference at trial that evidence that Lemanski destroyed or lost contained information that was not favorable to him. *See Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2012).

While no single factor listed here is dispositive, dismissal through default judgment is also proper if the non-movant has displayed contumacious conduct. To support this particular argument, Plaintiff contends that in providing incomplete and false information, Defendant defied the efficient use of the court. Plaintiff also points to Defendant's defiance of court orders, arguing that Lemanski was under a strict obligation to provide full, true, and complete responses to all discovery requests.

As noted above, given that a default judgment sanction is among the most severe that a court can grant, *see Grange Mut. Cas. Co. v. Mack*, 270 Fed.Appx. at 376, the Court declines to use its discretionary power to grant Plaintiff's default judgment motion. The Court finds instead that there exist sanctions that are proportional to Defendant's actions that are both fair and punitive.

As a result, at this time the Court denies Plaintiff's motion for default judgment against Defendant Lemanski. At the impending bench trial, the Court will make specific findings of fact, after hearing testimony related to the truthfulness of Defendant Lemanski's claims. If the

Court finds Defendant Lemanski's claims, his non-compliance with discovery orders, to be untruthful, the appropriate sanctions – payment of costs and attorneys' fees related to litigating these alleged discovery abuses – will be imposed.

### D. Motion to Strike Plaintiff's Motion for Default Judgment Against Defendant John Lemanski Jr. from the Record [#191]

The Court will construe Defendant Lemanski's Objection as both a Response to Plaintiff's Motion and, in part, as Motion to Strike Plaintiff's Motion from the Record. *See* Dkt. No. 191. The Court denies Defendant Lemanski's Motion to Strike Plaintiff's Motion from the Record. *Id.* While Plaintiff filed the motions beyond the dispositive motion cutoff date, Plaintiff is entitled to file a motion for sanctions against ongoing bad conduct, especially those with which this Court has engaged, decided, and given warnings. Of those sanctions, the court has the discretionary authority to grant sanctions, including default judgment. FED. R. CIV. P. 37(b)(2). For these reasons, the Court finds that Plaintiff's Motions are not untimely and denies Defendant's motion to strike them from the record.

## IV. CONCLUSION

This Court DENIES Plaintiff's Motion for a Default Judgment Against Defendant Lisa Wells for the Intentional Destruction of Evidence [#159]. The Court, however, may impose a sanction after hearing testimony related to this issue during the bench trial.

This Court further DENIES Plaintiff's Motion for Default Judgment Against Defendant John Lemanski [#181]. Likewise, the Court may impose a sanction after hearing testimony on this issue at the bench trial.

IT IS SO ORDERED.

Dated: December 24, 2014

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
UNITED STATES DISTRICT COURT JUDGE