UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRETTE OUTDOOR LIVING, INC.,

        Plaintiff,

                                    Case No. 11-cv-13335
v.                                 HON. GERSHWIN A. DRAIN

MICHIGAN RESIN REPRESENTATIVES,
JOHN H. LEMANSKI, JR.,
LISA WELLS,
TAMARA TURNER,

        Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION *IN LIMINE* [#218] AND DENYING DEFENDANT JOHN  H. LEMANSKI JR.'S MOTION *IN LIMINE* [#227]**

## I.    INTRODUCTION

On July 29, 2011, Plaintiff Barrette Outdoor Living, Inc. ("Barrette" or "Barrette Outdoor"), doing business as U.S. Fence, Inc., filed the instant action, alleging several federal and state-based claims. Plaintiff alleges 11 counts against Defendants; ten of the 11 original counts remain.[1]  All of the counts originate from an alleged pass-through scheme, in which Defendants acted as conduits for the sale and distribution of plastic resin.  Plaintiff claims that Defendant Lemanski, now a former employee of Barrette Outdoor, is the mastermind behind the scheme.

On October 3, 2014, the immediate civil action was reassigned to this Court.  This action has a long contentious procedural history.  On March 22, 2012, Defendant John Lemanski filed a

---

[1] In its Response to Defendants' Motion to Dismiss [#11], entered on September 11, 2011, Barrette stipulated to a dismissal of Count V—Plaintiff's claim for inducement of breach of fiduciary duty against Defendants MRR, Lisa Wells, and Tamara Turner.

counterclaim for breach of contract.  On June 14, 2013, the Court entered an Order granting Plaintiff's Motion for Summary Judgment [#80] as to Defendants' counterclaim. Dkt. No. 132. In addition, on January 10, 2014, the Court stayed the matter as to Defendant Tamara Turner pending bankruptcy proceedings.  *See* Dkt. No. 118.  After the withdrawal of their last attorney, Defendants Lemanski and Wells have decided to proceed *pro se*.  *See* Dkt. Nos. 77, 15.

Presently before the Court are Plaintiff's Motion in Limine [#218] and Defendant Lemanski's Motion in Limine [#227].  The motions have been fully briefed.  On Thursday, January 22, 2015, the Court heard oral arguments on both motions.

## II.    FACTUAL BACKGROUND

### A.  Facts

Plaintiff, Barrette Outdoor, is an Ohio corporation, engaged in the production and distribution of vinyl lattice.  In order to manufacture its products, Plaintiff purchases plastic resin.  Plaintiff-company fits the resin into molds to make products such as fencing and sheds.

Resin is a commodity for which prices can fluctuate as frequently as day-to-day.  The market price of resin is determined by soliciting bids from producers and distributors.  Barrette Outdoor is a participant in this market and purchases about 25 million pounds of Resin per year.

On October 29, 2007, Plaintiff hired Defendant, John H. Lemanski, Jr. to work at Barrette's office facilities in Flint, Michigan. Lemanski was a senior buyer at the company.  In this position, Barrette Outdoor claims that Lemanski was responsible for Barrette Outdoor's resin purchasing operation.   Specifically, Plaintiff contends that Defendant Lemanski was responsible for ensuring that Barrette paid no more than the lowest amount possible for resin.

On February 4, 2010, Plaintiff claims that Defendants Wells and Turner formed Michigan Resin Representatives, LLC; Wells and Turner owned and operated the company.  Wells is

Defendant Lemanski's sister; Turner and Wells, at the time of MRR's formation, were roommates. Neither Wells nor Turner had experience in either sales or the resin industry. MRR's principal place of business is Canton, Michigan.

Before placing a resin order, Plaintiff further contends that Lemanski was obligated to obtain approval from the general manager of Barrette's Flint facility. In requesting approval, Lemanski was required to inform the general manager of the quantity, price, and supplier of the resin being ordered. Plaintiff claims that the general manager and Barrette relied on Lemanski's representations that the resin prices were of fair-market value.

Resin Distribution Inc. ("RDI") is a Massachusetts distribution company that sells resin. Plaintiff has been purchasing resin from RDI since 2005. Plaintiff alleges that at Defendant Lemanski's direction,[2] from February 11, 2010 through April 20, 2011, MRR purchased resin from RDI at fair-market prices. Plaintiff alleges that MRR then resold the resin, purchased from RDI, at above-market prices to Barrette Outdoor.

Plaintiff further claims that MRR never expended its own funds as a result of any of these transactions. Instead, the transactions were structured so that Plaintiff first paid MRR before MRR paid RDI.[3] In addition, MRR's only supplier throughout the course of its existence was RDI. Likewise, MRR's only purchaser throughout the course of is existence was Barrette Outdoor. At no time did Defendant Lemanski disclose to Barrette that MRR was, in part, controlled by his sister, Defendant Wells. Plaintiff further maintains that the only Barrette

---

[2] Plaintiff specifically alleges that, beginning in February 2010, Defendant Lemanski contacted Brett Masotta, RDI's national sales manager. Lemanski allegedly advised Masotta, and thus RDI, that Barrette Outdoor would no longer purchase resin directly from RDI. Instead, Lemanski advised Masotta that to sell resin to MRR. Masotta agreed to Lemanski's request. Plaintiff further alleges that, at Lemanski's direction, MRR purchased nearly six million pounds of resin from RDI.

[3] The purchase contracts between MRR and Barrette contained payment terms of 20 days. The purchase contracts between MRR and RDI contained payment terms of 30 days. As a result, Plaintiff alleges that MRR did not have to place any of its own capital at risk; MRR never paid RDI before receiving payment from Barrette Outdoor.

representative with whom MRR contracted was Defendant Lemanski. On June 14, 2011, Barrette eliminated Lemanski's position and terminated Lemanski. Subsequent to Lemanski's termination, Barrette uncovered evidence that Lemanski was involved in a fraudulent pass-through scheme.

Plaintiff argues, in 10 separate counts, that Defendants should be found liable for this alleged fraudulent pass-through scheme. Plaintiff specifically contends that in order to obtain authorization for the MRR purchase orders, Lemanski falsely represented to his supervisors that MRR's inflated charges, over the course of 14 transactions, were of fair-market prices. In total, Barrette Outdoor alleges that it lost at least $416,826.10 through this alleged scheme.

Defendants, on the other hand, disputes Plaintiff's entire portrayal of the facts illustrated here. Defendants contend that Lemanski did not direct RDI to enter into 14 transactions with MRR.[4] Defendants also deny that Lemanski possessed any interest in MRR, including any proceeds from the 14-listed transactions. *See* Compl. ¶¶ 28, 31.

B. **Relevant Procedural History**

On November 30, 2012, Plaintiff filed a Motion for Default Judgment as to MRR and Defendants Wells and Turner [#75]. In the Motion, Plaintiff contended that the Defendants failed to comply with its discovery obligations pursuant to the Court's October Orders. Dkt. No. 75. On April 5, 2013, Magistrate Judge Michelson entered a Report and Recommendation, in which she recommended to deny Plaintiff's request for terminating sanctions. Dkt. No. 118. Magistrate Judge Michelson did find, however, that Defendant Wells did not comply with the First Discovery Order and also failed to timely respond to Plaintiff's Second Set of Discovery Requests. *Id.* As a result, Magistrate Judge Michelson recommended what amounted to a third

---

[4] Twelve out of the 14 transactions between Defendant MRR and Plaintiff Barrette were at prices more than the sums that Defendant MRR paid to RDI for the purchase of resin. The total difference between the sums was $416,826.10. In other words, Defendant MRR inflated the prices at which it sold resin to Barrette by $416,826.10.

order to comply with discovery requests. She also warned Defendant Wells that further noncompliance could result in more severe sanctions, including the entry of a default judgment. *Id.* Judge Cook adopted the Report and Recommendation. Dkt. No. 125.

On February 6, 2013, Plaintiff filed two motions for sanctions: for Providing False Interrogatory Answers and Tax Documents [#90] and Against John Lemanski for His Intentional Destruction of Evidence and Violation of the Court's Discovery Order [#91]. On March 27, 2013, the Court entered an Order denying Plaintiff's Motion as to MRR [#90]. Dkt. No. 116. On April 26, 2013, Magistrate Judge Michelson entered a Report and Recommendation in regard to the spoliation motion against Defendant Lemanski. Dkt. No. 124. She recommended that Lemanski pay Barrette a total of $35,000 to compensate for some of the lititgation costs in bringing the motion as well as for increased expenses in conducting discovery. Dkt. No. 144. In addition, she recommended that at trial, there exist "an adverse inference that Lemanski's cell phone and personal laptop contained information unfavorable to Lemanski, including that he was involved with MRR." *Id.* at 2, 29. Judge Cook adopted this Report and Recommendation. Dkt. No. 144. Defendant Lemanski has since paid this award to Plaintiff.

On March 13, 2013, Plaintiff filed a Second Motion for Default Judgment [#104] as to MRR and Defendants Wells and Turner. Plaintiff contended that MRR and Defendants Wells and Turner completely failed to respond to Barrette's Second Set of Discovery Requests. Dkt. No. 104. On April 5, 2013, Magistrate Judge Michelson entered a Report and Recommendation Dkt. No. 118. In the Report, Magistrate Judge Michelson recommended that default judgment should be entered for MRR, as it was no longer being represented by counsel and could not challenge this Motion *pro se*. *Id.* She also recommended that the Court deny the Motion as it pertained to Defendant Wells, as she had made attempts to comply and as the Court had never

5

warned her about terminating sanctions. *Id.* In the Report, Defendant Wells was warned that further noncompliance of the Federal Rules, the Court's Discovery Order [#70], and the immediate Report's Order could result in more severe sanctions, including an entry of default judgment. *Id.* Defendant Turner's bankruptcy filings precluded the Court from ruling on this Motion as to her. *Id.* Judge Cook adopted the Report and Recommendation. Dkt. No. 125.

## III.    LAW AND ANALYSIS

### A.    <u>Standard of Review</u>

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 716 F.3d 556, 561 (6th Cir. 2013) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). In other words, the motion *in limine* is an evidentiary device that "provides a useful adjunct to other devices for truncating the trial such as motions for summary judgment." *Id.*

The Parties seek to exclude the evidence herein primarily under evidentiary rules regarding relevance, character, and authentication. The following legal standards apply:

#### 1.    Relevance

The challenges to the inclusion of evidence Rules 401 and 402 of the Federal Rules of Evidence permit the admission of only relevant evidence. Evidence is relevant if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence, and if the fact is of consequence in determining the action. FED. R. EVID. 401. The

2:11-cv-13335-GAD-MJH   Doc # 236   Filed 01/27/15   Pg 7 of 22   Pg ID 10651

standard for determining for relevance is a low one, as long as the evidence has any probative value at all. *See Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992). Evidence that is irrelevant is inadmissible. Fed. R. Evid. 402. Rule 608 allows the admission of evidence of specific instances of a witness's conduct on cross-examination if "they are probative of the character for truthfulness or untruthfulness of the witness…." Fed. R. Evid. 608(b)(1).

Rule 403 permits the exclusion of relevant evidence when its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Fed. R. Evid. 403. District courts have broad discretion in deciding issues concerning the admissibility of evidence under Rule 403. *Hines v. Joy Mfg.*, 850 F.2d 1146, 1154 (6th Cir. 1988) (citing *Koloda v. General Motors Parts Div.*, 716 F.2d 373, 378 (6th Cir. 1983)). The Sixth Circuit has emphasized that in order to exclude evidence under Rule 403, the evidence, "must be more than damaging to the adverse party; it must be unfairly prejudicial." *Id.*

### 2. Character Evidence

The Federal Rules of Evidence state that, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). In addition, the Rules state, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

### 3. Authenticating or Identifying Evidence

The Federal Rules of Evidence state that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901 of the

Evidence Rules governs the ways in which a party can authenticate its evidence. The Rules state that evidence can be authenticated in a variety of ways, and the list provided within the statute is not exhaustive. *See* FED. R. EVID. 901(b).

**B. Plaintiff's Motion *in Limine* to Preclude Defendant John Lemanski from Offering Any Evidence and/or Testimony on Subjects He Shielded from Discovery Through His Assertion of the Fifth Amendment [#218]**

Plaintiff seeks to exclude evidence on subjects that he shielded from discovery through the assertion of his Fifth Amendment rights. These subjects include the cause of the fire that destroyed his vacation home, insurance claims related to his home and his car, his 2011 tax returns, and portions of his deposition testimony in which he was questioned about defrauding Barrette.

Plaintiff contends that this evidence should be excluded as a matter of fairness as well as under principles of reciprocity. *Traficant v. C.I.R.*, 884 F.2d 258, 265 (6th Cir. 1989). The Court agrees. While asserting one's right against self-incrimination is a constitutional one, a party may not use the Fifth Amendment in order to take advantage of the litigation process. *See United States v. Sixty Thousand Dollars in U.S. Currency*, 763 F.Supp. 909, 914 (E.D. Mich. 1991) ("The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party."). "Such limits are properly within the scope of cases holding that a party to civil litigation or other non-criminal proceedings may encounter costs imposed in exchange for the assertion of the Fifth Amendment privilege as long as they are not so high as to force abandonment of the privilege." *Id.* (citing *Spevack v. Klein,* 385 U.S. 511, 515 (1967); *Baxter v. Palmigiano*, 425 U.S. 308 (1976)).

8

Courts have emphasized, though, the importance of specificity at which evidence should be limited when a party attempts to limit evidence or testimony based on the opposing party's assertion of their Fifth Amendment rights. *See Dunkin' Donuts v. Taseki*, 47 F.Supp.2d 867, 873 (E.D. Mich. 1999) ("*Traficant* was careful to note that 'when the issue is whether a court may impose broad limits on the admissibility of evidence, the cases permit only limits *directly related* to the scope of the asserted privilege" (emphasis in original)).

For this reason, the Court holds that evidence and testimony be excluded at trial only as it relates to the tailored subjects mentioned herein, and only on those areas of which Defendant Lemanski asserted his Fifth Amendment rights per *Traficant*.

### C. **Defendant John Lemanski's Motions in Limine [#227]**

Defendant Lemanski moves to exclude 15 types of evidences from admission at trial. Defendant seeks to exclude or limit evidence related to: (1) all electronic evidence; (2) all evidence relating to his home and its construction, purchases made, and gifts given; (3) the calculation of Barrette's damages and the financial transactions of other defendants; (4) expert evidence and testimony of Garda Solutions; (5) other crimes or bad acts including information related to GMAC Insurance; (6) certain terms; (7) the financial analysis of Defendant Lemanski's expenditures; (8) the Kubota tractor; (9) expenditures from Defendant Lemanski's available funds after the close of discovery; (10) certain Bates-stamped documents; (11) transcripts and affidavits of Defendant Tamara Turner; (12) all documentation produced by Defendant Lisa Wells on June 24, 2013 via e-mail; (13) all documentation produced by Plaintiff relating to Resin Market Reports; (14) witnesses that hear the testimony of other witnesses; and (15) electronic spreadsheets by Jamie Marwitz of Barrette Outdoor during or immediately following his deposition in this matter.

The Court will review these issues in turn:

### 1. All Electronic Evidence

Defendant contends that all electronic evidence (with certain exceptions),[5] should be excluded. This includes the exclusion of: (1) e-mails sent to Tamara Turner; (2) phone records of contractors, Defendants, or non-party to this litigation that were obtained after the close of discovery; (3) affidavits obtained after the close of discovery; (4) screenshots or images of data purportedly printed from SAP; and (5) all documentation that was not produced during discovery or reasonably supplemented in a timely fashion.

Defendant argues that the evidence mentioned above has not been properly authenticated. He further argues that none of the items listed above are self-authenticating and require extrinsic evidence to prove their authenticity. Defendant also contends that Plaintiff's search of Defendant Turner's devices, prior to having her computer forensically analyzed, spoliated the original ESI state of those devices.[6]

Under the evidentiary rules, Defendant also argues that while the evidence is marginally relevant, the probative value is greatly outweighed by its danger to mislead the trier of fact as well as undue prejudice. *See* FED. R. EVID. 403. As a final matter, Defendant contends that Plaintiff illegally obtained phone records after the close of discovery; he also contends that Plaintiff attained pictures and screenshots of SAP system data after the close of discovery.

Plaintiff contends, on the other hand, that the electronic evidence is authentic and that his argument is premature. Plaintiff asserts that it will establish the authenticity of Defendant Turner's e-mails at trial through the testimony of Spectrum Forensics and Defendant Turner herself. *See* FED. R. EVID. 901(b)(1) ("Testimony of a witness with knowledge"). Prior to trial,

---

[5] Exceptions include: certain Garda Solutions spreadsheets.

[6] Defendant also asserts that Plaintiff has provided him with neither the ESI data nor the Spectrum Forensics' Report.

Plaintiff contends that only a *prima facie* showing of genuineness is required, and that the task of deciding upon a piece of evidence's authenticity is left to the trier of fact. *United States v. Kilpatrick*, 2012 U.S. Dist. LEXIS 110166, at *8 (E.D. Mich. Aug. 7, 2012) (unpublished).

Plaintiff also asserts that the evidence is relevant; the evidence was provided to Defendants during discovery, and that both Parties had an opportunity to question Defendant Turner at her deposition.   Barrette contends that the e-mail communication challenged here evidences the commission of the fraudulent pass-through scheme.

The Court finds that electronic evidence is admissible. The Court will judge the authentication of the evidence at trial.

### 2. All Evidence Relating to Defendant Lemanski's Home and Its Construction, Purchases Made, and Gifts Given

#### a.   *Evidence Relating to Defendant's Home and Its Construction*

Defendant primarily contends that there is no probative value in the description of his home and its construction.  He contends in the alternative that, if there is any probative value, it is substantially outweighed by the danger of undue prejudice.[7]

Plaintiff, on the other hand, contends that the evidence is relevant to Defendant's expenditure of the cash proceeds; Barrette alleges that these cash proceeds were kickbacks from the pass-through scheme.  The Court finds that the evidence is admissible.

Defendant has effectively failed to point to any actual evidence but instead challenges the manner in which the evidence should be presented; the Court cannot speculate and rule on the manner in which Plaintiff may present evidence at trial. In addition, Plaintiff cites several cases, although non-binding on this Court, are nonetheless persuasive.  *See, e.g.*, *Woods v. United*

---

[7] Defendant also contends that this evidence should be excluded because it is evidence of a "wrong, crime, or other act."  FED. R. EVID. 404(b)(1). Defendant's argument is misguided.  Plaintiff alleges wrongdoing and, therefore, evidence of a wrong or act that directly evidences the facts alleged in this case are admissible notwithstanding Rule 404(b)(1).

*States*, 200 Fed.App'x. 848, 853 (11th Cir. 2006) (noting that the Rule 403 exclusion of undue prejudice is less persuasive when holding a bench trial).

The Parties should be further advised that, "[a] ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce,* 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd,* 469 U.S. 38, 105 (1984)). "However, the district court may change its ruling at trial for whatever reason it deems appropriate," and "where sufficient facts have developed to warrant the change." *Id.*

### b.  *John H. Lemanski Sr.'s Competency to Serve as a Witness*

Defendant contends that John H. Lemanski Sr., his father, is incompetent and therefore should not serve as a witness at trial.  Defendant instead suggests that Lemanski Sr.'s deposition testimony be read into the record.  Lemanski argues that due to his father's dementia and memory loss, any testimony that he could provide would be unfairly prejudicial. At oral arguments, Defendant Lemanski provided medical records that he claimed attested to Lemanski Sr.'s current mental capacity.

The Federal Rules of Evidence state that, "[e]very person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 601; *see generally Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002).  Therefore, Michigan Rule of Evidence 601 governs witness competency and states:

> Unless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules.

MRE 601.

Plaintiff contends that there has been no showing that Lemanski Sr. lacks the capacity, "to testify truthfully and understandably."  *See* MRE 601. Plaintiff further cites *United v. Cobb*, in which the court stated that, "many witnesses suffer memory failures when testifying, and, standing alone, this is not a basis to exclude testimony." 432 Fed.Appx. 578, 589 (6th Cir. 2011).

Upon review of Lemanski Sr.'s medical records, dated November 6, 2014, it is apparent that he is competent enough to testify at trial.  Lemanski Sr. has not been diagnosed with either dementia or Alzheimer's disease, as was implied at oral arguments.  In addition, the records indicate that while Lemanski Sr. has a two-year history of forgetfulness, the primary medical concern is limited to short-term memory loss.  The evaluation concludes that the witness is otherwise "pleasant, alert and oriented to self, place, and time."

Based on these records, the Court finds that Lemanski Sr. is competent to serve as a witness as it concerns this motion.   However, "the district court may change its ruling at trial for whatever reason it deems appropriate," and "where sufficient facts have developed to warrant the change." *Yannott*, 42 F.3d at 1007 (citing *Luce,* 713 F.2d at 1239).

### 3.  All Evidence Relating to Barrette's Damages, Defendants' Finances, and the Finances of Any Lay Person

Defendant argues that evidence relating to Barrette's damages and to Defendants' financial transactions should be barred because such evidence is not in compliance with Federal Rule of Evidence 701.  Rule 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a)  rationally based on the witness's perception;
> (b)  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c)  not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.  Rule 702 governs the testimony of expert witnesses. Defendant contends that Plaintiff is attempting to elicit what is truly expert testimony from lay witnesses.

Plaintiff, on the other hand, contends that Barrette's damages theory is not based on specialized knowledge but on simple arithmetic.  Plaintiff has calculated damages by subtracting RDI's resin price from the price that Barrette paid to MRR. The Court agrees with Plaintiff; this calculation is not within the scope of complexity that calls for expert testimony.

The Court finds that Barrette's calculation as to damages is admissible. Defendant provides no basis for excluding the financial transactions of all defendants.  As a result, the Court declines to rule in the Defendant's favor on this category of evidence.  It is therefore admissible.

### 4. Expert Testimony from Garda Solutions

Defendant argues that expert testimony from Garda Solutions as to the existence of spreadsheets, which contains evidence about MRR's alleged after-tax profits, should be excluded. Defendant questions the authenticity of the spreadsheets and contends that he has not admitted to populating all of the data.[8] This, however, is not a basis for excluding this evidence. Defendant must look to applicable evidentiary rules.  Because Defendant does not provide any evidentiary rule as a basis for exclusion, the Court finds that Garda Solutions' expert testimony is admissible.

### 5. Crimes or Bad Acts Especially Relating to GMAC Insurance

Defendant contends that evidence relating to his association with GMAC Insurance should be excluded.  He contends that this evidence would force him to defend himself against the action immediately before the Court and other allegations, which are not at issue in this case.

---

[8] Defendant also argues that the expert report has already been reviewed by the court, and that any further inquiry would be irrelevant and a waste of time.  Plaintiff, again, is misguided on the utility of the expert report. Exhibits that have been reviewed by the Court are admissible at trial barring any restrictions based in the Federal Rules of Evidence.

Most convincingly, Defendant argues that this evidence falls squarely in line with Rule 404(b)(1) of the Evidence Rules.

Plaintiff contends differently. It argues that the GMAC Insurance documents are relevant to his cash expenditures, which evidences the whereabouts of the cash proceeds that Defendant Lemanski received from the alleged pass-through scheme. Plaintiff has argued that the cash proceeds have been used for the construction of Defendant's home whereas Defendant argues that he paid for the construction of his home using insurance proceeds.

Plaintiff also cites Federal Rule of Evidence 608(b)(1) to supports its arguments. Rule 608(b)(1) states:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: the witness[.]

FED. R. EVID. 608(b)(1).

The Court agrees, in part, with Defendant. The presentation of evidence in regard to Defendant's association with GMAC Insurance should be limited to bolster only the elements of Plaintiff's legal claims, and not to insinuate what is prohibited under Rule 404(b)(1). However, it is not yet certain how Plaintiff will use this evidence. Likewise, the Court declines to speculate, and Plaintiff has not specified the manner in which the evidence should be limited. For this reason, the Court reserves for trial the exercise of its discretion to rule on this evidence.

### 6. Certain Terms

Defendant lists 35 words that he asserts should be prohibited from use during the course of the trial. Defendant contends that the words are "emotionally-charged terms" and that each word "conjures up images of Mafioso-type crimes". Defendant cites a Florida-state case to

support this request. *Goddard v. State*, however, has no binding, or persuasive, effect on this Court.

Defendant further points out that Plaintiff, under Evidence Rule 403, is restricted from making statements that create a danger of unfair prejudice. Defendant, however, misstates the Rule. The rule permits the exclusion of relevant evidence when its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleads the *jury*. The Sixth Circuit has emphasized that in order to exclude evidence under Rule 403, the evidence, "must be more than damaging to the adverse party; it must be unfairly prejudicial." *Hines v. Joy Mfg.*, 850 F.2d 1146, (6th Cir. 1988) (citing *Koloda v. General Motors Parts Div.*, 716 F.2d 373, 378 (6th Cir. 1983)). Furthermore, district courts have broad discretion in deciding issues concerning the admissibility of evidence under Rule 403. *Id.* The Court finds that while these terms may not be favorable to Defendant, they are not *statements* and certainly do not arise to the level of unfairly prejudicial.[9] These terms are not excludable.

### 7.  Financial Analysis of Defendant Lemanski's Expenditures

Rule 1006 of the Federal Rules of Evidence governs the use of summaries to prove content.  The Rule states:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006. In addition, the Sixth Circuit has held that Rule 1006 has five requirements:

---

[9] Again, Defendant has effectively failed to point to any actual evidence but instead challenges the manner in which the evidence should be presented; the Court cannot speculate and rule on the manner in which Plaintiff may present at trial.  There is little doubt that such an exclusion would collide with the First Amendment of the U.S. Constitution.

> (1) [T]he underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation.

*United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002) (citing *United States v. Bray,* 139 F.3d 1104, 1109-10 (6th Cir. 1998)).

Plaintiff argues that only the summary was obtained in accordance with Federal Rule of Evidence 1006.  The Court agrees because, in fact, the summary is the only piece of evidence that Defendant describes in this motion that must be in compliance with Rule 1006, as it governs summaries. Plaintiff himself conceded that the summaries account for 500+ documents, and are therefore voluminous. It appears, at the time of the filing of this motion, that Plaintiff meets all of the Sixth Circuit's criteria for entering this evidence at trial.  The Court denies Defendant's motion.

### 8.  The Kubota Tractor

Defendant contends that any evidence about the Kubota Tractor is irrelevant, its probative value is substantially outweighed by confusion and undue prejudice, and amounts to evidence related to other crimes and bad acts. Plaintiff, on the other hand, contends that inquiry into the Kubota tractor has high probative value as it evidences his cash expenditures and discovery abuses.

The Court finds that inquiry into the Kubota Tractor is admissible.  There is evidence in the record that supports this inquiry in regard to the legal matter.  Plaintiff is in possession of evidence that buoys its proposition that supported its argument that cash expenditures from an

alleged pass-through scheme were used for its purchase. In addition, its probative value in relation to the alleged existence of a pass-through scheme is not outweighed by undue prejudice.

### 9. Defendant Lemanski's Expenditures from Available Funds After the Close of Discovery

Defendant contends that this evidence will lead to a confusion of the issues. Plaintiff, on the other hand, contends that this evidence is directly related to the issues. Plaintiff argues that these expenditures evidence furtherance of the pass-through scheme even to present-day. Plaintiff also argues that Defendant's ability to shield his expenditures until after discovery should not make expenditures, post-discovery, off limits.

The Court finds that Defendant does not elaborate to how these expenditures will confuse the issues and simply relies on asserting Rules 401, 402, and 403. Plaintiff provides a convincing explanation of how these expenditures evidence its claim that Defendant engaged in a pass-through scheme. This evidence is therefore admissible.

### 10. Certain Bates-Stamped Documents

Defendant asserts that Plaintiff refers to nearly 1,200 pages of Bates-stamped documents.[10] These documents include affidavits, Lemanski's AT&T and Sprint phone records, and the records of a home contractor. Plf.'s Response to Def.'s Mot. In Limine 21. Defendant contends that although this evidence was in Plaintiff's possession as early as 2013, its existence was not disclosed until eight months after the close of discovery in February of 2014.

Plaintiff contends, on the other hand, that not only has Defendant been in possession of these documents, the documents have, in fact, been attached as exhibits to briefs. In addition, some of these documents were made available, after the close of discovery, due to Defendant's

---

[10] Bates stamping is a process for applying a set of identifying numbers to a document collection of PDFs.

discovery abuses. Furthermore, Plaintiff asserts that the phone records were produced by Lemanski himself.

Defendant cites Federal Rule of Civil Procedure 37(c)(1) as a basis for excluding this evidence.  Rule 37 states:

> If a party fails to provide information or to identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).  The harmless standard "involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999)).

The Court holds that these documents are admissible and denies Defendant's motion to exclude.  This portion of Defendant's motion can be rejected on many fronts.  The Court finds, as a primary matter, that Plaintiff's failure to provide the Bates-stamped documents during the discovery period were both substantially justified and harmless under Rule 37.

Defendant received sufficient notice of the documents' existence as well as access to them in February 2014, which was one full year, and well in advance, of the February 2015 trial date.   Plaintiff has also successfully demonstrated that the phone records appeared after discovery as a result of multiple requests as recorded in several of Plaintiff's motions for sanction due to spoliation of evidence and court discovery orders.  In any case, the phone records mentioned herein were produced by Defendant himself; it is then evident that Defendant had access to his own phone records.

Defendant also contends that the probative value of this evidence is substantially outweighed by undue prejudice.  As the Court has explained, under Rule of Evidence 403, the

evidence "must be more than damaging to the adverse party; it must be unfairly prejudicial." *Hines*, 850 F.2d at 1154. Again, Defendant had knowledge of and access to the Bates-stamped documents a full year in advance of trial. Therefore Defendant would not be unduly prejudiced at trial, as these pieces of evidence have been disclosed and with plenty of time remaining for Defendant to properly prepare for trial.

### 11.   Inclusion of Transcripts and Affidavits of Defendant Tamara Turner

Defendant contends that the previous testimony of Defendant Turner be included as evidence. Defendant, however, does not offer any grounds for admitting all of Turner's "testimony, documentation of testimony, transcripts of testimony, and affidavits." The Court relies "on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States,* 554 U.S. 237, 243 (2008). As a result, at this time, the Court declines to rule on this evidentiary issue.

### 12.   Inclusion of All Documentation Produced by Defendant Lisa Wells on June 24, 2013 via E-mail

While motions *in limine* are more frequently used to exclude evidence, the Court also permits motions *in limine* in order to include evidence before trial. Defendant, however, must indicate, with specificity, that evidence for which he seeks to include. Due to the uncertainty of the evidence being presented, this motion does not actually truncate the evidentiary issues but requires further inquiry into them. Thus the Court is inclined to agree with Plaintiff and, at this time, does not exercise its discretion to include into evidence all documentation produced by Defendant Wells on June 24, 2013, via e-mail.

### 13.   Inclusion of All Documentation Produced by Plaintiff Relating to Resin Market Reports

Defendant contends that Plaintiff should be compelled to enter into evidence certain reports on resin market conditions.  Defendant confuses motions *in limine* with a motion to compel.  The Court does not have the authority to compel a party to enter into evidence that to which it chooses not. Motions *in limine* only serve to grant or deny a party's request to enter evidence on its own behalf, or to exclude the evidence on which the opposing party anticipates entering.  Neither of those conditions are presented here.  For this reason, the Court declines to rule on this motion.

### 14.   Witnesses That Hear the Testimony of Other Witnesses

Because there are no objections to this motion, the Court will grant this request and will sequester the witnesses who testify.

### 15.   Electronic Spreadsheets by Jamie Marwitz of Barrette Outdoor During or Immediately Following His Deposition

Defendant contends that Barrette's IT Manager, Jamie Marwitz produced multiple spreadsheets prior to, during, and following his deposition.  Plaintiff refers to these documents as Marwitz's Resin Transaction Summaries. Defendant contends that these spreadsheets are critical to his defense.  The Court declines to exercise its discretion in ruling on the inclusions or exclusion of these documents.  The Court construes this motion as a motion to compel.  The Court does not have the authority to compel a party to enter items into evidence what that party chooses not to include.[11]  Motions *in limine* only serve to grant or deny a party's request to enter evidence on its own behalf, or to exclude the evidence on which the opposing party anticipates entering.  Neither of those conditions is presented here.  In addition, as Plaintiff notes, Defendant

---

[11] The Court should have Defendant clarify his position as to this motion. Is he requesting that Plaintiff enter the evidence, or is moving to be permitted to enter the evidence himself?  In the motion, it is not entirely clear.

can choose to enter the evidence himself on cross-examination.  For this reason, the motion to compel Marwitz's Resin Transaction Summaries is denied.

IV.     CONCLUSION

For the reasons stated above, Plaintiff's Motion *in Limine* [#218] is GRANTED and Defendant Lemanski's Motions *in Limine* [#227] are DENIED, or deferred until trial.

The Defendant's Motion to Sequester Witnesses is GRANTED.

IT IS SO ORDERED.


Dated:  <u>January 27, 2015</u>                        <u>/s/Gershwin A Drain        </u>
                                                GERSHWIN A. DRAIN
                                                US District Court Judge